1

RICHMAN LAW GROUP
Clark A. Binkley (*Pro Hac Vice forthcoming*)
cbinkley@richmanlawgroup.com
Jaime Mak (SBN 236505)
jmak@richmanlawgroup.com
535 Mission Street
San Francisco, CA 94105
Telephone: (718) 705-4579
Facsimile: (718) 228-8522

2

3

4

5

6

7

*Counsel for Plaintiff and the Putative Class*

8

## UNITED STATES DISTRICT COURT

9

## NORTHERN DISTRICT OF CALIFORNIA

10

## SAN JOSE DIVISION

11

12

13

14

15

16

17

18

19

20

| | |
|---|---|
| HAWYUAN YU, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>      v.<br><br>DR PEPPER SNAPPLE GROUP, INC., 5301 Legacy Drive, Plano, Texas 75024, and MOTT'S LLP, 900 King Street, Rye Brook, NY 10573<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.: 18-cv-6664

## **COMPLAINT**

## **DEMAND FOR JURY TRIAL**

21

22

23

24

25

26

27

28

      On behalf of himself and all others similarly situated, Plaintiff Hawyuan Yu (the "Plaintiff"), by and through his counsel, brings this action under the California Unfair Competition Law Cal. Bus. and Prof. Code § 17200 *et seq.* (the "UCL"), the False Advertising Law, Cal. Bus. and Prof. Code § 17500 (the "FAL"), the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* (the "CLRA"), and common law, against Dr Pepper Snapple Group Inc. ("Dr Pepper") and Mott's, LLP, a wholly owned subsidiary of Dr Pepper, (collectively, "Defendants") for misleading consumers about the nature of several applesauce and apple juice products that were or are sold under the "Mott's" brand

name with the representation "All Natural Ingredients" and/or "Natural." Plaintiff alleges the following based upon information, belief, and the investigation of his counsel:

## NATURE OF THE ACTION

1.      Defendants sell several applesauce and apple juice products, including Mott's Natural Unsweetened Applesauce, Mott's Healthy Harvest Applesauce varieties, Mott's Natural 100% Juice Apple Juice, and other varieties of "Mott's" brand applesauce and apple juice products sold with the representation "All Natural Ingredients" and/or "Natural" (collectively, the "Products").[1]

2.      Defendants sell the Products with such representations in order to take advantage of the increased demand for "natural" food products that provide assurances regarding how the they are produced and prepared—that is, products that are free from unnatural ingredients, synthetic chemicals, or other remnants of artificial or extensive processing.

3.      Consumers, as Defendants know, are willing to pay more for products marketed as "natural" than they are willing to pay for competing products that are not marketed as such.

4.       During the applicable limitations period, Defendants have engaged in a uniform marketing and advertising program throughout California and the rest of the United States representing that the Products are "natural" when they are not. These representations are prominently displayed on the Products' labels.

5.      Specifically, Defendants represent the Products as made of "All Natural Ingredients" or as otherwise "natural" in at least two ways. First, Defendants represent that their applesauce contains "All Natural Ingredients." As seen in the representative images below, this representation is made prominently on the front of the package, in a blue badge that also informs the consumer that the applesauce does not contain added sugar or vitamin C. This representation is placed on the label adjacent to the identifying the flavor or variety of the applesauce.

---

[1] Recently, Defendants have discontinued offering the applesauce products labeled as "Natural" and may discontinue the apple juice or else may introduce (or reintroduce) new products that are also falsely labeled as made of "All Natural Ingredients," "Natural," or other similarly misleading representations. Plaintiff reserves the right to add or remove products to the definition of this Complaint as they become known.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22    6.    Second, as seen in the representative images above, Defendants previously sold a

23 variety of applesauce identified as "natural" in order to differentiate it from other varieties, such as

24 cinnamon-flavored or organic applesauce. The "natural" label conveyed to consumers that this variety

25 of applesauce contained nothing that is not natural.

