David T. Biderman, Bar No. 101577
DBiderman@perkinscoie.com
**PERKINS COIE LLP**
1888 Century Park E., Suite 1700
Los Angeles, CA  90067-1721
Telephone:  310.788.9900
Facsimile:  310.788.3399

Charles C. Sipos, *pro hac vice*
CSipos@perkinscoie.com
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101
Telephone:  206.359.8000
Facsimile:  206.359.9000

*Attorneys for Defendants*
*Dr Pepper Snapple Group, Inc. and Mott's LLP*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HAWYUAN YU, On Behalf of Himself and All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>DR PEPPER SNAPPLE GROUP, INC., a Delaware Corporation, and MOTT'S LLP, a Delaware Corporation<br><br>                    Defendant. | Case No. 5:18-cv-06664-BLF<br><br>**MOTION AND NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>[Fed R. Civ. P. 12(b)(1), 12(b)(6)]<br><br>Date:            June 13, 2019<br>Time:           9:00 a.m.<br>Courtroom:   Courtroom 3 - 5th Floor.<br>Judge:          Hon. Beth L. Freeman |

**NOTICE OF MOTION AND MOTION**

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 13, 2018 at 9:00 a.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable Beth L. Freeman, located at 280 South 1st Street, San Jose, California, 95113, Defendants Dr Pepper Snapple Group, Inc. and Mott's LLP (collectively "Mott's") will and hereby do move pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiff's Complaint.

This motion is made on the following grounds: No reasonable consumer would believe that the "natural" and "all natural" labels on Mott's Applesauce and Apple Juice Products ("Products") denote that the Products are free from any residual traces of pesticides used during crop production, as the Complaint alleges. Plaintiff's California consumer protection, warranty, and unjust enrichment claims therefore fail on the merits. Additionally, the Complaint's claim that the products must disclose the presence of trace pesticides is preempted by federal law; this Court lacks subject matter jurisdiction over this case because the Complaint challenges the safety of acetamiprid, a matter committed to the exclusive jurisdiction of Environmental Protection Agency; and Plaintiff lacks Article III standing to seek injunctive relief. For these reasons, Mott's respectfully requests that the Court dismiss the Complaint. If outright dismissal is not warranted, Mott's requests that the Court stay this action under the primary jurisdiction doctrine in deference to the Food and Drug Administration's ongoing proceedings on the word "natural" in food labeling.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Request for Judicial Notice filed in connection with the Motion to Dismiss, the accompanying declaration of Charles C. Sipos and attached exhibits, the records and files in this action, and any other matter the Court may consider.

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................... 1

I.      FACTUAL BACKGROUND ......................................................................................... 2

    A.      Federal Law Extensively Regulates the Use of Pesticides and Related Food
        Labeling Requirements. .......................................................................................... 2

        1.      The EPA and FDA jointly implement a comprehensive regulatory
               regime for pesticides and have determined that acetamiprid is safe
               and that trace amounts of it are allowed in food. ........................................ 2

        2.      Congress and the FDA have determined that labels of packaged
               foods do not need to disclose the presence of trace pesticides like
               acetamiprid. .................................................................................................. 3

    B.      The Complaint Alleges That the Presence of Any Amount of Acetamiprid
        in the Products Is Misleading. ................................................................................ 5

    C.      The FDA is Currently Engaged in Administrative Processes to Define the
        Term "Natural" For Food Labeling........................................................................ 6

II.     STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(A)(3)) ................................... 7

III.    STANDARD OF REVIEW ........................................................................................... 7

    A.      Rule 12(b)(6) ........................................................................................................ 7

    B.      Rule 12(b)(1) ........................................................................................................ 8

IV.     ARGUMENT ................................................................................................................ 8

    A.      Mott's Products' Labels Are Not Misleading to a Reasonable Consumer. ............ 8

    B.      The Complaint Fails To State a Claim for Breach of Express Warranty or
        Unjust Enrichment. .............................................................................................. 12

    C.      The NLEA Expressly Preempts Plaintiffs' State Law Claims............................. 13

    D.      The Court Lacks Subject Matter Jurisdiction...................................................... 16

    E.      The Plaintiff Does Not Have Article III Standing to Seek Injunctive Relief........ 17

    F.      In the Alternative, the Court Should Stay the Case Under the Primary
        Jurisdiction Doctrine. .......................................................................................... 18

V.      CONCLUSION ............................................................................................................ 21

# TABLE OF AUTHORITIES

**Page**

CASES

*Ashcroft v. Iqbal*,
556 U.S. 662...................................................................................................8

*Axon v. Citrus World, Inc.*,
2018 WL 6448648 (E.D.N.Y. Dec. 10, 2018) ...................................................10, 12

*Becerra v. Dr Pepper / Seven Up, Inc.*,
2018 WL 3995832 (N.D. Cal. Aug. 21, 2018)............................................................9

*Broomfield v. Craft Brew Alliance*,
2017 WL 5665654 (N.D. Cal. Nov. 27, 2017) (Freeman, J.) ...................................17

*Carter v. Oath Holdings, Inc.*,
2018 WL 3067985 (N.D. Cal. Jun. 21, 2018) (Freeman, J.).......................................8

*Chuang v. Dr Pepper Snapple Group, Inc.*,
2017 WL 4286577 (C.D. Cal. Sept. 20, 2017)....................................................12, 13

*Clark v. Time Warner Cable*,
523 F.3d 1110 (9th Cir. 2008).................................................................................18

*Cordes v. Boulder Brands, USA, Inc.*,
2018 WL 6714323 (C.D. Cal. Oct. 17, 2018) ..........................................................17

*In re Countrywide Fin. Corp. Sec. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008).....................................................................7

*Davidson v. Kimberly-Clark Corp.*,
873 F.3d 1103 (9th Cir. 2017), *as amended on denial of reh'g en banc*, 889
F.3d 956 (9th Cir. 2018)...................................................................................17, 18

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016)..................................................................................8, 9

*Fareed Sepehry-Fard v. Santa Clara County Court*,
2018 WL 6025606 (N.D. Cal. Nov. 16, 2018) (Freeman, J.) ....................................8

*Feitelson v. Google Inc.*,
80 F. Supp. 3d 1019 (N.D. Cal. 2015) (Freeman, J.) ................................................8

*Geertson Farms, Inc. v. Johanns*,
439 F. Supp. 2d 1012 (N.D. Cal. 2006) ..................................................................16

1

### TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*In re General Mills Glyphosate Litig.*,

4

2017 WL 2983877 (D. Minn. July 12, 2017)................................................................... passim

*In re General Mills Kix Cereal Litig.*,

5

2016 WL 5110499 (D.N.J. June 13, 2016) ...............................................................19

6

*Gibson v. Quaker Oats Co.*,

7

2017 WL 3508724 (N.D. Ill. Aug. 14, 2017)...........................................................15

8

*Kane v. Chobani*,

645 F. App'x 593 (9th Cir. 2016) ....................................................................18, 19

9

*In re KIND LLC "Healthy and All Natural" Litig.*,

10

209 F. Supp. 3d 689 (S.D.N.Y. 2016)..............................................................19, 20

11

*Kinn v. Quaker Oats Co.*,

12

2017 WL 3922068 (N.D. Ill. Sept. 6, 2017) ...........................................................10

13

*Leonhart v. Nature's Path Foods, Inc.*,

2014 WL 6657809 (N.D. Cal. Nov. 21, 2014) (Freeman, J.) ...................................18

14

*Maxwell v. Unilever US Inc.*,

15

2016 WL 5110498 (N.D. Cal. Mar. 30, 2016) .........................................................19

16

*Mills v. Giant of Md.*,

441 F. Supp. 2d 104 (D.D.C. 2006) ....................................................................14

17

18

*Nat. Res. Def. Council v. Johnson*,

461 F.3d 164 (2nd Cir. 2006)..............................................................................17

19

*Nemphos v. Nestle Waters N. Am., Inc.*,

20

775 F.3d 616 (4th Cir. 2015)....................................................................14, 15, 16

21

*In re Nexus 6P*,

22

293 F. Supp. 3d 888 (N.D. Cal. 2018) ..................................................................13

23

*Painter v. Blue Diamond Growers*,

--- F. App'x ----, 2018 WL 6720560 (9th Cir. Dec. 20, 2018) ...........................9, 11

