David T. Biderman, Bar No. 101577
DBiderman@perkinscoie.com
**PERKINS COIE LLP**
1888 Century Park E., Suite 1700
Los Angeles, CA  90067-1721
Telephone:  310.788.9900
Facsimile:  310.788.3399

Charles C. Sipos, *pro hac vice*
CSipos@perkinscoie.com
Lauren E. Staniar, *pro hac vice*
LStaniar@perkinscoie.com
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101
Telephone:  206.359.8000
Facsimile:  206.359.9000

*Attorneys for Defendants*
*Dr Pepper Snapple Group, Inc. and Mott's LLP*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HAWYUAN YU, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>DR PEPPER SNAPPLE GROUP, INC., a Delaware Corporation, and MOTT'S LLP, a Delaware Corporation<br><br>Defendant. | Case No. 5:18-cv-06664-BLF<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>[Fed R. Civ. P. 12(b)(1), 12(b)(6)]<br><br>Date:        June 13, 2019<br>Time:        9:00 a.m.<br>Courtroom:  Courtroom 3 - 5th Floor.<br>Judge:       Hon. Beth L. Freeman |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................... 1

II.     ARGUMENT ................................................................................................................. 2

    A.      Mott's Products' Labels are Not Misleading to a Reasonable Consumer. ............. 2

        1.      Plaintiff's Complaint can and should be dismissed as a matter of law under the "reasonable consumer" standard. ......................................... 3

        2.      Plaintiff's definition of "natural" is implausible. ....................................... 5

        3.      FDA regulations permitting trace pesticides in foods further corroborates the Complaint's implausibility under the "reasonable consumer" standard. ........................................................................................ 7

    B.      The Complaint Fails to State a Claim for Breach of Express Warranty or Unjust Enrichment. ................................................................................................ 8

    C.      The NLEA Expressly Preempts Plaintiffs' State Law Claims .............................. 9

    D.      The Court Lacks Subject Matter Jurisdiction ....................................................... 11

    E.      The Plaintiff Does Not Have Article III Standing to Seek Injunctive Relief ........ 12

    F.      In the Alternative, the Court Should Stay the Case Under the Primary Jurisdiction Doctrine. ........................................................................................... 13

III.    CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015).................................................................13

*Axon v. Citrus World, Inc.*,
    2018 WL 6448648 (E.D.N.Y. Dec. 10, 2018) ................................... passim

*Axon v. Citrus World, Inc.*,
    No. 18-cv-04162, Dismissal Order, Dkt. No. 27 (Jan. 14, 2019) ...............6

*Broomfield v. Craft Brew Alliance, Inc.*,
    2017 WL 5665654 (N.D. Cal. Nov. 27, 2017)......................................12

*Campbell v. Annie's Homegrown, Inc.*,
    No. 4:17-cv-07288, Dkt. No. 55 (Feb. 19, 2019)....................................14

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
    475 F. App'x 113 (9th Cir. 2012) ...........................................................3

*Chuang v. Dr. Pepper Snapple Group., Inc.*,
    2017 WL 4286577 (C.D. Cal. Sept. 20, 2017)........................................8

*Davidson v. Kimberly Clark*,
    889 F.3d 956 (9th Cir. 2018)................................................................12

*Forouzesh v. Starbucks Corp.*,
    714 F. App'x 776 (9th Cir. 2018) ...........................................................3

*Geertson Farms, Inc. v. Johanns*,
    439 F. Supp. 2d 1012 (N.D. Cal. 2006) .............................................11, 12

*In re Gen. Mills Glyphosate Litig.*,
    2017 WL 2983877 (D. Minn. July 12, 2017)........................................3, 5

*In re Kind LLC "Healthy & All Natural" Litigation*,
    No. 15-md-2645, 2019 U.S. Dist. LEXIS 21892 (S.D.N.Y. Feb. 11, 2019) ...........14

*In re Nexus 6P Prods Liab. Litig.*,
    293 F. Supp. 3d 888 (N.D. Cal. 2018) .....................................................8

*In re TFT–LCD (Flat Panel) Antitrust Litig.*,
    781 F. Supp. 2d 955 (N.D. Cal. 2011) .....................................................8

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Kane v. Chobani,*
645 F. App'x 593 (9th Cir. 2016) ............................................13

*Kinn v. Quaker Oats Co.,*
2017 WL 10844710 (N.D. Ill. Sept. 6, 2017) ..........................5

*Nat. Res. Def. Council v. Johnson,*
461 F.3d 164 (2d Cir. 2006)...................................................11

*Nemphos v. Nestle Waters N. Am., Inc.,*
775 F.3d 616 (4th Cir. 2015)............................................10, 11

*Organic Consumers Ass'n v. General Mills, Inc.,*
2017 WL 2901210 (D.C. Sup. Ct. Apr. 27, 2017) ..................4, 5

*Organic Consumers Ass'n v. Sioux Honey Ass'n,*
No. 2016-ca-8012 (D.C. Super. Ct. Mar. 31, 2017)..................5

*Painter v. Blue Diamond Growers,*
No. 17-55901, 2018 WL 6720560 (9th Cir. Dec. 20, 2018) ..........3, 7

*Panitch v. Quaker Oats, Co.,*
2017 WL 10844711 (N.D. Ill. Sept. 6, 2017) ..........................5

*Peterson v. Cellco P'ship,*
164 Cal. App. 4th 1583 (2008)................................................8

*Petrosino v. Stearns Prods., Inc.,*
2018 WL 1614349 (S.D.N.Y. March 30, 2018) ......................4

*Podpeskar v. Dannon Co., Inc.,*
2017 WL 6001845 (S.D.N.Y. Dec. 3, 2017) ........................4, 6