26    7.    Defendants currently also produce and market a variety of apple juice that is labeled

27 "natural." This labeling also conveys to consumers that there is nothing unnatural in the apple juice,

28 as seen in the representative image below.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



8.    Defendants' "All Natural Ingredients" and "Natural" statements deceive and mislead consumers into believing the Products contain nothing unnatural or synthetic.

9.    As a direct result of Defendants' deceptive statements concerning the nature of the Products, Plaintiff and the Class members paid a premium for the Products.

10.    The Products, which are sold in numerous supermarket chains within the state of California and nationally, are not "natural."  Instead, the Products contain a synthetic and unnatural chemical, specifically, acetamiprid.

11.    Acetamiprid is not "Natural."

12.     Acetamiprid is a synthetic neonicotinoid insecticidal neurotoxin that may be hazardous to human development and to other animals including the honeybee.

13.     Acetamiprid is "legal" in connection with food products, insofar as the law does not preclude the use of acetamiprid in treating and harvesting crops and has made allowances for certain amounts of residues to remain on fruits and vegetables before they are delivered to the end user to be cleaned and consumed.

14.     Defendants, however, did not and do not claim that the Products are simply "legal"; instead, Defendants claim the Products contain nothing but "All Natural Ingredients" or are "natural."

15.     Reasonable consumers who see Defendants' representations that the Products contain "All Natural Ingredients" or are "natural," would not expect the Products to contain traces of a synthetic insecticide.

16.     By deceiving consumers about the nature and quality of the Products, Defendants are able to sell a greater volume of product, to charge higher prices for the Products, and to take away market share from competing products, thereby increasing sales and profits.

17.     Consumers lack the scientific knowledge necessary to determine whether the Products contain anything except "All Natural Ingredients," whether the Products are "natural," or to know or to ascertain the true contents and quality of the Products.

18.     Reasonable consumers must rely and do rely on Defendants to report honestly which substances the Products contain, and whether the Products contain only "All Natural Ingredients" or whether the Products are "natural."

19.     No synthetic and unnatural chemical is disclosed anywhere on the Products' packaging. The presence of acetamiprid can be ascertained only through a chemical study far beyond a reasonable inquiry that a consumer could be expected to do in a supermarket aisle. Thus, when deciding which products to buy, consumers must rely on affirmative representations made by Defendants, such as "All Natural Ingredients" and "Natural."

20.     Defendants were motivated to mislead consumers for no other reason than to command more favorable pricing and/or to take away market share from competing products, thereby increasing the Products' sales and profits.

21.     Because the Products contain a synthetic and unnatural chemical, Defendants' claims on the Products' labeling and in the Products' marketing that the Products are made of "All Natural Ingredients" and/or are "natural" are false and misleading.

22.     Because Defendants' labeling and advertising of the Products tends to mislead and is materially deceptive about the true nature and quality of the Products, Plaintiff brings this deceptive advertising case on behalf of himself and all others similarly situated, and seeks monetary and injunctive relief, including an order halt Defendants' false marketing and sale of the Products.

## JURISDICTION AND VENUE

23.     This Court has personal jurisdiction over the parties in this case. Plaintiff Yu is a citizen of California within this District, and by filing this Complaint, Plaintiff consents to this Court having personal jurisdiction over him. Defendant purposefully avails itself of the laws of California to market, promote, distribute, and sell the Products to consumers in California and this District.

24.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act, explicitly provides for the original jurisdiction of the federal courts in any class action in which the proposed plaintiff class is comprised of at least 100 members, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs allege that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

25.     Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District.

## INTRADISTRICT ASSIGNMENT

26.     Assignment to the San Jose Division is appropriate under Civil L.R. 3-2(c) and (e) because a substantial part of the events or omissions that give rise to the claim—including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of

1  the Products —occurred within the Counties of Santa Clara, Santa Cruz, San Benito or Monterey.

2  **PARTIES**

3  27.   Plaintiff Hawyuan Yu is an individual consumer who, at all relevant times, was a

4  citizen of Santa Clara County, California.