24

25

*Panitch v. Quaker Oats Co.*,

2017 WL 3922149 (N.D. Ill. Sept. 6, 2017) ...........................................................10

26

*Pelayo v. Nestle USA, Inc.*,

27

989 F. Supp. 2d 973 (C.D. Cal. 2013)...................................................................11

28

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

3

4

*In re PepsiCo Bottled Water Mktg. & Sales Practices Litig.*,
    588 F. Supp. 2d 527 (S.D.N.Y. Dec. 8, 2008) .........................................................................15

5

*Romero v. Flower's Bakeries*,
    2016 WL 469370 (N.D. Cal. Feb. 8, 2016) (Freeman, J.) .........................................................9

6

7

*Rosillo v. Annie's Homegrown, Inc.*,
    2017 WL 5256345 (N.D. Cal. Oct. 17, 2017).....................................................................19, 20

8

9

*Rugg v. Johnson & Johnson*,
    2018 WL 3023493 (N.D. Cal. Jun. 18, 2018) (Freeman, J.)....................................9, 11, 12, 13

10

*Salazar v. Honest Tea, Inc.*,
    74 F. Supp. 3d 1304 (E.D. Cal. 2014) .....................................................................................14

11

12

*Shin v. Campbell Soup Co.*,
    2017 WL 3534991 (C.D. Cal. Aug. 9, 2017) ...........................................................................12

13

14

*Stickrath v. Globalstar, Inc.*,
    527 F. Supp. 2d 992 (N.D. Cal. 2007) .......................................................................................8

15

*Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*,
    307 F.3d 775 (9th Cir. 2002).............................................................................................18, 19

16

17

*Turek v. General Mills, Inc.*,
    662 F.3d 423 (7th Cir. 2011)....................................................................................................14

18

19

*Viggiano v. Johnson & Johnson*,
    2016 WL 5110500 (C.D. Cal. June 21, 2016) ..........................................................................19

20

*Walker v. B&G Foods, Inc.*,
    2016 WL 463253 (N.D. Cal. Feb. 8, 2016)........................................................................13, 14

21

**STATUTES**

22

7 U.S.C. § 136a .................................................................................................................................20

23

21 U.S.C. § 301 .................................................................................................................................19

24

21 U.S.C. § 321 .........................................................................................................................4, 10, 11

25

21 U.S.C. § 341 .................................................................................................................................19

26

21 U.S.C. § 342 ...................................................................................................................................3

27

21 U.S.C. § 343 ........................................................................................................................ passim

28

# TABLE OF AUTHORITIES
**(continued)**

Page

21 U.S.C. § 343-1(a) ...................................................................................2, 13, 14, 20

21 U.S.C. § 346a ...........................................................................................2, 3, 7, 16, 17

Cal. Civ. Code § 1750 ....................................................................................................6

Cal. Civ. Code § 17200 ..................................................................................................6

Cal. Civ. Code § 17500 ..................................................................................................6

Federal Food, Drug and Cosmectic Act ("FDCA") ................................................. passim

Nutrition Labeling and Education Act ("NLEA") .................................................... passim

**RULES**

Fed. R. Civ. P. 12 ..........................................................................................................1

Fed. R. Civ. P. 12(b)(1)...............................................................................................8, 16

Fed. R. Civ. P. 12(b)(6)...............................................................................................7, 14

L.R. 7-4(a)(3) .................................................................................................................7

**REGULATIONS**

7 C.F.R. § 205.1 .............................................................................................................3

7 C.F.R. § 205.671 .....................................................................................................3, 11

21 C.F.R. § 100.1(c)(4) .................................................................................................14

40 C.F.R. § 180.30(b) ...........................................................................................3, 16, 17

40 C.F.R. § 180.578 ..................................................................................................3, 10

80 Fed. Reg. 69905 ..................................................................................................6, 7, 18

**OTHER AUTHORITIES**

H.R. Rep. No. 101-538 (1990), reprinted in 1990 U.S.C.C.A.N. 336 (1990 WL 259223) ................................................................................................................13

EPA, *Schedule for Review of Neonicotinoid Pesticides*, https://www.epa.gov/pollinator-protection/schedule-review-neonicotinoid-pesticides (last visited Jan. 14, 2019)......................................................................20

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

EPA, *Acetamiprid Final Work Plan*

4

*Registration Review Case No. 7617, Dkt. No. EPA-HQ-OPP-2012-0329* (Mar.
18, 2013) ......................................................................................................................20

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:18-cv-06664-BLF
DEFENDANTS' MOTION TO DISMISS

## I.      INTRODUCTION

Plaintiff Hawyuan Yu's Complaint alleges that the terms "Natural" and "All Natural Ingredients" on the labels of Defendants' Mott's, LLP and Dr Pepper Snapple Group, Inc.'s (collectively, "Mott's") Applesauce and Apple Juice Products ("Products") are interpreted by "reasonable consumers" to mean that the Products are "free" from "any" residual traces of pesticides used during crop production. Compl. ¶¶ 15, 30. In other words, Mr. Hu believes that "natural" means absolute molecular purity in foods. So, he thinks it was misleading for Mott's to use the term "natural," because the Products allegedly contain either 0.02 or 0.06 parts per *million* of the EPA-approved pesticide acetamiprid, an amount that is only a tiny fraction of what federal law expressly allows in these foods. No "reasonable consumer" shares this view.

The "reasonable consumer" standard is an important Rule 12 checkpoint in food labeling cases. It prevents implausible complaints from proceeding where a plaintiff offers a strained and idiosyncratic interpretation of a contested term, like the Plaintiff's proffered definition for the term "natural" here. Indeed, at least three federal courts have held—in cases filed by the same Plaintiff's counsel and all asserting the same basic theory of deception—that no "reasonable consumer" interprets the term "natural" the way Plaintiff does. *See infra* Part IV.A. These courts recognize that given the widespread use of pesticides, and the fact that federal law expressly anticipates that foods will contain some trace amount of pesticides, "[i]t would be nearly impossible to produce a processed food with no trace of any synthetic molecule." *In re General Mills Glyphosate Litig.*, 2017 WL 2983877, at *6 (D. Minn. July 12, 2017). The Plaintiff's consumer protection claims cannot survive review under this authority. Plaintiff's breach of warranty and unjust enrichment claims fail for the same reason, as neither claim may be premised on implausible allegations of deception like those in the Complaint.

Additionally, the Complaint's repeated demand that Mott's should be forced to "disclose" the potential presence of trace levels of acetamiprid in its Products, and that it was misleading to "omit" this information, is expressly preempted by federal law. *See* Compl. ¶¶ 19, 34, 38, 47, 61. The relevant labeling standard in the federal Food, Drug and Cosmetics Act ("FDCA"), 21 U.S.C. § 343, *et seq.*, imposes no requirement that labels of foods like Mott's Applesauce and Apple Juice

disclose the potential presence of trace pesticides. 21 U.S.C. § 343(i)(2). Congress determined this labeling standard must be followed nationwide and uniformly, and so enacted an express preemption provision that bars any labeling requirements "not identical" to the federal requirement. 21 U.S.C. § 343-1(a)(2). Plaintiff's demand that the Products' labeling bear some disclosure about residual pesticides, which federal law undoubtedly does not require, is therefore expressly preempted.