*Red v. Kroger Co.,*
2010 WL 4262037 (C.D. Cal. Sept. 2, 2010)........................10

*Reynolds v. Wal-Mart Stores, Inc.,*
2015 WL 1879615 (N.D. Fla. Apr. 23, 2015)......................9, 10

*Rosillo v. Annie's Homegrown, Inc.,*
2017 WL 5256345 (N.D. Cal. Oct. 17, 2017)......................7, 14

*Rosillo v. Annie's Homegrown, Inc.,*
No. 17-cv-02472-JSW, Dkt. No. 55 (Jan. 8, 2019) (Order Continuing Stay)..........14

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Silva v. Smucker Natural Foods, Inc.*,

4

2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015)............................................................4

5

*Stansfield v. Minute Maid Co.*,

6

124 F. Supp. 3d 1226 (N.D. Fla. 2015)................................................................9, 10

7

*Stiles v. Trader Joe's Co.*,

2017 WL 3084267 (C.D. Cal. Apr. 4, 2017) ...........................................................3

8

*Strome v. DBMK Enterprises, Inc.*,

9

2014 WL 4437777 (N.D. Cal. Sept. 9, 2014) .........................................................10

10

*Tran v. Sioux Honey Ass'n*,

No. 17-cv-110, 2018 U.S. Dist. LEXIS 146380 (C.D. Cal. Aug. 20, 2018).............................4

11

12

*Workman v. Plum Inc.*,

141 F. Supp. 3d 1032 (N.D. Cal. 2015) ...................................................................3

13

**STATUTES**

14

21 U.S.C. § 343(a) .....................................................................................................9

15

21 U.S.C. § 346a(b)(2)(A)(ii) ...................................................................................11

16

21 U.S.C. § 346a(h) ...............................................................................................2, 11

17

**REGULATIONS**

18

40 C.F.R. Pt. 180, Subpart B .....................................................................................11

19

40 C.F.R. § 180.578 ...................................................................................................11

20

21

65 Fed. Reg. 80548 (Dec. 21, 2000) ..........................................................................8

22

81 Fed. Reg. at 69,908 (Sept. 28, 2016).....................................................................13

23

**OTHER AUTHORITIES**

24

EPA, *Acetamiprid Final Work Plan*, Registration Review Case No. 7617, Dkt. No.

EPA-HQ-OPP-2012-0329 (Mar. 18, 2013) ............................................................14

25

26

EPA, *Schedule for Review of Neonicotinoid Pesticides* (last visited: Jan. 4, 2019),

https://www.epa.gov/pollinator-protection/schedule-review-neonicotinoid-

27

pesticides.......................................................................................................................14

28

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page(s)**

3

FDA, *Use of the Term "Natural" in the Labeling of Human Food Products;*
    *Request for Information and Comments*, 80 Fed. Reg. 69905, (Nov. 12, 2015) .......................7

4

5

Food & Drug Admin., FDA-2014-N-1207 (last visited: Jan 4, 2019),
    https://www.regulations.gov/docket?D=FDA-2014-N-1207...................................................13

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.    INTRODUCTION

Plaintiff Hawyuan Yu's Complaint's theory of deception—that a "reasonable consumer" interprets the term "natural" on Defendant Mott's Applesauce and Apple Juice products' labels to mean that these foods are completely free of any trace pesticides down to the molecular level—is a theory courts have appropriately deemed too implausible to withstand Rule 12 review. Plaintiff's Opposition nonetheless argues that Defendant Mott's Motion to Dismiss should be denied, because the plausibility of his Complaint's allegations are "unsuitable for determination on a motion to dismiss." Opp. at 1.

This argument is wrong as a general proposition, and it is especially weak in the context of this case. It is black-letter law that a court may dismiss a complaint for failing to allege that a food's labeling would mislead a "reasonable consumer," as numerous district court and Ninth Circuit decisions confirm. The rationale for dismissal is particularly strong here, as other courts have dismissed similar complaints filed by the same Plaintiff's counsel, which likewise advanced the same implausible theory of relief as to the term "natural." As one of these courts recently explained: "Given the widespread use of herbicides, the court finds it 'implausible that a reasonable consumer would believe that a product labeled [natural] could not contain a trace amount of [a pesticide] that is far below the amount' deemed tolerable by the FDA." *Axon v. Citrus World, Inc.*, 2018 WL 6448648, at *7 (E.D.N.Y. Dec. 10, 2018). The same rationale applies here to mandate dismissal of Plaintiff's consumer protection, warranty, and unjust enrichment claims.

The Opposition's responses to Mott's Motion's other arguments for dismissal are just as lacking. There is no requirement under federal food labeling regulations "to disclose" the potential presence of trace pesticides in food, Compl. ¶ 19, and as a result the Complaint is expressly preempted under the 1990 Nutrition Labeling and Education Act ("NLEA"). The Opposition insists that because the Complaint alleges generally that Mott's labels are potentially "false and misleading," express preemption does not apply. Opp. at 15. But labels that comply with relevant labeling standards cannot be simultaneously "false and misleading" under federal or state laws, as numerous cases recognize. Here, Mott's Products' labels comply with federal laws concerning labeling of trace pesticides, precisely because federal law imposes no such disclosure requirement

-1-

1   for the Mott's Products at issue. Mot. at 13-16.