5  28.   During the class period, Plaintiff purchased Mott's Natural Applesauce and Natural

6  Apple Juice on multiple occasions from a Costco Warehouse located at 150 Lawrence Station Rd,

7  Sunnyvale, California and a Safeway Store located at 6150 Bollinger Rd, San Jose, California.

8  29.   In deciding to make his purchases, Plaintiff saw, relied upon, and reasonably believed

9  Defendants' representations that their Products were "natural" and made of "All Natural Ingredients."

10  30.   Plaintiff is willing to pay more for Defendants' Products because he expected the

11  Products to be free of insecticides and other unnatural chemicals.

12  31.   At all times mentioned herein, Defendant Dr Pepper Snapple Group, Inc. was a

13  corporation organized under the laws of Delaware, with its principal place of business at 5301 Legacy

14  Drive, Plano, Texas, 75024. Dr Pepper is in the business of developing, manufacturing, distributing,

15  and selling beverages and snack products under various brands, including the Mott's brand.

16  32.   At all times mentioned herein, Defendant Mott's, LLP operates as a subsidiary of Dr

17  Pepper. Mott's, LLP is organized under the laws of Delaware, with its principal place of business at

18  900 King Street, Rye Brook, NY 10573. Mott's, LLP is a nationally and internationally prominent

19  maker of fruit snacks, applesauce, apple juices, and fruit rolls.

20  33.   Defendants manufacture and/or cause the manufacture of the Products, which

21  Defendants market and distribute in retail stores in California and throughout the United States.

22  **SUBSTANTIVE ALLEGATIONS**

23  34.   Plaintiff brings this suit against Defendants based on misrepresentations and omissions

24  committed by Defendants regarding the Products, which Defendants falsely and deceptively label and

25  market as made of "All Natural Ingredients" and/or as "Natural," when in fact the Products contain

26  acetamiprid, which is not natural.

27  35.   Defendants know that consumers seek out and wish to purchase natural foods that do

28  not contain artificial chemicals, and that consumers will pay more for foods that they believe to be

natural than they will pay for foods that they do not believe to be natural.

36.     To capture this market, Defendants market the Products as made of "All Natural Ingredients" and/or as "natural."

**A.     Defendants Falsely Claim the Products Are Made of "All Natural Ingredients" and/or Are "Natural."**

37.     Defendants' representations that the Products are made of "All Natural Ingredients" and/or are "natural" are false and misleading because a reasonable consumer believes that Products that are "natural" do not contain a synthetic and unnatural chemical; in fact, however, the Products contain acetamiprid.

38.     Nowhere on the Products' packaging or on Defendants' website do Defendants mention the presence of synthetic chemicals in their purportedly "natural" Products.

39.     Quantitative testing conducted by an independent laboratory using liquid chromatography mass spectrometry with a reporting limit of 0.01 parts per million (ppm) revealed the amount of acetamiprid in Mott's Natural Unsweetened Applesauce to be 0.06 ppm and the amount of acetamiprid in Mott's Natural 100% Juice Apple Juice to be 0.02 ppm.

**B.     Acetamiprid Is Not Natural.**

40.     Acetamiprid is a synthetically-created neonicotinoid insecticidal neurotoxin.[2]

41.     Neonicotinoids like acetamiprid are "systemic" insecticides. Systemic insecticides are absorbed into the plant to be distributed throughout the plant, into the fibers, pollen, and nectar. Systemic insecticides kill insects in two different ways: insects die when they come into contact with the pesticide, as when they are sprayed with it, and also when they ingest the plant which has absorbed the pesticide.

42.     Neonicotinoids like acetamiprid are believed to play a role in "colony collapse disorder" and may pose a risk to honeybees and other pollinators necessary for functioning ecosystems and agriculture.[3]

---

[2] Environmental Protection Agency, *Acetamiprid: Pesticide Fact Sheet* (Mar. 15, 2002), https://www3.epa.gov/pesticides/chem_search/reg_actions/registration/fs_PC-099050_15-Mar-02.pdf.