Next, in deference to the EPA's expertise, Congress has strictly circumscribed federal courts' jurisdiction over actions that purport to challenge the residual pesticide levels the agency has set. *See* 21 U.S.C. §§ 346a(h)(1), (5). So, in addition to the Complaint's merits defects, this Court lacks subject matter jurisdiction over the case, which is in effect a challenge to the EPA's determination that trace residual amounts of acetamiprid are permitted in foods.

Finally, if the Complaint is not dismissed outright—and there is ample authority supporting that result—then it should be stayed under the primary jurisdiction doctrine. The FDA has open and active administrative proceedings to consider a definition for the term "natural" on food labeling. Courts in this District and elsewhere have stayed putative class action litigation over the word "natural" in deference to this process.

For all these reasons, the Complaint should be dismissed with prejudice or, if not, stayed on primary jurisdiction grounds.

## I.    FACTUAL BACKGROUND

### A.    Federal Law Extensively Regulates the Use of Pesticides and Related Food Labeling Requirements.

#### 1.    The EPA and FDA jointly implement a comprehensive regulatory regime for pesticides and have determined that acetamiprid is safe and that trace amounts of it are allowed in food.

The EPA and FDA are the primary federal agencies responsible for the regulation of pesticides. Together, they implement a coordinated and comprehensive body of statutes and regulations that ensure all pesticides used in agricultural products are safe for human health and the environment, and that pesticide chemical residues in foods do not exceed certain limits, or tolerances. *See generally* 21 U.S.C. § 346a.

The EPA is responsible for establishing the tolerance levels for individual pesticides. *Id.* To approve a given tolerance the agency must determine that the proposed tolerance level is "safe," meaning it must conclude with "reasonable certainty" that "no harm will result from aggregate exposure to the pesticide chemical residue, including all anticipated dietary exposures and all other exposures for which there is reliable information." *Id.* § (b)(2)(A)(ii). In turn, the FDA expressly permits foods to contain pesticide residues, provided the amounts of the residues do not exceed the tolerances set by the EPA. *See* 21 U.S.C. § 342(a)(2)(B).

Acetamiprid is one of many federally-approved pesticides deemed "safe" under this jointly administered framework. *See* 40 C.F.R. § 180.578. The EPA has thus established specific residual "tolerances" for acetamiprid, which represent the amount of acetamiprid permitted in foods. The EPA tolerance for "pome" fruit, which includes apples, is 1.0 parts per million ("ppm"). *Id.*

Trace amounts of approved pesticides, including acetamiprid, are likewise permitted in USDA certified "organic" foods; the tolerance for acetamiprid in apples under "organic" standards is 0.05 ppm. *See* 7 C.F.R. § 205.1 *et seq.* (Nat'l Organic Program regulations); 7 C.F.R. § 205.671 (food may be labeled "organic" so long as pesticide residue is not "greater than 5 percent of the [EPA's] tolerance for the specific residue detected").

Finally, federal law provides that challenges to the EPA's tolerance levels for pesticide residues are committed exclusively to EPA administrative processes and are not cognizable in federal district courts. *See* 21 U.S.C. § 346a(h)(1)–(5). The exclusive mechanism by which a party can contest the EPA's determinations at the conclusion of the EPA's administrative processes is by filing an action in the Circuit Courts of Appeal. *See* 21 U.S.C. § 346a(g)(2)(A), (B); *id.* § 346a(h)(1); 40 C.F.R. § 180.30(b).

**2.    Congress and the FDA have determined that labels of packaged foods do not need to disclose the presence of trace pesticides like acetamiprid.**

The FDA has the additional responsibility of establishing uniform, national standards for food labeling. *See generally* 21 U.S.C. § 343. FDA regulations speak to whether and when information about pesticides residues is required on food labels. *Id.* § 343(l).

Specifically, 21 U.S.C. § 343(l) of the FDCA only requires that food labels disclose the

presence of pesticide residues for foods classified as "raw agricultural commodities" where the pesticide has been "applied after harvest." A "raw agricultural commodity" is defined as "any food in its raw or natural state" and thus does not extend to packaged foods whose ingredients have been processed in some way. *See* 21 U.S.C. § 321(r). The statute further specifies that a label declaring "the presence of such chemical" is required only on the "shipping container" of the commodity. 21 U.S.C. § 343(l). After the agricultural commodity is "removed from the shipping container" and "displayed for sale at retail out of such container," the labeling requirement ceases to apply. *Id.*

Packaged foods that are not "raw agricultural commodities" are not subject to this labeling requirement. Instead, multi-ingredient packaged foods are subject to an entirely different labeling standard, 21 U.S.C. § 343(i)(2). Section 343(i)(2) imposes no labeling requirement whatsoever for pesticides. It requires only that the food's ingredients are described using the "common or usual name of each such ingredient" in the food. *Id.* There is no allegation that Mott's fails to meet this standard, as the Products' labels confirm. *See* Declaration of Charles C. Sipos in Support of Request for Judicial Notice (hereinafter "RJN"), Ex. A (true and correct copies of the Products' labels).

Published FDA policy corroborates the distinction drawn between Section 343(l) and Section 343(i)(2). The FDA maintains a Compliance Policy Guide ("CPG") directed to residual pesticides and food labeling.  *See* RJN Ex. B (FDA, "CPG Sec. 562.700 Labeling of Food Bearing Residues of Pesticide Chemicals") (Reissued Feb. 1, 1989) ("Pesticide Labeling Policy"). The Pesticide Labeling Policy states that there is no labeling obligation to disclose the presence of trace pesticides in foods like the Mott's Products at issue: "Pesticide residues resulting from preharvest application to raw agricultural commodities *have never been considered ingredients subject to the label declaration required by [§ 343(i)(2)] of the [FDCA]." Id.* (emphasis added).

More generally, pesticide residues do not fall within the FDCA's definition of a "food additive." *See* 21 U.S.C. § 321(s). "Food additive" is broadly defined as "*any substance* the intended use of which results, or may reasonably be expected to result, directly or indirectly, in its becoming *a component* or otherwise *affecting the characteristics of any food*." *Id.* (emphasis added). Yet, Congress exempted from this definition of "food additive," any "pesticide chemical residue in or on . . . processed food." *Id*. § 321(s)(1). Thus, the FDCA classifies trace pesticide

residues—like the trace amounts of acetamiprid at issue in this litigation—as something that is not a "component" of food, and that does not "affect[] the characteristics" of food. *Id.*

**B.      The Complaint Alleges That the Presence of *Any* Amount of Acetamiprid in the Products Is Misleading.**

Plaintiff alleges that the use of the word "Natural" on Mott's Apple Juice and "All Natural Ingredients" on Mott's Applesauce is misleading because of the possibility of trace acetamiprid in the Products. Compl. ¶¶ 21, 37. The Complaint summarily alleges that no "reasonable consumer" would expect the Products to contain any trace pesticides given this language. *Id.* ¶ 37.

The Complaint also repeatedly alleges that it is misleading for Mott's to "fail to disclose" or "omit" information about the possible presence of trace acetamiprid. *Id.* ¶ 19 ("No synthetic and unnatural chemical is disclosed anywhere on the Products' packaging."); *id.* ¶ 34 ("Plaintiff brings this suit against Defendants based on misrepresentations and omissions . . . "); *id.* ¶ 38 ("Nowhere on the Products' packaging or on Defendants' website to Defendants mention the presence of [trace acetamiprid] . . ."); *id.* ¶ 47 ("Failing to disclose that a product represented as made of 'All Natural Ingredients' and/or as 'natural' in fact contains [trace acetamiprid] is an omission of relevant fact."); *see also id.* ¶ 61.