2       Similarly, the Court lacks subject matter jurisdiction over the action under 21 U.S.C.

3 § 346a(h), which requires challenges to the EPA's established residual pesticide levels to be

4 committed to the exclusive jurisdiction of the EPA, with an option for direct appeal to the federal

5 courts of appeal. The Opposition insists that Plaintiff is not directly challenging the federally-

6 established residual tolerances for acetamiprid. Opp. at 17. But the premise of the Complaint is

7 Plaintiff's contention that—contrary to EPA and FDA determinations—the presence of acetamiprid

8 poses risks to consumers that justify additional labeling disclosures and restrictions. Compl. ¶¶ 12,

9 19, 34, 38, 47. It is this substantive theory of relief that controls the jurisdictional determination

10 under § 346a(h).

11      Finally, aside from these bases for dismissal of the Complaint in full, the primary

12 jurisdiction doctrine applies, warranting a stay of the matter given the FDA's active consideration

13 of how to regulate use of the term "natural" on food labels. Here, the Opposition principally

14 responds that FDA action on the subject is too speculative to justify application of the doctrine.

15 Opp. at 20-21. But in late 2018 the Commissioner of the FDA wrote to Congress that the FDA does

16 intend to address the issue, with plans to do so in 2019.

17      Accordingly, Plaintiff's Complaint should be dismissed with prejudice or, if it is not, stayed

18 under the primary jurisdiction doctrine.

19      **II.    ARGUMENT**

20 **A.   Mott's Products' Labels are Not Misleading to a Reasonable Consumer.**

21      The parties agree that the "reasonable consumer" standard controls whether Plaintiff has

22 stated a claim under California consumer protection law. *See* Mot. at 8-9; Opp. at 4-5. Plaintiff

23 argues that the Complaint meets this standard because: (1) this Court cannot decide the "reasonable

24 consumer" inquiry at Rule 12; (2) Plaintiff contends his definition of "natural," is plausible; and

25 (3) it is supposedly not relevant to the "reasonable consumer" inquiry that the Products are alleged

26 to contain trace pesticides at levels far below those the EPA and FDA expressly permit in foods.

27 Opp. at 4-10. None of these arguments have merit.

28

1.      **Plaintiff's Complaint can and should be dismissed as a matter of law under the "reasonable consumer" standard.**

It is well-settled that courts may dismiss complaints under the "reasonable consumer" standard. *See, e.g.*, *Stiles v. Trader Joe's Co.*, 2017 WL 3084267, at *5 (C.D. Cal. Apr. 4, 2017) (dismissing complaint with prejudice under reasonable consumer standard); *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1036-37 (N.D. Cal. 2015) (same). The Ninth Circuit affirms such dismissals, including in cases challenging the labeling of food or beverage products as misleading. *See, e.g.*, *Painter v. Blue Diamond Growers*, 2018 WL 6720560, at *1 (9th Cir. Dec. 20, 2018) ("[Plaintiff's] complaint does not plausibly allege that a reasonable consumer would be deceived into believing that [defendant's] almond milk products are nutritionally equivalent to dairy milk based on their package labels and advertising."); *Forouzesh v. Starbucks Corp.*, 714 F. App'x 776, 777 (9th Cir. 2018) (affirming Rule 12 dismissal with prejudice of food labeling case under "reasonable consumer" standard); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012) (same).

Plaintiff's argument that the "reasonable consumer" standard does not permit dismissal on the pleadings is particularly inapt, as other courts have dismissed complaints under this standard filed by the same Plaintiff's counsel and advancing the same implausible theory of deception as to the presence of trace pesticides in food. *See In re Gen. Mills Glyphosate Litig.*, 2017 WL 2983877 at *5 (D. Minn. July 12, 2017); *Axon*, 2018 WL 6448648, at *6. Plaintiff's Opposition does not even cite or attempt to distinguish the most recent of these dismissals, *Axon v. Citrus World, Inc.*, which explained that "given the widespread use of herbicides, the court finds it implausible that a reasonable consumer would believe that a product labeled 'Florida's Natural' could not contain a trace amount of glyphosate that is far below the amount deemed tolerable by the FDA." 2018 WL 6448648, at *7.

Despite this authority, Plaintiff nonetheless argues that other courts have accepted, for purposes of Rule 12, the notion that the term "natural" is interpreted by "reasonable consumers" to mean that a food product is completely free of trace pesticides. Opp. at 7-8. This is a vast overstatement, as an examination of Plaintiff's cited authority confirms. Two of the four cases

Plaintiff cites do not deal with the issue of trace pesticides at all, and instead involve allegations that products labeled "natural" contained artificial ingredients added to the products by the defendant. Opp. at 7-8 (citing *Silva v. Smucker Natural Foods, Inc.*, 2015 WL 5360022, at *5-6 (E.D.N.Y. Sept. 14, 2015) (alleging that root beer labeled "natural" contained artificial coloring and phosphoric acid, an alleged synthetic preservative added to the product); *Petrosino v. Stearns Prods., Inc.*, 2018 WL 1614349, at *2 (S.D.N.Y. March 30, 2018) (alleging that cosmetics labeled natural contained a "combination of 22 synthetic and/or artificial ingredients")). Neither *Silva* nor *Petrosino* stand for the radical proposition that consumers interpret the word "natural" to mean a complete absence of any residual trace of pesticides used during the agricultural process. *See Axon*, 2018 WL 6448648, at *7 ("It is far more misleading to call a product 'natural' when the defendant has introduced unnatural ingredients than it is to call a product 'natural' when it contains trace amounts of a commonly used pesticide introduced early in the production process.") (distinguishing *Silva* and *Petrosino*); *see also Podpeskar v. Dannon Co., Inc.*, 2017 WL 6001845, at *5 (S.D.N.Y. Dec. 3, 2017) (dismissing complaint challenging use of "natural" on yogurt where claim based on allegation that "several steps back in the food chain, there may have been something unnatural ingested by a cow").