[3] Elizabeth Grossman, *Declining Bee Populations Pose a Threat to Global Agriculture*, Yale Environment 360 (Apr. 30, 2013), http://e360.yale.edu/features/declining_bee_populations_pose_a_threat_to_global_agriculture.

43. Reasonable consumers do not expect acetamiprid to be present in applesauce made of "All Natural Ingredients" or in "natural" applesauce or apple juice.

44. Defendants' representations that the Products are made of "All Natural Ingredients" and/or are "natural" are false, and labeling or advertising the Products as such is misleading and deceptive.

**C.      Defendants' Labels Are Misleading and Omit Material Facts.**

45. Upon information and belief, Defendants have profited enormously from their falsely marketed Products and their carefully orchestrated labels and images.

46. Representing that a product is made of "All Natural Ingredients" and/or is "natural" is a statement of fact.

47. Failing to disclose that a product represented as made of "All Natural Ingredients" and/or as "natural" in fact contains synthetic chemicals is an omission of relevant fact.

48. Consumers reasonably believe that a product represented as made of "All Natural Ingredients" and/or as "natural" does not contain any synthetic or unnatural chemicals.

49. Only Defendants know the methods by which the Products are grown, harvested, and processed or what would account for the presence of acetamiprid in the Products. Defendants' concealment tolls applicable statutes of limitations.

50. To this day, Defendants continue to conceal and suppress the true nature, identity, source, and method of production of the Products here at issue.

51. Defendants know and intend that when consumers see product labels or advertisements promising a product is made of "All Natural Ingredients" or is "natural," consumers will understand that to mean that, at the very least, the product does not contain any synthetic and unnatural or potentially harmful chemicals.

52. Defendants know what representations are made on the labels of the Products. Defendants also know how the Products were grown, harvested, and processed, and that the Products are likely to contain acetamiprid when delivered to the end user.

53.    Defendants thus knew all the facts demonstrating that the Products were mislabeled and falsely advertised.

**D.    Defendants Knew the Representations Were False and Intended for Consumers to Rely on the Misrepresentations and Omissions.**

54.    Defendants hold themselves out to the public as trusted experts in the production of applesauce, apple juice, and other apple and fruit products.

55.    Defendants knew, or should have known, the facts demonstrating that the Products were mislabeled and falsely advertised.

56.    Consumers frequently rely on label representations and information in making purchase decisions, especially in purchasing food.

57.    In making the false, misleading, and deceptive representations and omissions at issue, Defendants knew and intended that consumers would purchase the Products when consumers would otherwise purchase a competing product.

58.    Consumers were deceived into believing that the Products are made of "All Natural Ingredients" and/or are "natural" and that the Products contained nothing synthetic or unnatural.

59.    Consumers cannot discover the true nature of the Products from reading the labels. Consumers could not discover the true nature of the Products even by visiting Defendants' websites, which make no mention of acetamiprid.

60.    Upon information and belief, Defendants have failed to remedy the problems with the Products, have continued to sell products falsely labeled as "natural," or may introduce additional products also falsely labeled as "natural," thus causing future harm to consumers.

61.    Consumers are at risk of real, immediate, and continuing harm if the Products continue to be sold as is, labeled as "natural" while omitting any reference to the presence of synthetic chemicals.

62.    Defendants have failed to provide adequate relief to purchasers as of the date of this complaint.

63.    Plaintiff contends that the Products were sold pursuant to unfair and unconscionable trade practices, because the sale of the Products offends public policy and is immoral, unethical,

1   oppressive, unscrupulous, and caused substantial economic injuries to consumers.

2       64.     Defendants' statements and other representations convey a series of express and

3   implied claims and/or omissions that Defendants know are material to the reasonable consumer in

4   making a purchasing decision, and that Defendants intended for consumers to rely upon when

5   choosing to purchase the Products.