According to the Complaint, the amount of trace acetamiprid detected in the Products is 0.06 ppm in Mott's Applesauce and 0.02 ppm in Mott's Apple Juice. *Id.* ¶ 39. The EPA's 1.0 ppm tolerance for acetamiprid is thus more than 16 times (or 1600%) higher than what the Complaint alleges is in the Applesauce, and 50 times (or 5,000%) higher than what Plaintiff alleges is in the Apple Juice. *See* Part IV.A, *infra*. The Complaint does not place any particular significance on the levels detected—i.e., Plaintiff does not contend that trace amounts of acetamiprid at these levels poses any safety risk to him or the public or violates any applicable law or regulation. The Complaint nonetheless goes on to allege that the presence of "*any*" amount of trace acetamiprid in the Products renders the use of "natural" misleading. Compl. ¶ 51 (emphasis added); *id.* ¶ 30 (alleging Plaintiff expected the Products to be "free" of acetamiprid). The Plaintiff does not allege any intention to buy these Mott's Products in the future.

Based on these allegations, the Complaint pleads three causes of action on behalf of a

putative California class: (1) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750; (2) California's False Advertising Law ("FAL"), Cal. Civ. Code § 17500; and (3) California's Unfair Competition Law ("UCL") Cal. Civ. Code § 17200. Compl. ¶¶ 83, 96, 102. The Complaint also asserts, on behalf of a putative nationwide class, claims for breach of express warranty and unjust enrichment. *Id.* ¶¶ 113–122. The Complaint does not identify which State's law it relies on for these two claims. *Id.* Finally, Plaintiff seeks both damages and injunctive relief. *See* Request for Relief ¶¶ G, H.

## C.   The FDA is Currently Engaged in Administrative Processes to Define the Term "Natural" For Food Labeling.

The issue of whether and how to define the term "natural" for food labeling is currently under active under consideration by the FDA. In November 2015, the FDA announced a request for information and public comment on use of the term "natural" in food labeling. *See Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments*, 80 Fed. Reg. 69905 (Nov. 12, 2015). The FDA took this step, the first in its formal rulemaking process, in response to citizen petitions and the proliferation of consumer class actions on the issue, which led several federal courts to request administrative determinations regarding the use of the term.

Through May 10, 2016, the FDA accepted public comment on questions such as: (1) "Should [the FDA] define, through rulemaking, the term 'natural,'" (2) "If we define the term 'natural,' what types of food should be allowed to bear the term 'natural,'" and (3) "If we were to revise our policy regarding the use of the term 'natural' or engage in rulemaking to establish a regulatory definition for 'natural,' should certain production practices, for example . . . the use of pesticides . . . be a factor in defining 'natural'"? *Id.* at 69908. The FDA has received extensive input from the public (7,690 comments), which are currently under consideration by the Agency.

Throughout the course of 2018, the FDA made several public statements that the Agency is actively reviewing the issue, most recently in a December 19, 2018, letter from FDA Commissioner Scott Gottlieb to House Representative David Valadao. *See* RJN, Ex. C. In that letter, Commissioner Gottlieb noted that the definition of "natural," is "an important matter for consumers

and the food industry." *Id.* He confirmed that the Agency had reviewed and considered the extensive comments submitted and concluded by emphasizing: "FDA is actively working on this issue, and in 2019, FDA plans to publicly communicate next steps regarding the Agency policies related to 'natural.'" *Id.*

## II.     STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(a)(3))

1.     Whether the Court should dismiss the Complaint's consumer protection claims, because the terms "Natural" and "All Natural Ingredients" on Mott's Products' labels do not cause a "reasonable consumer" to believe that the Products are "free" of "any" trace pesticides.

2.     Whether the Court should dismiss the breach of warranty and unjust enrichment claims for failure to state a claim.

3.     Whether the Court should dismiss the Complaint as expressly preempted under the Nutrition Labeling and Education Act ("NLEA"), as there is no "requirement" under federal law to disclose the potential presence of trace pesticides on the Products' labels.

4.     Whether the Court lacks subject matter jurisdiction under 21 U.S.C. § 346a(h)(5), which exclusively commits review of EPA's established tolerances for residual pesticides to the EPA and the Circuit Courts of Appeal.

5.     Whether the request for injunctive relief should be dismissed due to lack of Article III standing, given Plaintiff's failure to plead any intent to purchase the Products in the future.

6.     Whether the case should be stayed on primary jurisdiction grounds, in deference to the FDA's ongoing administrative proceedings to define the term "natural."

## III.     STANDARD OF REVIEW

### A.     Rule 12(b)(6)

"A motion to dismiss [under Rule 12(b)(6)] tests whether the allegations in a complaint, if true, amount to an actionable claim." *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1145 (C.D. Cal. 2008) (citing *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

1    liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

2    *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard 'asks for more than a

3    sheer possibility that a defendant has acted unlawfully,' and a complaint that pleads facts that are

4    'merely consistent with' a defendant's liability 'stops short of the line between possibility and

5    plausibility.'" *Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1025 (N.D. Cal. 2015) (Freeman, J.)

6    (quoting *Iqbal*, 556 U.S. at 678).

7          "In evaluating the sufficiency of a complaint's allegations, a court must assume the

8    facts alleged in the complaint to be true unless the allegations are controverted by exhibits attached

9    to the complaint, matters subject to judicial notice, or documents necessarily relied on by

10   the complaint and whose authenticity no party questions." *Stickrath v. Globalstar, Inc.*, 527 F.

11   Supp. 2d 992, 995 (N.D. Cal. 2007) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th

12   Cir. 2001). However, "threadbare recitals the elements of a cause of action, supported by mere

13   conclusory statements, do not suffice." *Carter v. Oath Holdings, Inc.*, 2018 WL 3067985, at *2

14   (N.D. Cal. Jun. 21, 2018) (Freeman, J.) (quoting *Iqbal*, 556 U.S. at 678).

15   **B.      Rule 12(b)(1)**

16         A motion to dismiss under Rule 12(b)(1) tests the subject matter jurisdiction of the Court.

17   *See* Fed R. Civ. P. 12(b)(1). Dismissal is appropriate under Rule 12(b)(1) if the plaintiff's

18   allegations fail to establish that the Court lacks subject matter jurisdiction over the action. *Fareed*

19   *Sepehry-Fard v. Santa Clara Cty. Court*, 2018 WL 6025606, at *1 (N.D. Cal. Nov. 16, 2018)

20   (Freeman, J.) ("On a motion to dismiss pursuant to Rule 12(b)(1), which challenges a court's

21   subject matter jurisdiction over a claim, the burden is on the plaintiff, as the party asserting

22   jurisdiction, to establish that subject matter jurisdiction exists.").

23                                **IV.     ARGUMENT**

24   **A.      Mott's Products' Labels Are Not Misleading to a Reasonable Consumer.**

25         To state a claim for relief under the UCL, FAL, and CLRA, a plaintiff must plausibly allege

26   the conduct at issue is likely to deceive a "reasonable consumer." *Ebner v. Fresh, Inc.*, 838 F.3d

27   958, 965 (9th Cir. 2016). To meet this standard in putative class actions involving food labeling,

28   that requires a plaintiff to allege facts that make it probable a "significant portion of the consuming

1   public" could be misled by those labels. *Id.* ("[Meeting the reasonable consumer standard] requires

2   more than a mere possibility that [the] label might conceivably be misunderstood by some few

3   consumers viewing it in an unreasonable manner. Rather, the reasonable consumer standard

4   requires a probability that a significant portion of the consuming public or of targeted consumers,

5   acting reasonably in the circumstances, could be misled.") (internal quotations and citation

6   omitted); *accord Romero v. Flower's Bakeries*, 2016 WL 469370, at *6 (N.D. Cal. Feb. 8, 2016)

7   (Freeman, J.).