Next, *Tran v. Sioux Honey Ass'n*, No. 17-cv-110, 2018 U.S. Dist. LEXIS 146380, at *14 (C.D. Cal. Aug. 20, 2018), does not involve a challenge to the term "natural" and instead holds that the term "pure," and in particular, "100% Pure" might be construed to mean that "the final product does not contain any substance (even in trace amounts), that is not essential to the honey." *Id.* So, on its face, the *Tran* court's (non-binding) interpretation of the term "100% Pure" does not stand as an interpretation of the term "natural" for "reasonable consumer" plausibility purposes. *See also Axon*, 2018 WL 6448648, at *7 (distinguishing *Tran* on grounds that "the *Tran* decision was about the use of the word 'pure,' rather than 'natural'").

In truth, Plaintiff cites just a single decision supporting his argument, *Organic Consumers Ass'n v. General Mills, Inc.*, 2017 WL 2901210, at *8 (D.C. Sup. Ct. Apr. 27, 2017), a D.C. Superior Court decision denying a motion to dismiss a lawsuit alleging that the phrase "100% Natural Whole Grain Oats" was misleading because the oats allegedly contained trace glyphosate.

1   There, the court concluded that given "the precise wording" of this term as applied specifically to

2   the oats in the product, the court could not dismiss the complaint as a matter of law. *Id.* Setting

3   aside the fact that *Organic Consumers Ass'n* relied on the "precise wording" of the phrase "100%

4   Natural Whole Grain Oats," to reach its conclusion, it is an outlier decision that is contrary to the

5   weight of authority on the issue of whether the term "natural" misleads reasonable consumers about

6   the alleged presence of trace pesticides. *In re Gen. Mills Glyphosate Litig.*, 2017 WL 2983877, at

7   *5; *Axon*, 2018 WL 6448648, at *6; *see also* Sipos Decl., Ex. B,[1] *Organic Consumers Ass'n v.*

8   *Sioux Honey Ass'n*, No. 2016-ca-8012, at 38 (D.C. Super. Ct. Mar. 31, 2017) (D.C. Superior Court

9   granting motion to dismiss in case alleging that use of term "natural" on labeling of honey was

10   misleading due to trace presence of the pesticide glyphosate) ("I also believe that under the [D.C.]

11   Consumer Protection Act that there's been no demonstrable evidence of harm that consumers are

12   being misled, and that there's no misleading because whatever trace amounts or miniscule amounts

13   [of pesticide] are not additives.").[2]

14       **2.       Plaintiff's definition of "natural" is implausible.**

15   Plaintiff insists his definition of "natural," which precludes the presence of "any" amount

16       _____

         [1] For ease of the Court's reference, Mott's has attached this judicial opinion, as well as the

17   Court's dismissal order in *Axon v. Citrus World, Inc.*, No. 18-cv-04162 (E.D.N.Y. Jan 14, 2019),

18   to the Declaration of Charles C. Sipos, filed concurrently.

19

20       [2] Mott's Motion cited *Kinn v. Quaker Oats Co.*, 2017 WL 10844710 (N.D. Ill. Sept. 6, 2017)

21   and *Panitch v. Quaker Oats, Co.*, 2017 WL 10844711 (N.D. Ill. Sept. 6, 2017) as among the cases

22   that had rejected Plaintiff's theory that "natural" means a complete absence of trace pesticides. Mot.

23   at 9-10. As Plaintiff's Opposition notes, these cases were ultimately dismissed on a preemption

24   rationale, not on "reasonable consumer" grounds. Opp. at 9. Upon reviewing Plaintiff's Opposition,

25   undersigned counsel contacted Westlaw, as the Motion's citation of *Kinn* and *Panitch* was based

26   upon these authorities having been classified as cases by Westlaw. Sipos Decl. ¶ 2. Westlaw

27   subsequently advised that its classification of *Kinn* and *Panitch* as cases was in error, removed these

28   authorities from its caselaw database, and reassigned them Westlaw identifiers. *Id.* Ex. A.

of trace pesticides in food, is "plausible." Opp. at 4. The Opposition cites both the Complaint and FDA regulatory guidance here, *id.* at 4-5, but neither source supports Plaintiff's argument.

The Opposition characterizes Plaintiff's Complaint as alleging that the "natural" claim on Mott's Products is "material" to California purchasers. Opp. at 5 (citing Complaint ¶¶ 45-53). Yet, none of the cited paragraphs support this assertion, or the broader argument that Yu's definition of the term "natural" is plausible. The only allegation in this section of the Complaint going to Plaintiff's definition of "natural," is an allegation that a "reasonable consumer" interprets "natural" to mean that the product "does not contain any synthetic or unnatural chemicals." Complaint ¶ 48. But this is just a conclusory assertion re-stating an element of Plaintiff's claims: It is not a plausible allegation that a "reasonable consumer" holds this view.

Elsewhere, the Opposition alludes to "consumer surveys suggesting" that other consumers "share" Yu's understanding of the term "natural." Opp. at 9 (citing Complaint ¶¶ 12-21). Yet, there are no such "consumer surveys" cited in the Complaint. Regardless, generalized "consumer surveys" do transform an implausible theory of deception into a plausible one. In later proceedings in *Axon*, Plaintiff's counsel attempted to rely on consumer surveys regarding the term "natural," to argue that a "reasonable consumer" would believe the term means a complete absence of trace pesticides. *See* Sipos Decl., Ex. C, *Axon v. Citrus World, Inc.*, No. 18-cv-04162, Dismissal Order, Dkt. No. 27 (E.D.N.Y. Jan. 14, 2019). The court concluded that this "survey" authority was insufficient to support the plaintiff's inherently implausible definition of "natural." *Id.* ("Plaintiff's proposed amendments do not impact my earlier conclusion that, given the unique facts of this case, plaintiff's claims regarding the misleading nature of defendant's products should be dismissed for failure to state a claim."); *accord Podpeskar*, 2017 WL 6001845, at *4-5 (plaintiff's reliance on "a variety of surveys" regarding meaning of "natural" deemed a "conclusory argument [that] cannot meet *Twombly*'s insistence that claims be nudged over the line from conceivable to plausible").