6       65.     Accordingly, Plaintiff seeks declaratory relief in the form of an order declaring

7   Defendants' conduct to be unlawful, as well as injunctive relief putting an end to Defendants'

8   misleading and unfair business practices, including a change to the current Products' labels and

9   marketing, or a reformulation of the Products so that the Products no longer contain acetamiprid.

10                              **CLASS ALLEGATIONS**

11      66.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure

12  on behalf of himself and all others similarly situated individuals within the United States (the "Class"

13  or the "Nationwide Class"), defined as follows:

14          All consumers who purchased the Products that were labeled made of "All Natural
            Ingredients" and/or "Natural" within the United States during the statute of
15          limitations period and until the date of class certification.

16

17      67.     Excluded from the Class are (1) Defendants, any entity or division in which a

18  Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and

19  successors; and (2) the judge to whom this case is assigned and the judge's staff.

20      68.     Additionally, Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of

21  Civil Procedure on behalf of himself and all other similarly situated California citizens (the

22  "California Subclass") defined as follows:

23          All consumers who purchased the Products that were labeled made of "All Natural
            Ingredients" and/or "Natural" within California during the statute of limitations
24          period and until the date of class certification.

25      69.     Excluded from the California Subclass are (1) Defendants, any entity or division in

26  which a Defendant has a controlling interest, and its legal representatives, officers, directors, assigns,

27  and successors; and (2) the judge to whom this case is assigned and the judge's staff.

28      70.     There are substantial questions of law and fact common to all members of the

Nationwide Class, which will predominate over any individual issues. These common questions of law and fact include, without limitation:

    (a)    Whether Defendants' practices and representations related to the marketing, labeling and sales of its Products were unfair, deceptive, fraudulent, and/or unlawful in any respect;

    (b)    Whether Defendants breached a warranty created through the labeling and marketing of its Products;

    (c)    Whether Defendants' conduct as set forth above injured Plaintiff and Class members;

    (d)    Whether Plaintiff and Class members are entitled to injunctive relief; and

    (e)    whether Defendants have been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendants to retain the benefits conferred upon Defendants by Plaintiff and the Class.

    71.    With respect to the California Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include without limitation:

    (a)    whether Defendants advertised the Products with the intent not to sell them as advertised in violation of California Civil Code § 1770(a)(9);

    (b)    whether Defendants represented on packaging for the Products that the Products had characteristics, ingredients, uses, or benefits that they do not have in violation of California Civil Code §1770(a)(5);

    (c)    whether Defendants represented the Products as of a particular standard, quality, or grade, when they were of another in violation of California Civil Code §1770(a)(7);

(d)     whether Defendants are subject to liability for violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1784;

(e)     whether Defendants have violated California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500-17536;

(f)     whether Defendant has violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; and

(g)     whether the Class is entitled to an award of restitution pursuant to California Business and Professions Code § 17203.

72.    Plaintiff's claims are typical of the claims of the Class and the California Subclass. Plaintiff is a member of a well-defined class of similarly situated persons and the members of the Class and the California Subclass were similarly affected by Defendants' conduct and are owed the same relief, as alleged in this Complaint. Members of the Class and the California Subclass are ascertainable from Plaintiffs' description of the class, Defendant's records, and records of third parties accessible through discovery.

73.    Plaintiff will fairly and adequately protect the interests of the Class and the California Subclass and has no interests which are antagonistic to the claims of the Class or California Subclass. Plaintiff will vigorously pursue the claims of the Class and California Subclass.

74.    Plaintiff has retained counsel who are competent and experienced in consumer protection litigation, including class actions relating to false advertising. Plaintiff's counsel has successfully represented plaintiffs in complex class actions and currently represent other plaintiffs in several similar complex class action litigations involving false advertising.

75.    A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy. The substantive claims of Plaintiff and the Class and California Subclass are nearly identical and will require evidentiary proof of the same kind and application of the same laws. There is no plain, speedy, or adequate remedy other than by maintenance of this class action.