8       Where a complaint fails to plausibly allege that a "reasonable consumer" would be misled

9   by the labeling at issue, courts may—and frequently do—dismiss on the pleadings. *See, e.g.*, *Rugg*

10  *v. Johnson & Johnson*, 2018 WL 3023493, at *3 (N.D. Cal. Jun. 18, 2018) (Freeman, J.) ("Because

11  the reasonable consumer standard is an objective standard, claims may be dismissed as a matter of

12  law where an alleged statement . . . in context, is such that no reasonable consumer could be misled

13  in the manner claimed by the plaintiff.") (internal quotations and citation omitted); *Painter v. Blue*

14  *Diamond Growers*, --- F. App'x ----, 2018 WL 6720560, at *1 (9th Cir. Dec. 20, 2018)

15  ("[Plaintiff's] complaint does not plausibly allege that a reasonable consumer would be deceived

16  into believing that [defendant's] almond milk products are nutritionally equivalent to dairy milk

17  based on their package labels and advertising."). Dismissal under this standard is particularly

18  appropriate where the complaint offers a strained and implausible definition for the challenged

19  labeling claim or statement. *See Becerra v. Dr Pepper / Seven Up, Inc.*, 2018 WL 3995832, at *4–

20  7 (N.D. Cal. Aug. 21, 2018), *appeal docketed*, No. 18-16721 (9th Cir. Sept. 12, 2018) (dismissing

21  with prejudice under the "reasonable consumer" standard where the complaint failed to "allege

22  facts that plausibly support that the reasonable consumer would be deceived by the 'diet' label").

23      The Plaintiff's specific theory of deception here—that a "reasonable consumer" interprets

24  the term "natural" on a food label to mean that the product is "free" (Compl. ¶ 15) of residual

25  pesticides down to the molecular level—has been repeatedly rejected as too implausible to meet

26  the "reasonable consumer" standard. *See In re General Mills Glyphosate Litig.*, 2017 WL 2983877,

27  at *5 ("Plaintiffs have failed to plausibly allege that the statement 'Made with 100% Natural Whole

28  Grain Oats' means, or could be interpreted by a reasonable consumer to mean, that there is no trace

[of the pesticide] glyphosate in Nature Valley Products."); *Panitch v. Quaker Oats Co.*, 2017 WL 3922149, at *3 (N.D. Ill. Sept. 6, 2017) ("Plaintiffs have [not] plausibly alleged that reasonable consumers share their interpretation of 'natural' as indicating a product is free of trace amounts of any pesticide down to the molecular level."); *Kinn v. Quaker Oats Co.*, 2017 WL 3922068, at *3 (N.D. Ill. Sept. 6, 2017) (same); *Axon v. Citrus World, Inc.*, 2018 WL 6448648, at *6 (E.D.N.Y. Dec. 10, 2018) ("[I]t is not plausible to allege that a reasonable consumer would interpret the brand label 'Florida's Natural' as meaning that the products contain no traces of [the pesticide] glyphosate.") (all cases applying "reasonable consumer" standard and dismissing complaints under Rule 12(b)(6)). This line of authority compels dismissal of the Complaint's consumer protection claims here, too.

Just like the plaintiffs in *Axon*, *Kinn*, *Panitch*, and *In re General Mills Glyphosate Litig.*, the Plaintiff alleges that a "reasonable consumer" interprets the terms "Natural" or "All Natural Ingredients" to mean that Mott's Products do not contain "any" residual amounts of trace pesticides. *See* Compl. ¶ 51. This definition is inherently implausible: "It would be nearly impossible to produce a processed food with no trace of any synthetic molecule." *In re General Mills Glyphosate Litig*, 2017 WL 2983877, at *5. And the fact that the Mott's Products are alleged to contain trace amounts of acetamiprid at levels that are a tiny fraction of what federal law expressly allows in these foods likewise illustrates the implausibility of Plaintiff's interpretation of "natural." *See Axon*, 2018 WL 6448648, at *6 ("Given the widespread use of herbicides, the court finds it is implausible that a reasonable consumer would believe that a product labeled ['Florida's Natural'] could not contain a trace amount of glyphosate that is far below the amount deemed tolerable by the FDA.") (internal quotations and citation omitted) (alteration in original); *see also* Compl. ¶ 39 (alleging acetamiprid present at 0.02 ppm and 0.06 ppm); 40 C.F.R. § 180.578 (EPA establishing permitted tolerance for residual acetamiprid in apples at 1.0 ppm).

These courts' reasoning is corroborated by Congress' decision to specifically exempt trace pesticides, like the acetamiprid allegedly present in Mott's Products, from the FDCA's broad definition of the term "food additive." *See* 21 U.S.C. § 321(s). This exemption means that the presence of trace pesticides in processed food is not considered either a "component" of food, nor

something "affecting [its] characteristics." *Id.* No reasonable consumer would believe it is misleading to refer to Mott's Products as "natural," simply because the food has a substance— albeit in the millionths—that does not "affect [the food's] characteristics." *Id.*; *see also Painter*, 2018 WL 6720560, at *2 (affirming dismissal under reasonable consumer standard where plaintiff's theory of deception inconsistent with FDA regulatory definitions for food).

The levels of acetamiprid allegedly detected in Mott's Products are so low, in fact, that they are near or below the levels permitted in organic food.[1] This further confirms the implausibility of the Plaintiff's theory, given that a "reasonable consumer" would not hold foods labeled "natural" to more stringent standards than organic foods. *See, e.g.*, *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 979 (C.D. Cal. 2013) ("it is implausible that a reasonable consumer would believe ingredients allowed in a product labeled 'organic'. . . would not be allowed in a product labeled 'all natural'"); *In re General Mills Glyphosate Litig*, 2017 WL 2983877, at *5 ("It is implausible that a reasonable consumer would believe that a product labelled as having one ingredient—oats—that is '100% Natural' could not contain a trace amount of glyphosate that is far below the amount permitted for organic products.").

Nor does the Complaint point to any facts to suggest that Plaintiff's definition is plausible, beyond the conclusory and self-serving assertion that a "reasonable consumer" would not expect there to be any trace pesticides in the Products. Compl. ¶ 15. This is simply a recitation of one of the elements of Plaintiff's UCL, FAL, and CLRA claims. It is not sufficient to ward off dismissal of what is an otherwise implausible interpretation of the term "natural." *See Rugg*, 2018 WL 3023493, at *3 ("[Defendant] argues that Plaintiffs have not alleged facts showing that a reasonable consumer

---

[1] Pome fruits labeled "organic" may contain up to 0.05 PPM acetamiprid. *See* 7 C.F.R. § 205.671. The amount of acetamiprid Plaintiff allegedly detected in the Applesauce is 0.06 PPM, which is nearly indistinguishable from the organic threshold. The difference between 0.06 and 0.05 per million is the difference between .00000006 and .00000005 or one more for every 100 million. The Apple Juice allegedly contains only 0.02 PPM, which is 60% lower than what is allowed on fruits labeled organic. Compl. ¶ 39.

would understand 'hypoallergenic' to have the definition attributed to it by Plaintiffs. The Court agrees."); *Axon*, 2018 WL 6448648, at *6; *In re General Mills Glyphosate Litig.*, 2017 WL 2983877 at *5.

For all these reasons, Plaintiff's UCL, FAL, and CLRA claims should be dismissed.