Next, Plaintiff points out that the FDA has noted that the term "natural" is capable of being used misleadingly. Opp. at 5 (quoting *Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms*, 56 Fed. Reg. 60421-01, 60466 (Nov. 27, 1991)). But the fact that the term "natural" has the *potential* to be used improperly, does not mean that Plaintiff's

1    definition of that term—which would prohibit its use for foods with "any" amount of trace

2    pesticides—is plausible. Indeed, on this point the FDA's current position only undermines the

3    Complaint's plausibility, as the FDA has commented that its informal policy for use of the term

4    "natural" is *not* intended to "address food production methods, such as . . . the use of pesticides."

5    *See* FDA, *Use of the Term "Natural" in the Labeling of Human Food Products; Request for*

6    *Information and Comments*, 80 Fed. Reg. 69905, (Nov. 12, 2015)).

7            **3.      FDA regulations permitting trace pesticides in foods further corroborates the**
             **Complaint's implausibility under the "reasonable consumer" standard.**

8

9            Plaintiff's Opposition properly concedes that the amount of acetamiprid allegedly present

10   in Mott's Products is below FDA permitted tolerances. Opp. at 5. The Opposition nonetheless

11   argues that Mott's compliance with FDA standards is irrelevant to whether Plaintiff's definition of

12   "natural" is plausible, insisting that Mott's cites "no authority" for its argument that this compliance

13   can and should be considered in evaluating Plaintiff's claims. *Id.* at 6. But Mott's Motion *did* cite

14   authority for this argument. Mot. at 10. *In re General Mills Glyphosate* and *Axon* both hold that no

15   "reasonable consumer" believes that a "natural" claim is misleading as to residual of pesticides,

16   when the amount allegedly present is a fraction of what federal law *permits*. Mot. at 10 (citing *In*

17   *re: General Mills Glyphosate Litig.*, 2017 WL 2983877, at *6, and *Axon*, 2018 WL 6448648, at

18   *8)).

19           Moreover, compliance with federal standards generally is relevant to whether a "reasonable

20   consumer" might be misled by a product's labeling. *Rosillo v. Annie's Homegrown, Inc.*, 2017 WL

21   5256345, at *3 (N.D. Cal. Oct. 17, 2017) ("Further, courts have recognized that FDA guidance on

22   the term 'natural' is relevant to the question of how a reasonable consumer would understand that

23   term."); *cf. Painter*, 2018 WL 6720560, at *1 (affirming dismissal on reasonable consumer grounds

24   given defendant's compliance with FDA regulations). [3]

     _____

25           [3] Plaintiff argues that "natural" is not defined coextensively with the word "organic," and

26   so the fact that the Products are alleged to contain trace pesticides at levels below or near those

27   permitted in organic foods, Mot. at 11 n.1, is likewise irrelevant to the "reasonable consumer"

28   inquiry. Opp. at 6-7. Yet, the allowance of trace pesticides in foods labeled "organic" is based on a

**B.    The Complaint Fails to State a Claim for Breach of Express Warranty or Unjust Enrichment.**

Plaintiff admits that his claims for breach of express warranty and unjust enrichment rise and fall with his consumer protection claims. Opp. at 10–11; Complaint ¶¶ 114–15, 120–22. No reasonable consumer would accept Plaintiff's idiosyncratic view of the term "natural" as meaning free from trace pesticides down to the molecular level. Therefore, to the extent these "natural" claims give rise to an express warranty, there was no breach of that warranty. *See Chuang v. Dr. Pepper Snapple Group., Inc.*, 2017 WL 4286577, at *7 (C.D. Cal. Sept. 20, 2017) (because "the statements that the fruit snacks are made with 'Real FRUIT and VEGETABLE juice,' are true . . . [,] there is no breach"). Likewise, Plaintiff's unjust enrichment claim fails because he received the "benefit of the bargain" when he purchased the Applesauce Products, as the Products are, consistent with their labels, natural. *See Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008) ("Here, plaintiffs received the benefit of the bargain . . . . 'There is no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected.'"); *see also Chuang*, 2017 WL 4285677, at *7 ("Because Plaintiff has failed to state a claim under the California consumer protection statutes, the unjust enrichment claim fails as well.").

Separately, Plaintiff's "failure to allege which state governs [these] common law claims is grounds for dismissal," particularly given the wide "variances among state laws." *In re Nexus 6P Prods Liab. Litig.*, 293 F. Supp. 3d 888, 933 (N.D. Cal. 2018). It is not, as Plaintiff suggests, Mott's burden to show "why California law should not apply to Yu's claims." Opp. at 11. Here, the Complaint does not identify any the state law governing the common law claims, Complaint ¶¶ 113–22, and the claims should therefore be dismissed. *In re TFT–LCD (Flat Panel) Antitrust Litig.*, 781 F. Supp. 2d 955, 966 (N.D. Cal. 2011) ("Several other courts in this district have similarly held

federal determination that there is a "consumer expectation" that even those foods will contain some amount of trace pesticides. 65 Fed. Reg. 80548, 80629 (Dec. 21, 2000) (codified at 7 C.F.R. Pt. 205: National Organic Program; Final Rule) (organic standard for trace pesticides intended to "*satisfy consumer expectations* that organic agricultural products will contain minimal chemical residues") (emphasis added).