CLASS ACTION COMPLAINT

76.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class and California Subclass members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually and the disposition of this case and as part of a single class action lawsuit will benefit the parties and greatly reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds or thousands of separate lawsuits. Trial of Plaintiff's and the Class and California Subclass members' claims is manageable. Unless the Class and California Subclasses are certified, Defendants will remain free to continue to engage in the wrongful conduct alleged herein without consequence.

77.     No member of the Class or the California Subclass has a substantial interest in individually controlling the prosecution of a separate action.

78.     The prerequisites to maintaining a class action for injunctive or equitable relief are met as Defendants have acted or refused to act on grounds generally applicable to the Class and the California Subclass thereby making appropriate final injunctive or equitable relief with respect to the Class and the California Subclass as a whole.

79.     The prosecution of separate actions by members of the Class and the California Subclass would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the Class and the California Subclass even where certain Class or California Subclass members are not parties to such actions.

80.     Defendants' conduct is generally applicable to the Class and the California Subclass as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class and the California Subclass as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Class and the California Subclass as a whole appropriate.

81.     Plaintiff knows of no difficulty that will be encountered in the management of this litigation, which would preclude its maintenance of a class action.

CLASS ACTION COMPLAINT

# CAUSES OF ACTION

## COUNT I

### (Unfair and Deceptive Acts and Practices in
### Violation of the California Consumers Legal Remedies Act,
### on Behalf of the California Subclass)

82.     Plaintiff incorporates by reference and realleges herein all paragraphs alleged above.

83.     This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

84.     Plaintiff and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Products for personal, family, or household purposes.

85.     Plaintiff, the other members of the California Subclass, and Defendants have engaged in "transactions," as that term is defined by California Civil Code §1761(e).

86.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendants in transactions intended to result in, and which did result in, the sale of goods to consumers.

87.     As alleged more fully above, Defendants have violated the CLRA by falsely representing to Plaintiff and the other members of the California Subclass that the Products are made of "All Natural Ingredients" and/or are "natural."

88.     As a result of engaging in such conduct, Defendants have violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

89.     Plaintiff seeks an order of this Court that includes, but is not limited to, an order requiring Defendants to remove and/or refrain from making representations on the Products' packaging representing that the Products are made of "All Natural Ingredients" and/or are "natural."

90.     Plaintiff and the other California Subclass members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

91.     The unfair and deceptive acts and practices of Defendants, as described above,

1    present a serious threat to Plaintiff and the other members of the California Subclass.

2          92.     CLRA § 1782 NOTICE. On January 31, 2018, a CLRA demand letter was sent to

3    Defendants via certified mail that provided notice of Defendants' violation of the CLRA and

4    demanded that within thirty (30) days from that date, Defendants correct, repair, replace, or otherwise

5    rectify the unlawful, unfair, false and/or deceptive practices complained of herein. The letter also

6    stated that if Defendants refused to do so, a complaint seeking damages in accordance with the CLRA

7    would be filed. Defendants received the letter on February 5, 2018, but has failed to comply with the

8    letter. Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff, on behalf of himself and

9    all other members of the California Subclass, seeks compensatory damages, punitive damages, and

10   restitution of any ill-gotten gains due to Defendants' acts and practices.

11   **<u>COUNT II</u>**

12   **(Violations of California's False Advertising Law,**

13   **on Behalf of the California Subclass)**

14         93.     Plaintiff incorporates by reference and realleges herein all paragraphs alleged above.

15         94.     As alleged more fully above, Defendants have falsely advertised the Products by

16   falsely claiming that the Products are made of "All Natural Ingredients" and/or are "Natural."

17         95.     At all material times, Defendants engaged in a scheme of offering the Products for

18   sale to Plaintiff and the other members of the California Subclass within the State of California and

19   nationwide through, *inter alia*, commercial marketing and advertising, the Internet, the Products'

20   packaging and labeling, and other promotional materials and offers for sale for the Products.