## B.    The Complaint Fails to State a Claim for Breach of Express Warranty or Unjust Enrichment.

Where a claim for breach of express warranty relies on an unreasonable construction of the term allegedly breached, the cause of action fails and must be dismissed. *See Rugg*, 2018 WL 3023493, at *4 ("The Court concludes that the claim for breach of express warranty is subject to dismissal because it depends on Plaintiff's implausible definition of 'hypoallergenic.'"); *see also In re General Mills Glyphosate Litig.*, 2017 WL 2983877, at *7 ("The Court further concludes Plaintiffs failed to plausibly allege a breach of warranty because Defendant did not warrant that [the product] would be free from trace glyphosate.").

A similar analysis applies to claims for unjust enrichment: such claims must be dismissed where they depend on an implausible theory of deception. *See Shin v. Campbell Soup Co.*, 2017 WL 3534991, at *8 (C.D. Cal. Aug. 9, 2017) ("[The unjust enrichment claim] is contingent upon the allegation that [plaintiff] relied to her detriment on [defendant's] fraudulent misrepresentations or misleading statements to the benefit of [defendant]. Because no such allegation is plausible . . . the Court GRANTS Campbell's motion to dismiss her unjust enrichment claim."); *Chuang v. Dr Pepper Snapple Group, Inc.*, 2017 WL 4286577, at *8 (C.D. Cal. Sept. 20, 2017) ("Because Plaintiff has failed to state claims under the California consumer protection statutes [due to implausibility], the unjust enrichment claim fails as well.").

This line of authority disposes of Plaintiff's breach of warranty and unjust enrichment claims here, too. Both these causes of action depend on Plaintiff's unreasonable interpretation of the term "natural." Compl. ¶¶ 114–15 (alleging breach of warranty based on "natural" claim on Products' labeling, which Plaintiff alleges did not "conform" to his interpretation of that term); *id.* ¶¶ 120–22 (alleging unjust enrichment based on same conduct). Because Plaintiff's construction of the term "natural" as meaning "free" of "any" trace pesticides, Compl. ¶¶ 2, 30, these claims fail

1     along with this UCL, FAL, and CLRA claims. *Rugg*, 2018 WL 3023493, at *4; *Chuang*, 2017 WL

2     4286577, at *8.

3          The breach of express warranty and unjust enrichment claims also fail for the separate and

4     independent reason that the Complaint fails to identify the applicable State law for these claims.

5     "Due to variances among state laws, failure to allege which state governs a common law claim is

6     grounds for dismissal." *In re Nexus 6P*, 293 F. Supp. 3d 888, 933 (N.D. Cal. 2018) (internal citation

7     omitted); *accord Rugg*, 2018 WL 3023493, at *4. Here, the Complaint asserts both of these causes

8     of action on behalf of a putative nationwide class but fails to identify the applicable State law. *See*

9     Compl. ¶¶ 113–22. So, this additional defect likewise compels dismissal of both these claims.

10     **C.**     **The NLEA Expressly Preempts Plaintiffs' State Law Claims**

11          The Complaint repeatedly alleges that Mott's misleadingly "omits" and fails "to disclose"

12     the presence of acetamiprid on the Products' labels. Compl. ¶¶ 19, 34, 38, 57, 61, Prayer for Relief

13     ¶ C. This demand seeks to impose a "requirement" for food labeling "not identical" to the federal

14     labeling requirements for Mott's Apple Juice and Applesauce. *See* 21 U.S.C. § 343-1(a)(2).

15     Accordingly, Plaintiff's claims are expressly preempted. *Id.*

16          The NLEA, enacted in 1990, amended the FDCA and aimed to "strengthen the [FDA's]

17     legal authority to require nutrition labeling on foods." H.R. Rep. No. 101-538 (1990), as reprinted

18     in 1990 U.S.C.C.A.N. 336, 337 (1990 WL 259223). The NLEA's purpose was to create uniform

19     national standards regarding the labeling of food. *Walker v. B&G Foods, Inc.*, 2016 WL 463253,

20     at *3 (N.D. Cal. Feb. 8, 2016) (citing *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir.

21     2015)). To implement Congress's goal of uniformity, the NLEA contains an express preemption

22     provision that bars any state law requirements "not identical" to the NLEA's corresponding label

23     requirements. 21 U.S.C. § 343-1(a). NLEA preemption bars any non-identical labeling

24     requirement, whether imposed via state statute or through litigation-based efforts. *See, e.g.*, *Walker*,

25     2016 WL 463253, at *3 (holding that state law mislabeling claims were expressly preempted by 21

26     U.S.C. § 343-1(a)(5)).

27          The term "not identical" under the NLEA means "that the State requirement directly or

28     indirectly imposes obligations or contains provisions concerning the composition or labeling of

1    food [that] . . . [a]re not imposed by or contained in the applicable [federal statute or regulation] . . .

2    or [d]iffer from those specifically imposed by or contained in the applicable [federal statute or

3    regulation]." 21 C.F.R. § 100.1(c)(4). In this context, "consistency is not the test; identity is." *Turek*

4    *v. General Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011). Accordingly, a consumer protection

5    lawsuit is appropriately subject to dismissal under Rule 12(b)(6) where it seeks to impose any new

6    or different labeling requirement than federal law requires. *See, e.g.*, *Walker*, 2016 WL 463253, at

7    *3 (collecting cases); *Salazar v. Honest Tea, Inc.*, 74 F. Supp. 3d 1304, 1313 (E.D. Cal. 2014)

8    (holding that "[b]ecause plaintiff's allegations [did] not show a violation of the FDCA, plaintiff's

9    state law claims [were] preempted; if allowed to proceed, the state law claims would impose

10   liability inconsistent with the FDCA."). Plaintiff's Complaint seeks to impose new requirements

11   for the labeling of Mott's Products that are "not identical" to federal law, and so his claims are

12   expressly preempted.

13       First, a plain reading of the statute reveals the FDCA imposes no labeling requirement to

14   disclose the presence of trace pesticides on foods like the Mott's Products. Rather, the relevant

15   statutory provision requires only that the label state the "common or usual name of each []

16   ingredient" in the food. *See* 21 U.S.C. § 343(i)(2). Mott's Products' labels do so. Compl. ¶ 19; RJN

17   Ex. A. And section 343(i)(2) falls within the NLEA's express preemption provision. *See* 21 U.S.C.

18   § 343-1(a)(2). Accordingly, Plaintiff's insistence that Mott's must disclose acetamiprid's presence

19   is preempted. *See Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 624 (4th Cir. 2015) (NLEA

20   preemption dismissal; complaint demanding disclosure of the presence of fluoride in bottled water

21   "not identical" to federal requirement); *Mills v. Giant of Md.*, 441 F. Supp. 2d 104, 106–08 (D.D.C.

22   2006) *aff'd*, 508 F.3d 11 (D.C. Cir. 2007) (NLEA preemption dismissal; complaint demanding

23   disclosure of risk of lactose intolerance on milk labels); *Turek*, 662 F.3d at 426–27 (NLEA

24   preemption dismissal; complaint demanding disclosure of inulin as source of fiber). Second,

25   Congress' decision not to require disclosure of trace pesticides in foods like Mott's Applesauce and

26   Apple Juice was not inadvertent. Section 343(l) of the FDCA *does* require the disclosure of the

27   presence of pesticides, but only for "raw agricultural commodities," and then only under limited

28   specified conditions. *See* 21 U.S.C. § 343(l). So, the FDCA plainly reflects Congress' choice to

require labeling of pesticides for some foods in some circumstances, and to not require it in others. This deliberate distinction in the statute further confirms that preemption applies to Plaintiff's claims. *See In re PepsiCo Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 537 (S.D.N.Y. Dec. 8, 2008) (dismissing complaint on NLEA preemption grounds for challenge to labeling of "purified" water, where FDA regulations drew distinction between requirements for "spring" versus "purified" water).