1   that a plaintiff must specify the state under which it brings an unjust enrichment claim.").

2   **C.      The NLEA Expressly Preempts Plaintiffs' State Law Claims**

3          Plaintiff argues that his claims are not expressly preempted by the NLEA, because he

4   contends that claims based on allegations that "a food label is false and misleading" means that

5   such claims can "never be preempted." Opp. at 15. This argument misapprehends the correct scope

6   of NLEA express preemption. [4]

7          The FDCA does contain a catch-all provision, 21 U.S.C. § 343(a), that prohibits food labels

8   that are "false or misleading in any particular." *Id.* But as several cases hold, labels in compliance

9   with the relevant labeling standards cannot be simultaneously misleading under Section 343(a)'s

10  catch-all language, nor does Section 343(a) bar the application of NLEA preemption. *Reynolds v.*

11  *Wal-Mart Stores, Inc.*, 2015 WL 1879615, at *12 (N.D. Fla. Apr. 23, 2015) ("As explained, if there

12  is compliance with a specific requirement, then that aspect is not false or misleading under the

13  catch-all provision, § 343(a)(1). Such compliance also brings the conduct within the preemptive

14  reach of the [NLEA]."); *accord Stansfield v. Minute Maid Co.*, 124 F. Supp. 3d 1226, 1235 (N.D.

15  Fla. 2015) ("Aspects of labels that are *required or permitted* by a more specific provision by

16  _____

17          [4] The Opposition asserts that Mott's motion "fails to specify" the particular form of federal

18  preemption applicable to Plaintiff's claims, and so the Opposition goes on to argue conflict and

19  field preemption, as well as express preemption under the NLEA. Opp. at 13. Plaintiff's assertion

20  on this point is baffling, as Mott's Motion repeatedly and explicitly invokes NLEA express

21  preemption as the form of preemption implicated. *See* Mot. at 1-2 (arguing claims are "expressly

22  preempted); *id.* at 7 (statement of issues to be decided includes "Whether the Court should dismiss

23  the Complaint as expressly preempted under the [NLEA]"); *id.* at 13. ("Plaintiff's claims are

24  expressly preempted."). Yet, the Opposition nonetheless argues the supposed inapplicability of

25  both conflict and field preemption. *See* Opp. at 12-13; 15-16. Mott's does not necessarily agree that

26  the Opposition's characterization of the law concerning conflict or field preemption is correct. But

27  for purposes of this Motion, the Opposition's arguments on those points are irrelevant, as they

28  address legal issues Mott's has not yet raised.

'definition are not considered 'false or misleading' under federal law.'") (internal citation omitted).

Mott's Products' labels are "in compliance" with the FDCA as it pertains to permitted levels of trace pesticides, *Reynolds*, 2015 WL 1879615, at *12, precisely because federal law imposes no such disclosure requirement for these foods. Mot. at 14-15. So, the Products' labels cannot simultaneously be in compliance with the FDCA—by omitting information regarding pesticides that the statute does not require Mott's to disclose—yet still have those labels deemed "false and misleading" under the FDCA for the exact same conduct. *Reynolds*, 2015 WL 1879615, at *12; *Stansfield*, 124 F. Supp. 3d at 1235; *see also Red v. Kroger Co.*, 2010 WL 4262037, at *5 (C.D. Cal. Sept. 2, 2010) (labels that comply with FDCA regulations as to challenged aspect of label "by definition, are not considered 'false or misleading' under federal law").

Nor can Plaintiff avoid NLEA preemption by arguing in his Opposition brief that he "does not contend" that the presence of acetamiprid should be disclosed on Mott's labels. Opp. at 15. Argument of counsel in opposition briefing does not supersede what is alleged in the Complaint. *Strome v. DBMK Enterprises, Inc.*, 2014 WL 4437777, at *4 (N.D. Cal. Sept. 9, 2014) ("Furthermore, it is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss") (internal quotation marks omitted). The Complaint repeatedly alleges that Mott's misleadingly "omits" and fails "to disclose" the presence of acetamiprid on the Products' labels. Compl. ¶¶ 19, 34, 38, 57, 61, Prayer for Relief ¶ C.

Finally, the Opposition attempts to finesse the issue by arguing that it is only the use of the term "natural" on the label that makes the label's failure to disclose acetamiprid misleading. Opp. at 15. But federal law applying the NLEA is clear that where: (1) the complaint alleges that a product label omits some information that the FDCA does not actually require, and (2) the complaint also challenges associated marketing for the product as misleading *because* of that omission, NLEA preemption extends to both aspects of the complaint. *See, e.g.*, *Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 625 (4th Cir. 2015) ("[Plaintiff] asserts that [Defendants] misleadingly marketed and advertised their fluoridated bottled water products as especially beneficial to children. But this misleading-marketing claim is essentially the same as [Plaintiff's] failure-to-warn claim—albeit dressed in different clothing.... [NLEA preemption] makes no

1    exception for marketing or advertising in areas regulated by the FDA. The misleading-marketing

2    claim thus fails for the same reason as the failure-to-warn claim. It would impose a requirement

3    under state law that diverges from the federal standard."). The sole reason that Plaintiff contends

4    the word "natural" on the labels of Mott's Products is misleading, is because the Products allegedly

5    contain trace acetamiprid. *See* Compl. ¶¶ 21, 47. Accordingly, claims premised on this language

6    are barred by NLEA express preemption along with Plaintiff's underlying demand that

7    acetamiprid's potential presence must be disclosed on the labels. *Nemphos*, 775 F.3d at 625-26.