21         96.     The misrepresentations and non-disclosures by Defendants of the material facts

22   detailed above constitute false and misleading advertising, and therefore constitute a violation of

23   California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq*.

24         97.     Said advertisements and inducements were made within the State of California and

25   come within the definition of advertising contained in the FAL in that such promotional materials

26   were intended as inducements to purchase the Products and are statements disseminated by

27   Defendants to Plaintiff and the other California Subclass members that were intended to reach

28   Plaintiff and the other California Subclass members. Defendants knew, or in the exercise of

1   reasonable care, should have known, that these representations were misleading and deceptive.

2   98.   The above acts of Defendants did and were likely to deceive reasonable consumers,

3   including Plaintiff and the other members of the California Subclass, by obfuscating the nature,

4   quality, and ingredients of the Products, in violation of the "misleading" prong of the FAL.

5   99.   Plaintiff and the other members of the California Subclass have suffered injury in

6   fact and have lost money or property as a result of Defendants' violations of California's False

7   Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*

8   100.   Pursuant to California Business and Professions Code §§ 17203 and 17535, Plaintiff

9   and the California Subclass seek an order of this Court that includes, but is not limited to, requiring

10   Defendants to remove and refrain from making representations on the Products' packaging

11   representing that the Products are "Natural" benefits.

12   **COUNT III**

13   **(Violation of California's Unfair Competition Law,**

14   **on Behalf of the California Subclass)**

15   101.   Plaintiff incorporates by reference and realleges herein all paragraphs alleged above.

16   102.   By committing the acts and practices alleged herein, Defendants have violated

17   California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the

18   California Subclass as a whole, by engaging in unlawful, fraudulent, and unfair conduct.

19   103.   Defendants have violated the UCL's proscription against engaging in *unlawful*

20   conduct as a result of:

21   a)   violations of the CLRA, Cal. Civ. Code §§ 1770(a)(5), (a)(7), and (a)(9), as alleged

22   above; and

23   b)   violations of the FAL, Cal. Bus. & Prof. Code § 17500 *et seq.*, as alleged above.

24   104.   Defendants' acts and practices described above also violate the UCL's proscription

25   against engaging in fraudulent conduct.

26   105.   As more fully described above, Defendants' misleading marketing, advertising,

27   packaging, and labeling of Products is likely to deceive reasonable consumers. Indeed, Plaintiff and

28   the other members of the California Subclass were unquestionably deceived regarding the "natural"

or made of "All Natural Ingredients" qualities of the Products, as Defendants' marketing, advertising, packaging, and labeling of the Products misrepresent or omit the true facts concerning the benefits of the Products. Those acts are fraudulent business practices.

106.    Defendants' acts and practices described above also violate the UCL's proscription against engaging in *unfair* conduct.

107.    Plaintiff and the other California Subclass members suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Defendants' unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled Products.

108.    There is no benefit to consumers or competition from deceptively marketing and labeling products like the Products, which purport to be natural when these unqualified claims are false.

109.    Plaintiff and the other California Subclass members had no way of reasonably knowing that the Products they purchased were not as marketed, advertised, packaged, or labeled. Thus, they could not have reasonably avoided the injury each of them suffered.

110.    The gravity of the consequences of Defendants' conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives that exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other members of the California Subclass.

111.    Defendants' violations of the UCL continue to this day.

112.    Pursuant to California Business and Professional Code § 17203, Plaintiff and the California Subclass members seek an order of this Court that, *inter alia*, requires Defendants to:

a)  remove and refrain from making representations on the Products' packaging that the Products provide an unqualified level of "natural" benefits;

b)  provide restitution to Plaintiff and the other California Subclass members;

c)  disgorge all revenues obtained as a result of violations of the UCL; and

d)   pay the attorney fees and costs of Plaintiff and the California Subclass.

## COUNT IV

### (Breach of Express Warranty,

### on Behalf of the Class)

113.    Plaintiff incorporates by reference and realleges herein all paragraphs alleged above.

114.    Defendants provided Plaintiff and other members of the Class with written express warranties including, but not limited to, warranties that its Products are "natural" and made of "All Natural Ingredients."