Third, the FDA's own interpretation of the FDCA reflects that there is no labeling requirement to disclose trace pesticides in foods like the Mott's Products. The FDA's Pesticide Labeling Policy confirms that: "*Pesticide residues resulting from preharvest application* to raw agricultural commodities *have never been considered ingredients subject to the label declaration required by [§ 343(i)(2)] of the FDCA.*" RJN Ex. B at 1; *see also id.* ("Policy: Residues of pesticide chemicals that are applied either pre-harvest or post-harvest to raw agricultural commodities which are the 'produce of the soil' *are exempt from the labeling requirements of sections [343(i)2]* . . . of the Act.") (emphases added).

Moreover, NLEA preemption applies with equal force to the Complaint's allegation that the "natural" claim on the Products' labels is misleading. Federal law applying the NLEA is clear that where: (1) the complaint alleges that a product label omits some information that the FDCA does not actually require, and (2) the complaint also challenges associated marketing for the product as misleading *because* of that omission, NLEA preemption extends to both aspects of the complaint. *See, e.g.*, *Nemphos*, 775 F.3d at 625 ("[Plaintiff asserts that [Defendants] misleadingly marketed and advertised their fluoridated bottled water products as especially beneficial to children. But this misleading marketing claim is essentially the same as [Plaintiff's] failure-to-warn claim—albeit dressed in different clothing. . . . [NLEA preemption] makes no exception for marketing or advertising in areas regulated by the FDA. The misleading-marketing claim thus fails for the same reason as the failure-to-warn claim. It would impose a requirement under state law that diverges from the federal standard."); *cf. Gibson v. Quaker Oats Co.*, 2017 WL 3508724, at *4 (N.D. Ill. Aug. 14, 2017) (dismissing complaint challenging certain marketing claims on preemption grounds given FDA and EPA's extensive oversight for regulation of glyphosate).

The sole reason that Plaintiff contends that the terms "natural" or "All Natural Ingredients" on the Products' labels are misleading, is because the Products allegedly contain trace acetamiprid. *See* Compl. ¶¶ 10, 15; *id.* ¶ 21 ("Because the Products contain [trace acetamiprid], Defendants' claims on the Products' labeling and in the Products' marketing that the Products are made of 'All Natural Ingredients' and/or are 'natural' are false and misleading."). Accordingly, claims premised on this language are barred by NLEA express preemption along with Plaintiff's underlying demand that acetamiprid's potential presence must be disclosed on the labels. *Nemphos*, 775 F.3d at 625–26. For the foregoing reasons, the Complaint should be dismissed in full, with prejudice, as expressly preempted by the NLEA.

**D.     The Court Lacks Subject Matter Jurisdiction**

The Complaint is also subject to dismissal pursuant to Rule 12(b)(1), as 21 U.S.C. § 346a(h) divests this Court of subject matter jurisdiction by operation of law.

While the Complaint is styled as a consumer protection challenge to the labeling and marketing of Mott's Products, the Complaint is, in effect, a challenge to the EPA's established tolerances for acetamiprid residue. *See* Compl. ¶ 13 (alleging that labels are misleading and acetamiprid misleadingly omitted notwithstanding that the "law does not preclude the use of acetamiprid in treating and harvesting crops and has made allowances for certain amounts of residues to remain on fruits and vegetables"). Yet, federal law commits challenges related to EPA pesticide tolerance determinations to the EPA in the first instance and vests the federal Courts of Appeal with exclusive jurisdiction to hear appeals arising from the EPA's administrative processes. 21 U.S.C. § 346a(h)(1), (5).

Once the EPA establishes regulations governing a certain pesticide tolerance level, its regulations are exclusively challengeable through a two-step process requiring: (1) the filing of a petition with the EPA requiring administrative exhaustion, and then, (2) limited judicial review at the federal appellate, *not* district court, level. *See id.* §§ 346a(d)(1), 346a(g)(2)(A), (B), 346a(h)(1), (5); 40 C.F.R. § 180.30(b). Federal courts have repeatedly enforced this jurisdictional bar in cases challenging EPA tolerance levels. *See, e.g.*, *Geertson Farms, Inc. v. Johanns*, 439 F. Supp. 2d 1012, 1021 (N.D. Cal. 2006) (granting motion to dismiss where claim relating to tolerance glyphosate fell

"squarely within section 346a(h)'s exclusive review provision"); *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 169, 176 (2nd Cir. 2006) (affirming dismissal for lack of subject-matter jurisdiction, in light of the "sweeping language" of § 346a(h)(5)).

The Complaint ignores this federally-mandated channel of review. Instead, Plaintiff asks this Court to impose liability for "*any*" amount of residual acetamiprid in Mott's Products, regardless of whether those amounts are below those federal law permits. Compl. ¶¶ 13, 51. The demand that this Court impose liability for the presence of acetamiprid at tolerances the EPA has approved, is an end-run around the statutorily-mandated process that dictates agency review in the first instances, and then a narrow channel of appellate review in the Circuit Courts. 21 U.S.C. §§ 346a(d)(1), 346a(g)(2)(A), (B), 346a(h)(1), (5); 40 C.F.R. § 180.30(b). Thus, the Court lacks subject matter jurisdiction over the action. *See Johnson*, 461 F.3d at 174 (affirming dismissal of claims challenging EPA tolerances).

**E.       The Plaintiff Does Not Have Article III Standing to Seek Injunctive Relief.**

A plaintiff seeking injunctive relief in a putative class action must have Article III standing to seek that relief, which requires a plausible allegation of potential future harm to the plaintiff. *See Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1113 (9th Cir. 2017), *as amended on denial of reh'g en banc*, 889 F.3d 956, 969–70 (9th Cir. 2018) (Article III standing for injunctive relief depends on plausible allegation of "an imminent or actual threat of future harm caused by [the defendant's] allegedly false advertising"). In cases involving allegedly misleading labeling, this requires some plausible allegation of the Plaintiff's intent to buy the product at issue in the future. *Id.*; *accord Broomfield v. Craft Brew Alliance*, 2017 WL 5665654, at *3–4 (N.D. Cal. Nov. 27, 2017) (Freeman, J.) (dismissing request for injunctive relief under *Davidson* for failure to allege future injury).

Here, the Complaint has no such allegation. The Plaintiff does not plead any future intention whatsoever to buy the Mott's Products. Nor would such future purchase intent be consistent with Plaintiff's allegation that he will not purchase any of Mott's Products unless he is assured that those Products are "free" of any trace amounts of pesticides. Compl. ¶ 30. As a result, the request for injunctive relief must be dismissed. *Broomfield*, 2017 WL 5665654, at *3–4; *see also Cordes v.*

1  *Boulder Brands, USA, Inc.*, 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018) ("The complete

2  absence of any allegations about Plaintiff's future intentions with regard to the Product is enough

3  for the Court to find that he lacks standing to sue for injunctive relief.") (applying *Davidson* and

4  dismissing request for injunctive relief due to lack of Article III standing for failure to plausibly

5  allege future purchase intent).

6  **F.     In the Alternative, the Court Should Stay the Case Under the Primary Jurisdiction
       Doctrine.**

7

8      Because the Complaint's basic theory of relief is incurably flawed, there are multiple

9  reasons to dismiss the case now. *See infra*, Part IV.A–E. However, the Court can also choose to

10 stay the matter under the primary jurisdiction doctrine, which applies because of ongoing FDA

   regulatory proceedings to define the term "natural" for food labeling.
11
       Primary jurisdiction applies if a plaintiff's claim "implicates technical and policy questions
12
   that should be addressed in the first instance by the agency with regulatory authority over the
13
   relevant industry rather than by the judicial branch." *Clark v. Time Warner Cable*, 523 F.3d 1110,
14
   1114 (9th Cir. 2008). Four factors guide its application: "(1) the need to resolve an issue that (2)
15
   has been placed by Congress within the jurisdiction of an administrative body having regulatory
16
   authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory
17
   authority that (4) requires expertise or uniformity in administration." *Syntek Semiconductor Co.,*
18
   *Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002); *see Leonhart v. Nature's Path*
19
   *Foods, Inc.*, 2014 WL 6657809, at *5–6 (N.D. Cal. Nov. 21, 2014) (Freeman, J.) (applying primary
20
   jurisdiction to stay claims involving labeling of evaporated cane juice given ongoing FDA
21
   proceedings on that issue).
22
       Here, each of the *Syntek* factors applies. First, as detailed above, the FDA is currently
23
   reviewing whether and how to regulate use of the term "natural" on food labels. *See* 80 Fed. Reg.
24
   69905-01. In *Kane v. Chobani*, the Ninth Circuit—acting *sua sponte*—relied on the FDA's
25
   proceedings to stay a case involving "natural" claims, noting that the issue involved "technical and
26
   policy questions" wholly within the FDA's expertise:
27

28         The delineation of the scope and permissible usage of the term[]
           'natural' . . . in connection with food products implicates technical

-18-

and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than the judicial branch.

*Kane v. Chobani*, 645 F. App'x 593, 594 (9th Cir. 2016) (internal quotations and citation omitted); *id.* ("Given the ongoing FDA proceedings regarding the term[] 'natural' . . . we conclude that resolution of this action will not be needlessly delayed and that judicial resources will be conserved by staying these proceedings.").

Since the FDA's 2015 notice, courts in this District and across the country have stayed "natural" cases based on similar reasoning. *See, e.g.*, *Rosillo v. Annie's Homegrown, Inc.*, 2017 WL 5256345, at *4 (N.D. Cal. Oct. 17, 2017) ("For the foregoing reasons, and after considering the relevant factors, the Court finds that it is appropriate to stay this action pursuant to the primary jurisdiction. Accordingly this action is STAYED until the FDA's regulatory process regarding use of the term 'natural' on food labeling is completed."); *Maxwell v. Unilever US Inc.*, 2016 WL 5110498, at *1 (N.D. Cal. Mar. 30, 2016) ("Because several of Plaintiff's claims challenge Defendant's use of the term 'natural' on its products, the court intends to stay this action consistent with the Ninth Circuit's opinion" in *Kane*); *Viggiano v. Johnson & Johnson*, 2016 WL 5110500, at *3 (C.D. Cal. June 21, 2016) (staying case "pursuant to the primary jurisdiction doctrine, pending resolution of the FDA's 'natural' proceedings"); *In re General Mills Kix Cereal Litig.*, 2016 WL 5110499, at *1 (D.N.J. June 13, 2016) (same); *In re KIND LLC "Healthy and All Natural" Litig.*, 209 F. Supp. 3d 689, 696 (S.D.N.Y. 2016) (same).

Next, Congress has unquestionably granted the FDA regulatory authority over food labeling, and the Agency in turn exercises extensive regulatory authority over the food industry. *See* 21 U.S.C. § 341 *et seq.*; *Rosillo*, 2017 WL 5256345, at *3 ("[I]t cannot be denied that Congress has, through the Food, Drug and Cosmetic Act, 21 U.S.C. § 301, *et seq.*, subjected food labeling to a comprehensive regulatory framework administered by the FDA.") (noting that *Syntek* factors weigh in favor of a stay for a putative class action challenging "natural" on food packaging). Indeed, the FDA Commissioner's recent letter regarding the Agency's natural proceedings noted the issues

1   importance to the "food industry." *See* RJN, Ex. C.[2]

2          Finally, resolution of the issues presented in the Complaint require the FDA's expertise and

3   uniformity in administration. *See* 21 U.S.C. § 343–1(a); *Rosillo*, 2017 WL 5256345, at *4

4   ("Awaiting guidance from the FDA on the use of the term 'natural' on food labels will help ensure

5   that there are not conflicting judicial rulings, indirectly resulting in a patchwork of disclosure

6   requirements which would require manufacturers to print different labels for different states."); *In*

7   *re KIND*, 209 F. Supp. 3d at 695 (agreeing with argument that "declining to stay the claims could

8   spawn a patchwork of judicial determinations regarding the appropriate definition for 'natural' on

9   _____

10          [2] In addition to the FDA's activities, the EPA is also separately involved in administrative

11   activities regarding the regulation of acetamiprid under the Federal Insecticide, Fungicide, and

12   Rodenticide Act's ("FIFRA") standards for registration. 7 U.S.C. § 136a(g). In March 2013, EPA

13   issued its "acetamiprid final work plan," explaining that it was "implementing the registration

14   review program pursuant to Section 3(g)" of FIFRA for acetamiprid. *See* EPA, *Acetamiprid Final*

15   *Work Plan, Registration Review Case No. 7617, Dkt. No. EPA-HQ-OPP-2012-0329*, at 1 (Mar. 18,

16   2013). EPA's current schedule predicts that for acetamiprid, a "proposed interim decision will be

17   issued for public comment in spring 2019." *See* EPA, *Schedule for Review of Neonicotinoid*

18   *Pesticides*,   https://www.epa.gov/pollinator-protection/schedule-review-neonicotinoid-pesticides

19   (last *visited* Jan. 14, 2019). "During registration review, the Agency will conduct a comprehensive

20   ecological risk assessment, including an endangered species assessment, for all uses of acetamiprid.

21   For human health, EPA will conduct revised dietary, residential, and occupational risk assessments

22   during registration review." EPA, *Acetamiprid Final Work Plan, Registration Review Case No.*

23   *7617, Dkt. No. EPA-HQ-OPP-2012-0329*, at 4 (Mar. 18, 2013). The EPA's assessment of

24   acetamiprid may bear on Plaintiff's claims. *See* Compl. ¶ 12 (alleging, without further additional

25   facts, that acetamiprid "may" pose harm to "human development and to other animals including

26   the honeybee"). Therefore, for the same reasons discussed with respect to the FDA's ongoing

27   review of "natural" labeling, the interests of uniformity and judicial economy weigh in favor of

28   staying proceedings pending the EPA's review of acetamiprid.

food labels that would make uniform food labeling impossible.").

In sum, the Complaint's challenge to the use of the term "natural" on food labels falls squarely within the purview of the FDA's current administrative activities. Accordingly, a primary-jurisdiction-based stay is appropriate.

## V.   CONCLUSION

For the foregoing reasons, Mott's respectfully requests that the Court dismiss the Complaint with prejudice. If the matter is not dismissed, then entry of a stay pursuant to the primary jurisdiction doctrine is appropriate, given the FDA's pending rulemaking concerning use of the term "natural" on food labeling.

DATED:  January 18, 2019                              **PERKINS COIE LLP**

By: */s/ Charles Sipos*
Charles Sipos, *pro hac vice*
CSipos@perkinscoie.com
David T. Biderman, Bar No. 101577
DBiderman@perkinscoie.com

*Attorneys for Defendants*
*Dr Pepper Snapple Group, Inc. and*
*Mott's LLP*

1

### CERTIFICATE OF SERVICE

The undersigned certifies that on January 18, 2019, I caused to be filed via the CM/ECF system true and correct copies of the following documents and that the service of these documents was accompanied on all parties in the case by CM/ECF system.

*/s/Charles C. Sipos*
Charles C. Sipos, *pro hac vice*
CSipos@perkinscoie.com