8    ### D.    The Court Lacks Subject Matter Jurisdiction

9         The EPA has a regulatory process by which it establishes tolerance levels for certain

10   pesticides and chemicals. *See* 21 U.S.C. § 346a(b)(2)(A)(ii); 40 C.F.R. Pt. 180, Subpart B. These

11   tolerances are set at a level where the EPA has determined "that there is a reasonable certainty that

12   no harm will result from aggregate exposure to the pesticide chemical residue." 21 U.S.C.

13   § 346a(b)(2)(A)(ii). Using that regulatory framework, the EPA has set the residual tolerance level

14   for acetamiprid at 1.0 parts per million (PPM). *See* 40 C.F.R. § 180.578. By statute, any direct or

15   indirect challenge to those tolerance levels first must be presented to the EPA, followed by a judicial

16   challenge in the federal Courts of Appeals. 21 U.S.C. § 346a(h)(1), (5). District courts do not have

17   subject matter jurisdiction over cases, like this one, that implicitly challenge the EPA's tolerance

18   levels. *Geertson Farms, Inc. v. Johanns*, 439 F. Supp. 2d 1012, 1021 (N.D. Cal. 2006) (granting

19   motion to dismiss where claim relating to certain tolerance fell "squarely within section 346a(h)'s

20   exclusive review provision").

21        Plaintiff argues that this case is not about the EPA's established tolerance for acetamiprid,

22   Opp. at 16-17, but the allegations in the Complaint undermine that argument. According to Plaintiff,

23   acetamiprid is unsafe and unhealthy, both for humans and the environment. *See, e.g.*, Complaint

24   ¶¶ 12, 42. Based on those allegations concerning safety, Plaintiff asserts that any food containing

25   even trace amounts of acetamiprid cannot be labeled "natural" without misleading consumers.

26   Plaintiff cannot avoid these safety allegations just because his claims arise under consumer

27   protection statutes: When considering whether to apply the jurisdictional bar in cases challenging

28   EPA tolerance levels, courts look past formalistic labels to the actual substance of a case. *Nat. Res.*

1    *Def. Council v. Johnson*, 461 F.3d 164, 169, 176 (2d Cir. 2006). The gravamen of Plaintiff's

2    Complaint is a challenge to the allowability of trace acetamiprid in food, based on speculative

3    allegations regarding safety. It should be dismissed for lack of subject matter jurisdiction. *Geertson*

4    *Farms*, 439 F. Supp. 2d at 1021.

5    **E.      The Plaintiff Does Not Have Article III Standing to Seek Injunctive Relief.**

6          Plaintiff lacks standing to seek injunctive relief because does not allege an intent to purchase

7    Mott's Products in the future. *See Davidson v. Kimberly Clark*, 889 F.3d 956, 970 (9th Cir. 2018)

8    (plaintiff has standing to seek injunctive relief because she alleged a future intent to purchase

9    flushable wipes); *see also id.* at 970 n.5 (distinguishing other circuit-level cases because "[i]n none

10   of those cases did plaintiffs sufficiently allege their intention to repurchase the product at issue as

11   [plaintiff] does here"); *Broomfield v. Craft Brew Alliance, Inc.*, 2017 WL 5665654, at *3 (N.D.

12   Cal. Nov. 27, 2017) ("The Court considers only the well-plead allegation in the Consolidated

13   Complaint itself that Plaintiffs would purchase Kona beer if it was in fact brewed in Hawaii, and

14   finds that even under *Davidson*, this allegation is insufficient to establish Article III standing to

15   pursue injunctive relief.").

16         Plaintiff argues that he has sufficiently plead future purchase intent, Opp. at 17-18, but that

17   is not so. Complaint paragraphs 30 and 50, on which the Opposition relies, merely allege that

18   "Plaintiff is willing to pay more for Defendants' Products because he expected the Products to be

19   free of insecticides and other unnatural chemicals," Compl. ¶ 30, and "Defendants continue to

20   conceal and suppress the true nature, identity, source, and method of production of the Products

21   here at issue," Compl. ¶ 50. As in *Broomfield*, Plaintiffs are attempting to "re-write their pleading,"

22   by arguing that they satisfy the "scenarios of future harm set forth in *Davidson*." 2017 WL 5665654,

23   at *3. Plaintiff's allegation that he is "willing to pay more" for the Products is fundamentally

24   different from the allegations in *Davidson*, 889 F.3d at 970–71, and is insufficient to sustain his

25   request for injunctive relief, *Broomfield*, 2017 WL 5665654, at *4 (complaint missing key

26   allegations from *Davidson* insufficient to establish likelihood of future harm). Plaintiff has not

27   plausibly alleged future harm sufficient to support his request for injunctive relief.

28

1

**F.      In the Alternative, the Court Should Stay the Case Under the Primary Jurisdiction Doctrine.**

2

3      "Primary jurisdiction is a prudential doctrine that permits courts to determine 'that an

4      otherwise cognizable claim implicates technical and policy questions that should be addressed in

5      the first instance by the agency with regulatory authority over the relevant industry rather than the

judicial branch.'" *Astiana v.  Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015).

6

7      Primary jurisdiction applies here because the FDA has regulatory authority over food

8      labeling, and it is poised to issue guidance on use of the term "natural." Plaintiff argues primary

9      jurisdiction does not apply by citing opinions from D.C. district and superior court declining to

apply primary jurisdiction in "natural" cases. Opp. at 19. But Plaintiff ignores the Ninth Circuit's

10

11      holding in *Kane v. Chobani* that "[t]he delineation of the scope and permissible usage of the term[]

12      'natural' . . . in connection with food products implicates technical and policy questions that should

13      be addressed in the first instance by the agency with regulatory authority over the relevant industry

rather than by the judicial branch." 645 F. App'x 593, 594 (9th Cir. 2016) (internal citation omitted).

14

15      Further, the FDA has an open docket on use of the term "natural" in the labeling of food

16      products, including whether "the use of pesticides . . . [should] be a factor in defining 'natural.'"

81 Fed. Reg. at 69,908 (Sept. 28, 2016). Plaintiff assumes that because "FDA has taken no formal

17

18      action on defining 'natural' since 2015," no actual guidance is forthcoming. Opp. at 20. That is

19      wrong for two reasons. First, it has been only a little more than two years since FDA closed its

20      comment period on use of the term "natural," and the agency received more than 7,500 public

comments. *See* Food & Drug Admin., FDA-2014-N-1207 (last visited: Jan 4, 2019),

21

22      https://www.regulations.gov/docket?D=FDA-2014-N-1207 (docket showing number of public

23      comments). Given public interest in this issue, a two-year delay is not out of the ordinary, and

certainly does not suggest (as Plaintiff contends), the FDA has abandoned its work on "natural."

24

25      Second, recent FDA guidance makes it clear that the agency intends to act on regulation of

26      the term "natural" this year. In a letter dated December 19, 2018, FDA commissioner Scott Gottlieb

27      explained "that there are widespread differences in beliefs regarding what criteria should apply for

28      products termed 'natural,' and that many of those criteria may not be based on public health

-13-

considerations." *See* RJN, Ex. C (Letter from Scott Gottleib, M.D., Commissioner of Food and Drugs, to Congressman David Valadao (Dec. 19, 2018)). He promised that "FDA is actively working on this issue, and in 2019, FDA plans to publicly communicate next steps regarding Agency policies related to 'natural.'" *Id.* Considering FDA's intention to act on "natural" soon, a stay will not be "indefinite in nature," Opp. at 32, and deference to the agency is appropriate here. As recently as this week, another court in the Northern District of California extended a primary jurisdiction-based stay in a lawsuit challenging "natural" on food labeling, in deference to the FDA's anticipated timing and plans. *See Campbell v. Annie's Homegrown, Inc.*, No. 4:17-cv-07288, Dkt. No. 55 (Feb. 19, 2019) (Order Continuing Stay) ("given the December 19, 2018 letter, the Court sees no reason why it should treat the above-captioned case differently from *Rosillo*."); *Rosillo v. Annie's Homegrown, Inc.*, No. 17-cv-02472-JSW, Dkt. No. 55 (Jan. 8, 2019) (Order Continuing Stay) ("In light of [the December 19 FDA letter], the Court concludes it would not be prudent to lift the stay at this time.").[5]

Finally, acetamiprid is currently the subject of an EPA health risk assessment, a fact that strengthens the case for a primary jurisdiction stay. *See* EPA, *Schedule for Review of Neonicotinoid Pesticides* (last visited: Jan. 4, 2019), https://www.epa.gov/pollinator-protection/schedule-review-neonicotinoid-pesticides; *see also* Mot. at 20 n.2. Plaintiff's argument that these proceedings are irrelevant to this case is misplaced. Opp. at 22. Plaintiff's case is premised on allegations that acetamiprid is dangerous to humans and bees, among other species. Complaint ¶¶ 12, 42. The EPA's human health risk assessment will address these concerns and potentially disprove many of the allegations in the Complaint. *See* EPA, *Acetamiprid Final Work Plan*, Registration Review

---

[5] Plaintiffs submitted as supplemental authority the district court's order lifting the stay in *In re Kind LLC "Healthy & All Natural" Litigation*, No. 15-md-2645, 2019 U.S. Dist. LEXIS 21892 (S.D.N.Y. Feb. 11, 2019). *See* Dkt. No. 33. However, the order continuing the stay in *Campbell v. Annie's Homegrown* issued after the *Kind* order, and the *Annie's* court no doubt knew about the *Kind* order when evaluating the propriety of continuing the stay.

1  Case No. 7617, Dkt. No. EPA-HQ-OPP-2012-0329, at 4 (Mar. 18, 2013) (explaining that review

2  will include comprehensive ecological assessment).

3       So, to the extent that the Complaint is not simply dismissed outright—a result that would

4  be entirely appropriate given the law governing Plaintiff's claims—this Court should exercise its

5  discretion to stay the case under the primary jurisdiction doctrine.

6                              **III.    CONCLUSION**

7       For the foregoing reasons, and for those stated in the Motion, Mott's respectfully requests

8  that the Court dismiss the Complaint with prejudice. In the alternative, if the matter is not dismissed

9  then a stay pursuant to the primary jurisdiction doctrine is proper.

10  DATED:  February 22, 2019                    **PERKINS COIE LLP**

11

12                                  By: */s/ Charles Sipos*
                                       Charles Sipos, *pro hac vice*
13                                     CSipos@perkinscoie.com
                                       David T. Biderman, Bar No. 101577
14                                     DBiderman@perkinscoie.com
                                       Lauren Staniar, *pro hac vice*
15                                     LStaniar@perkinscoie.com

16                                     *Attorneys for Defendants*
                                       *Dr Pepper Snapple Group, Inc. and*
17                                     *Mott's LLP*

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on February 22, 2019, I caused to be filed via the CM/ECF system true and correct copies of the following documents and that the service of these documents was accompanied on all parties in the case by CM/ECF system.

*/s/Lauren Watts Staniar*
Lauren W. Staniar, *pro hac vice*
LStaniar@perkinscoie.com

Case No. 5:18-cv-06664-BLF
REPLY IN SUPP. MOTION TO DISMISS