115.    These affirmations of fact or promises by Defendants relate to the Products and became part of the basis of the bargain.

116.    Plaintiff and members of the Class purchased Defendants' Products believing them to conform to the express warranties.

117.    Defendants breached these warranties. This breach resulted in damages to Plaintiff and other members of the Class, who bought Defendants' Products but did not receive the goods as warranted.

118.    As a proximate result of the breach of warranties by Defendants, Plaintiff and the other members of the Class did not receive goods as warranted. Plaintiff and the members of the Class therefore have been injured and have suffered damages in an amount to be proven at trial.

119.    Among other things, Plaintiff and members of the Class did not receive the benefit of the bargain and have suffered other injuries as detailed above. Moreover, had Plaintiff and the Class known the true facts, they would not have purchased Defendants' Products, or would have purchased Defendants' Products on different terms.

## COUNT V

### (Unjust Enrichment,

### on Behalf of the Class)

120.    Plaintiff incorporates by reference and realleges herein all paragraphs alleged above.

121.    As a result of Defendants' deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of its Products, Defendants were enriched at the expense of Plaintiffs and the other

1    members of the Class through the payment of the purchase price, or for the payment of a price higher
2    than otherwise would have been paid, for the Products.

3        122.     Under the circumstances, it would be against equity and good conscience to permit
4    Defendants to retain the ill-gotten benefits that it received from Plaintiffs and the other members of
5    the Class, in light of the fact that the Products purchased by Plaintiffs and the other members of the
6    Class were not what Defendants purported them to be. Thus, it would be unjust or inequitable for
7    Defendants to retain the benefit without restitution to Plaintiffs and the other members of the Class
8    for the monies paid to Defendants for the Products.

9                   **REQUEST FOR RELIEF**

10        WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his
11    favor of himself and the Class as follows:

12        A.      An order certifying the proposed Class; appointing Plaintiff as representative of the
13    Class; and appointing Plaintiff's undersigned counsel as class counsel for the Class;

14        B.      A declaration that Defendants are financially responsible for notifying Class members
15    of the pendency of this suit;

16        C.      An order requiring proper, complete, and accurate labeling of the Products;

17        D.      An award of restitution pursuant to California Business and Professions Code
18    §§ 17203 and 17535 for members of the Class;

19        E.      An award of disgorgement pursuant to California Business and Professions Code
20    §§ 17203 and 17535 for members of the Class;

21        F.      An order enjoining Defendants' unlawful and deceptive acts and practices, pursuant
22    to California Business and Professions Code §§ 17203 and 17535, and requiring that Defendants
23    remove and refrain from using unqualified "natural" representations on the Products;

24        G.      Monetary damages and injunctive relief for members of the Class pursuant to
25    California Civil Code § 1780;

26        H.      Monetary damages, injunctive relief, and statutory damages in the maximum amount
27    provided by law;

28        I.      Punitive damages in accordance with proof and in an amount consistent with

1    applicable precedent;

2          J.        An order awarding Plaintiff and the other Class members the reasonable costs and

3    expenses of suit, including their attorneys' fees; and

4          K.        Any further relief that the Court may deem appropriate.

5                                   **<u>JURY TRIAL DEMANDED</u>**

6          Plaintiff hereby demands a trial by jury.

7    DATED: November 1, 2018

8

9                                                                Respectfully submitted,

10                                                               **RICHMAN LAW GROUP**

11

12                                                               _____

13                                                               Jaime Mak (SBN 236505)
                                                                 jmak@richmanlawgroup.com
14                                                               Clark A. Binkley (pro hac vice forthcoming)
                                                                 cbinkley@richmanlawgroup.com
15                                                               535 Mission Street
                                                                 San Francisco, CA 94105
16                                                               Telephone: (718) 705-4579
                                                                 Facsimile: (718) 228-8522
17

18                                                               *Attorneys for Plaintiff*

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT