David T. Biderman, Bar No. 101577
DBiderman@perkinscoie.com
**PERKINS COIE LLP**
1888 Century Park E., Suite 1700
Los Angeles, CA  90067-1721
Telephone:  310.788.9900
Facsimile:  310.788.3399

Charles C. Sipos, *pro hac vice*
CSipos@perkinscoie.com
Lauren Watts Staniar, *pro hac vice*
LStaniar@perkinscoie.com
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101
Telephone:  206.359.8000
Facsimile:  206.359.9000

*Attorneys for Defendants*
*Dr Pepper Snapple Group, Inc. and Mott's LLP*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| HAWYUAN YU, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DR PEPPER SNAPPLE GROUP, INC., a Delaware Corporation, and MOTT'S LLP, a Delaware Corporation<br><br>Defendants. | Case No. 5:18-cv-06664-BLF<br><br>**MOTION AND NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**<br><br>[Fed R. Civ. P. 12(b)(6)]<br><br>Date:           August 6, 2020<br>Time:          9:00 a.m.<br>Courtroom:  Courtroom 3 - 5th Floor.<br>Judge:         Hon. Beth L. Freeman |

1

**NOTICE OF MOTION AND MOTION**

2

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that on August 6, 2020, at 9:00 a.m., or as soon thereafter as the

4

matter may be heard in the courtroom of the Honorable Beth L. Freeman, located at 280 South 1st

5

Street, San Jose, California, 95113, Defendants Dr Pepper Snapple Group, Inc. and Mott's LLP

6

(collectively "Mott's") will and hereby do move pursuant to Federal Rule of Civil Procedure

7

12(b)(6) to dismiss Plaintiff's Amended Complaint ("Am. Compl.").

8

This motion is made on the following grounds: Plaintiff Hawyuan Yu's Amended

9

Complaint does not cure the flaws in his original Complaint, which this Court dismissed without

10

prejudice on June 18, 2019. Plaintiff's central theory of deception—that a "reasonable consumer"

11

believes the words "Natural" and "All Natural Ingredients" on Mott's applesauce and apple juice

12

products labels mean the products are free from trace pesticides down to the molecular level—is

13

implausible. Surveys cited by Plaintiff in the Amended Complaint do not support this theory.

14

Plaintiff's claims for violation of the California Consumer Legal Remedies Act, False Advertising

15

Law, Unfair Competition Law, and for breach of warranty and unjust enrichment all depend on his

16

allegation that the products' labels are misleading in this fashion. So, these claims all fail. Plaintiff

17

also lacks standing to seek injunctive relief because, instead of amending to allege future purchase

18

intent, he merely recycled allegations from his original Complaint that this Court previously

19

deemed legally insufficient. The Amended Complaint should be dismissed with prejudice.

20

While dismissal with prejudice is proper, this Court may also choose to extend the primary

21

jurisdiction stay it entered on June 18, 2019. The Food and Drug Administration continues to work

22

on a regulatory definition of the word "natural" for food labeling, an issue that will bear directly on

23

Plaintiff's claims.

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3   I.    INTRODUCTION ........................................................................................... 1

4   II.   FACTUAL BACKGROUND .......................................................................... 2

5         A.    The Amended Complaint Continues to Allege that "Any" Amount of Trace
                Pesticides in the Products Is Misleading ................................................. 2

6         B.    The Court Dismissed the Prior Complaint as Implausible Under the
                "Reasonable Consumer" Standard ........................................................... 4

7         C.    Plaintiff's Amended Complaint Relies on two Generalized Surveys that Do
8               Not Support the Definition of "Natural" Proffered in the Amended
                Complaint ................................................................................................. 5

9         D.    FDA Proceedings to Define "Natural" for Food Labeling Are Ongoing ........ 6

    III.  STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(A)(3)) ..................... 6

10  IV.   STANDARD OF REVIEW ............................................................................ 7

11  V.    ARGUMENT ................................................................................................. 8

12        A.    The Amended Complaint Does Not Plausibly Allege That "Reasonable
                Consumers" Are Deceived by the Products' Labels ................................. 8

13              1.    Courts have repeatedly rejected the Amended Complaint's principal
                      theory of deception ......................................................................... 9

14              2.    The surveys relied on in the Amended Complaint do not render
15                    Plaintiff's claims plausible under the "reasonable consumer"
                      standard ........................................................................................ 10

16        B.    The Amended Complaint Fails to State a Claim for Breach of Warranty
                and Unjust Enrichment Because the Theory of Deception Is Implausible .......... 14

17        C.    Plaintiff Fails to Allege Future Purchase Intent Necessary for Injunctive
18              Relief Standing ......................................................................................... 15

19        D.    The Court May Choose to Continue the Primary Jurisdiction Stay ..................... 16

        E.    Dismissal with Prejudice Is Appropriate .................................................. 19

20  VI.   CONCLUSION ............................................................................................. 19

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

CASES

4

*Anthony v. Pharmavite*,
5
   2019 WL 109446 (N.D. Cal. Jan. 4, 2019) ................................................................16

6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................7, 8

7

*Astiana v. Hain Celestial Grp. Inc.*,
8
   783 F.3d 753 (9th Cir. 2015)...............................................................................17

9

*Axon v. Citrus World, Inc.*,
   2019 WL 8223527 (E.D.N.Y. Jan. 14, 2019), *appeal filed* .................................12, 19
10

11

*Axon v. Citrus World, Inc.*,
   354 F. Supp. 3d 170 (E.D.N.Y. 2018) ...........................................................9, 10, 12

12

*Becerra v. Dr Pepper/Seven Up, Inc.*,
13
   945 F.3d 1225 (9th Cir. 2019).................................................................1, 10, 11, 14

14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................7
15

16

*Brodsky v. Apple, Inc.*,
   2020 WL 1694363 (N.D. Cal. Apr. 7, 2020) ......................................................19

17

*Campbell v. Annie's Homegrown, Inc.*,
18
   4:17-cv-07288-JSW (N.D. Cal. Feb. 5, 2020), ECF No. 59 .................................18

19

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
   475 F. App'x 113 (9th Cir. 2012) .........................................................................8
20

21

*Carter v. Oath Holdings, Inc.*,
   2018 WL 3067985 (N.D. Cal. Jun. 21, 2018) (Freeman, J.)....................................8

22

*Carvalho v. Equifax Info. Servs., LLC*,
23
   629 F.3d 876 (9th Cir. 2010)..............................................................................19

24

*Cattaneo v. Am. Airlines, Inc.*,
   2015 WL 5610017 (N.D. Cal. Sept. 24, 2015) (Freeman, J.) ...................................19
25

26

*Clark v. Time Warner Cable*,
   523 F.3d 1110 (9th Cir. 2008)............................................................................16

27

*Cruz v. Anheuser-Busch Cos., LLC*,
28
   682 F. App'x 583 (9th Cir. 2017) ........................................................................8

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Davidson v. Kimberly-Clark, Corp.*,
    889 F.3d 956 (9th Cir. 2018), *as amended* ...................................................4, 15, 16

4

5

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ......................................................................................4, 8

6

*ESG Capital Partners, LP v. Stratos*,
    828 F.3d 1023 (9th Cir. 2016) ......................................................................................14

7

8

*Feitelson v. Google Inc.*,
    80 F. Supp. 3d 1019 (N.D. Cal. 2015) (Freeman, J.) .................................................7

9

10

*Forouzesh v. Starbucks Corp.*,
    714 F. App'x 776 (9th Cir. 2018) ................................................................................8

11

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC) Inc.*,
    528 U.S. 167 (2000) .....................................................................................................15

12

13

*Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*
    2019 WL 2515919 (N.D. Cal. Jun. 18, 2019) (Freeman, J.) .....................................13

14

15

*Hughes v. Big Heart Pet Brands*,
    740 F. App'x 876 (9th Cir. 2018) ...............................................................................8

16

*In re Apple & AT&TM Antitrust Litig.*,
    596 F. Supp. 2d 1288 (N.D. Cal. 2008) .....................................................................16

17

18

*In re Countrywide Fin. Corp. Secs. Litig.*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) .......................................................................7

19

*In re Gen. Mills Glyphosate Litig.*,
    2017 WL 2983877 (D. Minn. July 12, 2017) .................................................9, 10, 15

20

21

*In re: General Mills, Inc. Kix Cereal Litig.*,
    No. 2:12-cv-00249-KM-JBC (D.N.J. Jan. 7, 2020), ECF No. 226 ...........................18

22

23

*Jonathan Chuang v. Dr Pepper Snapple Grp., Inc.*,
    2017 WL 4286577 (C.D. Cal. Sept. 20, 2017) ............................................................15

24

*Joslin v. Clif Bar & Co.*,
    2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) .....................................................15, 16

25

26

*Kane v. Chobani, LLC*,
    645 F. App'x 593 (9th Cir. 2016) .........................................................................17, 18

27

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) .......................................................................7

4

5

*Manchouck v. Mondelez Int'l, Inc.*,
  603 F. App'x 632 (9th Cir. 2015) ...............................................................8

6

*Manuel v. Pepsi-Cola Co.*,
  763 F. App'x 108 (2d Cir. 2019) ...............................................................11

7

8

*Maxwell v Unilever US Inc.*,
  2016 WL 5110498 (N.D. Cal. Mar. 30, 2016) ...........................................17

9

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) .......................................................................7

10

11

*Nibbi Bros., Inc. v. Home Fed. Sav. & Loan Ass'n*,
  205 Cal. App. 3d 1415, 253 Cal. Rptr. 289 (1988) ...................................14

12

13

*Painter v. Blue Diamond Growers*,
  757 F. App'x 517 (9th Cir. 2018) ...............................................................8

14

*Parks v. Ainsworth Pet Nutrition, LLC*,
  2020 WL 832863 (S.D.N.Y. Feb. 20, 2020), *appeal filed*, No. 20-1042 (2d Cir.
  Mar. 23, 2020) .....................................................................................13, 19

15

16

*Parks v. Ainsworth Pet Nutrition, LLC*,
  377 F. Supp. 3d 241 (S.D.N.Y. 2019) ...........................................9, 10, 12, 13

17

18

*Podpeskar v Dannon Co., Inc.*,
  2017 WL 6001845 (S.D.N.Y. Dec. 3, 2017) .............................................11

19

20

*Reese v. Odwalla, Inc.*,
  30 F. Supp. 3d 935 (N.D. Cal. 2014) .........................................................18

21

22

*Rosillo v. Annie's Homegrown, Inc.*,
  2017 WL 5256345 (N.D. Cal. Oct. 17, 2017) .......................................17, 18

23

*Rosillo v. Annie's Homegrown, Inc.*,
  No. 4:17-cv-02474-JSW (N.D. Cal. Feb. 5, 2020) ...................................18

24

25

*Rugg v. Johnson & Johnson*,
  2019 WL 119971 (N.D. Cal. Jan. 7, 2019) ...............................................15

26

27

*Stanton v. Sargento Foods, Inc.*,
  3:17-cv-02881-AGT (N.D. Cal. Apr. 10, 2020) ........................................18

28

# TABLE OF AUTHORITIES
(continued)

Page

*Stickrath v. Globalstar, Inc.*,
527 F. Supp. 2d 992 (N.D. Cal. 2007) ........................................................................7

*Stuart v. Cadbury Adams USA, LLC*,
458 F. App'x. 689 (9th Cir. 2011) ..............................................................................8

*Sue Shin v. Campbell Soup Co.*,
2017 WL 3534991 (C.D. Cal. Aug. 9, 2017)............................................................14

*Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*,
307 F.3d 775 (9th Cir. 2002)....................................................................................17

## STATUTES

21 U.S.C. § 301 ..............................................................................................................18

21 U.S.C. § 321(s) ....................................................................................................3, 10

21 U.S.C. § 346a ..............................................................................................................3

Cal. Bus. & Prof. Code § 1750 ......................................................................................3

Cal. Bus. & Prof. Code § 17500 ....................................................................................3

Cal. Civ. Code § 17200 ..................................................................................................3

## RULES

Rule 12(b)(6) ...................................................................................................................7

## REGULATIONS & FEDERAL REGISTER CITATIONS

7 C.F.R. § 205.671 ........................................................................................................13

40 C.F.R. § 180.578 ........................................................................................................3

80 Fed. Reg. 69,905 ........................................................................................................6

Case No. 5:18-cv-06664-BLF
MOTION TO DISMISS AM. COMPLAINT

## I.    INTRODUCTION

This Court dismissed Plaintiff Hawyuan Yu's initial Complaint because its theory of deception was wholly implausible. No "reasonable consumer" interprets the terms "Natural" or "All Natural Ingredients" on labels of Mott's LLP's Applesauce and Apple Juice products to communicate "the utter absence of residual pesticides." June 18, 2019, Dismissal Order at 6 (Dkt. No. 40) ("Dismissal Order"). When this Court dismissed Yu's Complaint, it was in good company: Several other federal courts faced with indistinguishable complaints filed by Plaintiff's counsel have held that no reasonable consumer is deceived by a "natural" label on food simply because the product might contain trace pesticides at levels far below those federal law expressly permits.

This Court allowed Plaintiff to amend but told him he could salvage his case only if he pled facts sufficient to show "that a reasonable consumer would believe that the products in question are free of any trace pesticides." *Id.* The Amended Complaint fails to do so. Its basic premise for relief remains unchanged. Plaintiff still insists that trace acetamiprid in the Products—a pesticide that the EPA and FDA expressly allow on crops like apples—at 0.02 ppm or 0.06 parts per *million* renders the "natural" claim on Mott's Apple Juice and Applesauce false. The only new allegations the Amended Complaint offers to prop up this unsupportable view are references to two generalized surveys purporting to collect data about consumer views on food including "natural." Neither of these surveys speak to the issue Plaintiff was charged with addressing—whether "reasonable consumers" believe finished foods like apple juice and applesauce are misleadingly labeled "natural" simply because they may contain trace pesticides at fractional levels well below what the law allows.

The Ninth Circuit recently addressed the tactic Plaintiff attempts here and held that when a complaint proffers an interpretation of a disputed term on a food label that fails to satisfy the "reasonable consumer" standard, that legal failing cannot be papered over with a survey. *Becerra v. Dr Pepper / Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019). In other words, surveys are not magic wands that, once waved over a complaint, render the implausible plausible. Moreover, because this case is effectively a copycat of unsuccessful cases filed elsewhere, the specific surveys that Plaintiff relies on here have *already* been offered by his lawyers to federal courts in New York

-1-

in amended complaints attempting to satisfy the "reasonable consumer" standard. These courts deemed the surveys inadequate to allow the "natural = molecular purity from pesticides" theory to survive review under the "reasonable consumer" standard. Because all of Plaintiff's causes of action are premised on this theory, and because any further amendment would be futile, dismissal with prejudice is warranted.

Although the Amended Complaint should be dismissed in its entirety, other defects remain. This Court previously dismissed Plaintiff's request for injunctive relief because he failed to allege any intent to buy Mott's Apple Juice or Applesauce in the future. He did not attempt to cure that failing with his Amended Complaint, so that request for relief necessarily fails.

Dismissal outright is the proper result at this point, but it also remains true that the FDA continues to actively consider the issue of how to define "natural" as used on food labeling. So, a further stay of the case would also be justified—although perhaps unnecessary at this point given the Amended Complaint's incurable implausibility.

The Amended Complaint should be dismissed with prejudice and judgment entered in Defendants' favor.

## II.      FACTUAL BACKGROUND

### A.      The Amended Complaint Continues to Allege that "Any" Amount of Trace Pesticides in the Products Is Misleading.

Plaintiff's amendments are slight, so the facts in the Amended Complaint are largely unchanged from the Complaint this Court previously dismissed as implausible.

The products at issue are once again Mott's Applesauce, whose label bears the claims "Natural," and "All Natural Ingredients," and Mott's Apple Juice, which is labeled "Natural." Am. Compl. ¶¶ 5–7 (referred to collectively as "Products"). The Applesauce's ingredients are apples, water, and Vitamin C. Declaration of Charles C. Sipos in Support of Request for Judicial Notice ("Sipos Decl."), Ex. A. The Apple Juice, meanwhile, is made with apple juice, water, and apple juice concentrate. *Id.* There is no allegation in the Amended Complaint that these ingredients are unnatural, or that any "reasonable consumer" considers apple juice or applesauce unnatural.

Instead, Plaintiff alleges that "any" amount of residual pesticides in products labeled

"natural" or having "natural ingredients" renders those claims false or misleading. *See* Am. Compl. ¶ 48. Plaintiff thus once again alleges that testing conducted by his lawyers purported to detect trace amounts of the pesticide acetamiprid in Mott's Applesauce and Mott's Apple Juice. *Id.* ¶ 42. As before, the amounts allegedly present are vanishingly low: 0.06 ppm in Mott's Applesauce and 0.02 ppm in Mott's Apple Juice. *Compare* Compl., Dkt. 1, ¶ 39, *with* Am. Compl. ¶ 42.

The federal regulatory scheme for pesticides is jointly administered by the EPA and FDA and anticipates that some residual amounts of trace pesticides used during the agricultural process, like acetamiprid, will remain in finished foods. *See generally* 21 U.S.C. § 346a. The EPA thus sets permitted tolerance levels for pesticides, based on its determination that the tolerance level is "safe" and that "no harm will result from aggregate exposure to the pesticide chemical residue, including all anticipated dietary exposures and all other exposures for which there is reliable information." *Id.* § 346a(b)(2)(A)(ii). These residual pesticides in food are expressly exempted from the FDA's definition of a "food additive," 21 U.S.C. § 321(s)(1), and are thus not considered a substance that is "a component of or otherwise affect[s] the characteristic of any food," *id.* § 321(s).

The permitted residual tolerance for acetamiprid is 1.0 ppm. *See* 40 C.F.R. § 180.578. The 1.0 ppm tolerance for acetamiprid is thus more than 16 times (or 1600%) higher than what the Amended Complaint alleges is in the Applesauce, and 50 times (or 5,000%) higher than what Plaintiff alleges is in the Apple Juice. Am Compl. ¶ 42. Plaintiff does not allege that the 0.06 ppm and 0.02 ppm levels detected caused him or anyone else any harm. He nonetheless continues to insist that any food product labeled "natural" must be completely "free" of trace pesticides, even if only present "in residual amounts." Am. Compl. ¶¶ 2, 30, 37 (alleging that a "reasonable consumer" does not expect products labeled "natural" to contain pesticides "even in residual amounts").

Based on these allegations, Plaintiff continues to assert causes of action on behalf of a putative California class for: (1) California's Consumer Legal Remedies Act ("CLRA"), Cal. Bus. & Prof. Code § 1750; (2) California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500; and (3) California's Unfair Competition Law ("UCL") Cal. Civ. Code § 17200. Am. Compl. ¶¶ 88–118. The Amended Complaint likewise still asserts, on behalf of a putative nationwide class, claims for breach of express warranty and unjust enrichment. *Id.* ¶¶ 119–28.

Finally, Plaintiff seeks both damages and injunctive relief. *See* Am. Compl. Request for Relief ¶ H. Plaintiff alleges no new facts of threatened future harm he might suffer from the Products' labeling, which is necessary to support a request for injunctive relief. Specifically, he does not allege that he intends to buy the Products in the future. Instead, in an allegation unchanged from the prior Complaint, he merely alleges "[c]onsumers are at risk of real, immediate, and continuing harm if the Products continue to be sold as is . . . ." Am. Compl. ¶ 67; *compare id.*, *with* Compl., ECF No. 1, ¶¶ 50, 61.

**B.    The Court Dismissed the Prior Complaint as Implausible Under the "Reasonable Consumer" Standard.**

The central theory Plaintiff continues to promote in the Amended Complaint—that a "reasonable consumer" believes a product labeled "natural" must be free of trace pesticides down to the molecular level—was considered and rejected in this Court's June 18, 2019, Dismissal Order. As the Court explained, "Plaintiff does not sufficiently allege facts showing how or why a reasonable consumer would understand 'Natural' or 'All Natural Ingredients' to mean the utter absence of residual pesticides, which Plaintiff admits are on the order of 0.02 and 0.06 parts per million acetamiprid, respectively, for the applesauce and apple juice products, respectively." Dismissal Order at 6 (citing *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). This Court applied that dismissal rationale both to Plaintiff's California consumer protection claims, and his claims for breach of warranty and unjust enrichment. *Id*. Plaintiff was given leave to amend as to these claims, provided he could "plausibly allege that a reasonable consumer would believe the products-in-question are free of any trace pesticides." *Id.*

Next, this Court also dismissed Plaintiff's request for injunctive relief, holding that Plaintiff lacked Article III standing to seek that remedy, given the absence of "some plausible allegation of the plaintiff's intent to buy the product at issue in the future." *Id.* at 8 (citing *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1116 (9th Cir. 2017), *as amended on denial of reh'g en banc*, 889 F.3d 956 (9th Cir. 2018)). As noted, the Amended Complaint does not allege that Yu has any such future purchase intent. *See infra* Part IV.C.

Finally, the Court stayed the case pursuant to the primary jurisdiction doctrine, in deference

to ongoing regulatory proceedings at the FDA to determine standards for use of the term "natural" on food and beverage labeling, noting that several other courts have imposed similar stays. Dismissal Order at 9. The Court's stay expired on February 29, 2020, but the Dismissal Order noted that this expiration date was set "without prejudice to a request to continue the stay." *Id.* at 10 ¶ 6.

### C.   Plaintiff's Amended Complaint Relies on two Generalized Surveys that Do Not Support the Definition of "Natural" Proffered in the Amended Complaint.

The grounds on which Plaintiff was given leave to amend were narrow: He was charged with "plausibly alleg[ing] that a reasonable consumer would believe that the products-in-question are *free of any trace pesticides*." Dismissal Order at 6 (emphasis added); *see also id.* (dismissing because no facts alleged show "how or why a reasonable consumer would understand 'Natural' or 'All Natural Ingredients' to mean the utter absence of residual pesticides"). In response, Plaintiff's Amended Complaint relies on two third-party surveys that do not address this issue.

*First*, Plaintiff points to a telephone survey administered by Opinion Research Corporation on behalf of Consumer Reports in 2015 (2015 CR Survey), regarding participants' generalized views about food and food labeling, including "natural" and "organic" labels. One question in the survey purports to show "consumers think that the *natural label* on packaged/processed foods *currently* means that *no toxic pesticides were used* (63%)." *See* Sipos Decl. Ex. B (2015 CR Survey), at 6; *see also* Am. Compl. ¶ 39. The 2015 CR Survey does not identify the specific question posed, does not define "toxic pesticides," or define what it means to "use" such pesticides. *See* Sipos Decl. Ex. B, at 6. In all events, this survey question (or any other) does not substantiate an allegation that reasonable consumers interpret the term "natural" on finished foods to mean "the utter absence of trace pesticides." Dismissal Order at 6.

Plaintiff also points to the survey's finding that some percentage of consumers cited "reducing exposure to pesticides (89%)" and "protecting the environment from chemicals (88%)" as either "important" or "very important" as objectives when shopping for food generally. Am. Compl. ¶ 47; Sipos Decl. Ex. B, at 3. Here, the passage of the 2015 CR Survey on which the Amended Complaint relies does not address consumer understanding of the term "natural" at all.

*Second*, Plaintiff cites an online survey conducted in 2018 (and published in 2019) on behalf

1   of the Corn Refiners' Association covering a variety of food labeling issues ("2019 CRA Survey").

2   *See* Sipos Decl. Ex. C (2019 CRA Survey), at 2. The passage of the 2019 CRA Survey cited in the

3   Amended Complaint indicates that, when forced to choose between categorizing various "crop

4   production practices" as "natural" or "not natural," 68.1% of respondents designated "crops sprayed

5   with synthetic pesticides like glyphosate or chlorpyrifos" as "not natural." Am. Compl. ¶ 38 (citing

6   Sipos Decl. Ex. C, at 29). The cited passage thus does not establish the proposition that reasonable

7   consumers interpret the term "natural" or "natural ingredients" on finished foods like apple juice

8   and applesauce to mean "the utter absence of residual pesticides." Dismissal Order at 6.

9       Elsewhere the 2019 CRA Survey undermines Plaintiff's theory of deception, by repeatedly

10  noting that the Survey's findings indicate "it is possible for a final product to be considered natural"

11  by consumers "even if a process used to make the product is not." Sipos Decl. Ex. C, at 2, 27, 29,

12  60. The 2019 CRA Survey relatedly found that "Overall, results suggested nuanced, and sometimes

13  logically inconsistent, views about the meaning of 'natural.'" *Id.* at 2.

14  **D.      FDA Proceedings to Define "Natural" for Food Labeling Are Ongoing.**

15      As recognized in the Court's June 18 Order, the FDA has open administrative proceedings

16  to define the term "natural" for food and beverage labeling. *See Use of the Term "Natural" in the*

17  *Labeling of Human Food Products; Request for Information and Comments*, 80 Fed. Reg. 69,905

18  (November 12, 2015); Dismissal Order at 8–10. Since the Court's Order staying the case in

19  deference to these proceedings, the FDA has reaffirmed its ongoing and active review of the issue.

20  In a September 27, 2019 speech outlining the FDA's current priorities and initiatives, Dr. Susan T.

21  Mayne, Director of the FDA's Center for Food Safety and Applied Nutrition ("CFSAN")

22  commented that the FDA continues to "work[] diligently on the claim 'Natural.'" *See* Sipos Decl.

23  Ex. D, at 1 (Dr. Susan T. Mayne, "Remarks by Dr. Susan Mayne at the Public Meeting on

24  Horizontal Approaches to Food Standards of Identity Modernization" (Sept. 27, 2019)).

25      **III.      STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(a)(3))**

26      1.      Whether the Court should dismiss Plaintiff's consumer protection claims with

27  prejudice because the Amended Complaint still does not plausibly allege that a "reasonable

28  consumer" interprets the terms "Natural" and "All Natural Ingredients" to mean "the utter absence

1    of residual pesticides." Dismissal Order at 6.

2          2.      Whether the Court should dismiss Plaintiff's breach of warranty and unjust

3    enrichment claims with prejudice because—as this Court previously held (Dismissal Order at 6)—

4    these claims necessarily fail if Plaintiff's consumer protection claims fail.

5          3.      Whether Plaintiff's request for injunctive relief should be dismissed due to lack of

6    Article III standing, when the Amended Complaint makes no attempt to plead future purchase

7    intent, even though the Court's Dismissal Order required him to do so. Dismissal Order at 8.

8          4.      Whether, if the Amended Complaint is not dismissed with prejudice, the case should

9    be stayed on primary jurisdiction grounds in deference to continued FDA proceedings regarding

10   use of the term "natural" on food labeling.

11                        **IV.    STANDARD OF REVIEW**

12         "A motion to dismiss [under Rule 12(b)(6)] tests whether the allegations in a complaint, if

13   true, amount to an actionable claim." *In re Countrywide Fin. Corp. Secs. Litig.*, 588 F. Supp. 2d

14   1132, 1145 (C.D. Cal. 2008) (citing *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "To

15   survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

16   'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff

17   pleads factual content that allows the court to draw the reasonable inference that the defendant is

18   liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

19   *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard 'asks for more than a

20   sheer possibility that a defendant has acted unlawfully,' and a complaint that pleads facts that are

21   'merely consistent with' a defendant's liability 'stops short of the line between possibility and

22   plausibility.'" *Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1025 (N.D. Cal. 2015) (Freeman, J.)

23   (quoting *Iqbal*, 556 U.S. at 678).

24         "In evaluating the sufficiency of a complaint's allegations, a court must assume the facts

25   alleged in the complaint to be true unless the allegations are controverted by exhibits attached to

26   the complaint, matters subject to judicial notice, or documents necessarily relied on by the

27   complaint and whose authenticity no party questions." *Stickrath v. Globalstar, Inc.*, 527 F. Supp.

28   2d 992, 995 (N.D. Cal. 2007) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir.

2001)). However, "[t]hreadbare recitals the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Carter v. Oath Holdings, Inc.*, 2018 WL 3067985, at *2 (N.D. Cal. Jun. 21, 2018) (Freeman, J.) (quoting *Iqbal*, 556 U.S. at 678).

## V.   ARGUMENT

### A.   The Amended Complaint Does Not Plausibly Allege That "Reasonable Consumers" Are Deceived by the Products' Labels.

Plaintiff's UCL, FAL, and CLRA claims must be dismissed unless he alleges that a "reasonable consumer" would be deceived by the Products' labeling. *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). As this Court previously observed, this requires plausible factual allegations that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." Dismissal Order at 6 (quoting *Ebner*, 838 F.3d at 965). In food labeling cases, the "reasonable consumer" standard is not met where the complaint supports only a "mere possibility that [the defendant's] label might conceivably be misunderstood by some few consumers viewing it an unreasonable manner." *Becerra*, 945 F.3d at 1228 (internal citation and quotation marks omitted) (affirming dismissal of complaint alleging misleading labeling on "reasonable consumer" grounds).

Courts can and do resolve on the pleadings the issue of whether a plaintiff's consumer protection claims meet the "reasonable consumer" standard, often dismissing when that standard is not met; the Ninth Circuit regularly affirms such dismissals. *See id.*; *Hughes v. Big Heart Pet Brands*, 740 F. App'x 876, 878 (9th Cir. 2018); *Forouzesh v. Starbucks Corp.*, 714 F. App'x 776, 777 (9th Cir. 2018); *Painter v. Blue Diamond Growers*, 757 F. App'x 517, 519–20 (9th Cir. 2018); *Cruz v. Anheuser-Busch Cos., LLC*, 682 F. App'x 583, 583–84 (9th Cir. 2017); *Ebner*, 838 F.3d at 965; *Manchouck v. Mondelez Int'l, Inc.*, 603 F. App'x 632, 633 (9th Cir. 2015); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012); *Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x. 689, 690–91 (9th Cir. 2011) (all cases affirming dismissal of cases involving food or beverages for failing to meet the "reasonable consumer" standard).

Dismissal under the "reasonable consumer" standard continues to be warranted here. First, Plaintiff posits a theory of deception—that "reasonable consumers" interpret the word "natural" to

mean a food product is completely "free" of "any" trace pesticides—that courts have repeatedly rejected as implausible. Second, neither of the surveys cited in the Amended Complaint transform what are otherwise implausible allegations into plausible ones. Indeed, in a recent clarification of the "reasonable consumer" standard, the Ninth Circuit held that a plaintiff cannot rely on surveys to paper over an otherwise defective complaint.

> **1.  Courts have repeatedly rejected the Amended Complaint's principal theory of deception.**

As Mott's explained in its prior dismissal briefing, several courts have considered the exact theory of deception alleged by Plaintiff here—that a "natural" label on a food or beverage product means the product is completely free of trace pesticides—and have held that the theory is too strained and implausible to support a claim for relief under the "reasonable consumer" standard. *See In re Gen. Mills Glyphosate Litig.*, 2017 WL 2983877 at *5 (D. Minn. July 12, 2017) (dismissing on reasonable consumer grounds complaint challenging use of term "natural" on granola bars alleged to contain trace pesticides); *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 183–84 (E.D.N.Y. 2018) (same as to orange juice); *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 247 (S.D.N.Y. 2019) ("[A] reasonable consumer would not be so absolutist as to require that 'natural' means there is no glyphosate, even an accidental and innocuous amount, in the Products.") (pet food).[1]

These authorities continue to compel dismissal of the Amended Complaint. Plaintiff's theory of deception remains stubbornly unchanged. He continues to allege that a "reasonable consumer" interprets "Natural" or "All Natural Ingredients" on the Products' labels to communicate the that they do not contain "any" trace amounts of pesticides, even "residual amounts," and must instead be completely "free" of trace pesticides. Am. Compl. ¶¶ 2, 30, 37. Plaintiff continues to press this theory even though the Amended Complaint still points to trace levels of acetamiprid— 0.02 ppm and 0.06 ppm—that are radically below the 1.0 ppm of residual acetamiprid that EPA

---

[1] The similarity between the theory of deception alleged in this case and the theory rejected in *In re: General Mills Glyphosate Litig.*, *Axon*, and *Parks*, is likely at least partly explained by the fact that Plaintiff's counsel in this action was also Plaintiff's counsel in these three cases, too.

standards expressly permit. *Id.* ¶ 42. *In re General Mills*, *Axon*, and *Parks* all squarely reject this theory as implausible and insufficient to satisfy the "reasonable consumer" standard. *In re: Gen. Mills Glyphosate Litig.*, 2017 WL 2983877, at *5 ("It would be nearly impossible to produce a processed food with no trace of any synthetic molecule."); *Axon*, 354 F. Supp. 3d at 183 ("Given the widespread use of herbicides, the court finds it is 'implausible that a reasonable consumer would believe that a product labeled ['Florida's Natural'] could not contain a trace amount of glyphosate that is far below the amount' deemed tolerable by the FDA."); *Parks*, 377 F. Supp. 3d at 247 (same).

And as before, these courts' reasoning is corroborated by Congress' decision to specifically exempt trace pesticides, like the acetamiprid allegedly present in Mott's Products, from the FDCA's broad definition of the term "food additive." *See* 21 U.S.C. § 321(s). This exemption means that the presence of trace pesticides in processed food is neither considered a "component" of food, nor something "affecting [its] characteristics." *Id.* No reasonable consumer would believe it is misleading to refer to Mott's Products as "natural," simply because the food has a substance— albeit in tiny fractions of a millionth—that does not "affect [the food's] characteristics." 21 U.S.C. § 321(s). Plaintiff's UCL, FAL, and CLRA claims in the Amended Complaint are thus just as defective under the "reasonable consumer" standard as they were in the prior Complaint.

> **2.**    **The surveys relied on in the Amended Complaint do not render Plaintiff's claims plausible under the "reasonable consumer" standard.**

In the face of this authority, Plaintiff rests the plausibility of his claims entirely on two consumer surveys, the 2015 Phone Survey and the 2019 CRA Survey, that purport to address consumer understanding of "natural." *See* Am. Compl. ¶¶ 38–39. These surveys are legally inadequate to support Plaintiff's claims under the "reasonable consumer" standard, and in many respects only serve to demonstrate the Amended Complaint's inherent defectiveness.

***First***, the Ninth Circuit recently held, in affirming the dismissal of a food labeling case, that reliance on consumer surveys cannot "make plausible the allegation that reasonable consumers are misled" when the remainder of the complaint does not set forth a legally adequate theory of deception. *Becerra*, 945 F.3d at 1231. In *Becerra*, plaintiffs alleged that "reasonable consumers" interpreted the word "diet" on the labels of Diet Dr Pepper labels to mean that the product would

assist in weight loss or "not cause weight gain." *Id.* at 1227. After the district court dismissed prior

complaints on reasonable consumer grounds, the plaintiff amended to include the results of a survey

purporting to show that consumers shared this weight loss understanding of the word "diet." *Id.* at

1230–31. The district court rejected the survey as insufficient to save the complaint from dismissal,

and the Ninth Circuit affirmed. *Id.* at 1231.

The *Becerra* panel held that the survey could not "salvage [plaintiff's] claim," focusing on

the underlying inherent unreasonableness of plaintiff's interpretation of the word "diet":

> Although we must accept the allegations surrounding the survey as
> true at this stage of the litigation, a reasonable consumer would still
> understand "diet" in this context to be a relative claim about the
> calorie or sugar content of the product. The survey does not address
> this understanding or the equally reasonable understanding that
> consuming low-calorie products will impact one's weight only to
> the extent that weight loss relies on consuming fewer calories
> overall. At bottom, the survey does not shift the prevailing
> reasonable understanding of what reasonable consumers understand
> the word "diet" to mean or make plausible the allegation that
> reasonable consumers are misled by the term "diet."

*Id.* Thus, because the plaintiff's survey failed to address or test more "reasonable" understandings

of the term "diet," it could not convert an otherwise implausible theory of deception into a plausible

one. *Id.*; *see also Manuel v. Pepsi-Cola Co.*, 763 F. App'x 108, 110 (2d Cir. 2019) ("[Plaintiffs']

survey does not render [their] allegations any more plausible since we find the complaint wanting,

even assuming that consumers believe 'diet' connotes weight loss."); *accord Podpeskar v Dannon

Co., Inc.*, 2017 WL 6001845, at *4–5 (S.D.N.Y. Dec. 3, 2017) (plaintiff's reliance on "a variety of

surveys" regarding meaning of "natural" deemed a "conclusory argument [that] cannot meet

*Twombly*'s insistence that claims be nudged over the line from conceivable to plausible").

Under *Becerra*, Plaintiff's reliance on the 2015 CR Survey and 2019 CRA Survey do not

stave off dismissal because neither survey "makes plausible the allegation," *Becerra*, 945 F.3d at

1231, that a "reasonable consumer" expects products labeled "natural" to be completely free of

trace pesticides down to the molecular level. Neither survey purports to establish this interpretation

of "natural" as some "prevailing reasonable understanding," *id.* at 1231, of what that term means.

The portion of the 2015 CR Survey cited indicates that some consumers surveyed believe

"no toxic pesticides were used" in foods labeled "natural." Am. Compl. ¶ 39; *see also* Sipos Decl.

1   Ex. B, at 6. But that aspect of the 2015 CR Survey does not establish that a finished food product

2   containing residual pesticides at levels radically below levels established by federal law as safe,

3   would nonetheless be classified by a reasonable consumer as a product that "uses toxic pesticides"

4   in a manner that prevents the product from being considered "natural." Likewise, the Amended

5   Complaint relies on the 2019 CRA Survey's finding that when forced to categorize "crop

6   production practices" 68.1% of consumers classified crops "crops sprayed with synthetic pesticides

7   like glyphosate or chlorpyrifos" as "not natural." Am. Compl. ¶ 38 (citing Sipos Decl. Ex. C, at

8   29). This portion of the survey, at best, reflects some generalized understanding of how those

9   surveyed classified "crop production practices." *Id.* It does not establish as plausible that

10   "reasonable consumers" would deem the resulting foods "not natural" because they contain residual

11   amounts of pesticides at fractions of a single part per million (0.02 and 0.06 ppm).

12   **Second**, other courts presented with the 2015 CR Survey and 2019 CRA Survey have

13   refused to deem them sufficient to render plausible that a "reasonable consumer" believes "natural"

14   on food labels communicates the complete absence of any trace pesticides.

15   As noted above, in *Axon*, the Eastern District of New York dismissed a largely

16   indistinguishable complaint alleging that the word "natural" on orange juice labels was misleading

17   due to the alleged presence of trace pesticides. 354 F. Supp. 3d at 184. Plaintiff was granted leave

18   to seek amendment and relied on the exact same 2015 CR Survey in order to "address the Court's

19   concerns regarding the plausibility of her original pleading as to the expectations of reasonable

20   consumers." *Axon v. Citrus World, Inc.*, 2019 WL 8223527, at *1 (E.D.N.Y. Jan. 14, 2019), *appeal*

21   *filed*. The court denied leave to amend, explaining that plaintiff had over-read the 2015 CR Survey,

22   and it did not render her claims plausible under the "reasonable consumer" standard: "The

23   conclusions plaintiff draws from the 2015 Survey—i.e., that a majority of consumers (1) do not

24   believe pesticides are present at any level in products labeled 'natural,' (2) do not distinguish

25   between ingredients and trace levels of pesticides, and (3) hold these expectations regardless of

26   how the term 'natural' is used—are not supported by the survey's ambiguous language." *Id.* at *2.

27   Likewise, in *Parks v. Ainsworth*, the Southern District of New York dismissed plaintiff's

28   initial complaint challenging the use of the term "natural" on pet food due to trace glyphosate.

*Parks*, 377 F. Supp. 3d at 250. Plaintiff's Amended Complaint cited the 2015 CR Survey and 2019 CRA Survey, and plaintiff's counsel relied heavily on these surveys to try to avoid dismissal a second time on reasonable consumer grounds. *See* Pl.'s Opp'n Mot. to Dismiss, *Parks v. Ainsworth Pet Nutrition, LLC*, No. 1 18-cv-6936-LLS (S.D.N.Y. Aug. 30, 2019), ECF No. 45, at 6 ("The reasonable-consumer standard, such as whether a representation is material, is commonly established, including in courts within this Circuit, by the use of survey evidence."). The court nonetheless dismissed with prejudice, reasoning: "The level of glyphosate in the tested Products is negligible and significantly lower than the FDA's limit, which supports a finding that the Products' glyphosate residue is not likely to affect consumer choice, and that labeling them 'natural' is not materially misleading to a reasonable consumer." *See Parks v. Ainsworth Pet Nutrition, LLC*, 2020 WL 832863, at *2 (S.D.N.Y. Feb. 20, 2020), *appeal filed*, No. 20-1042 (2d Cir. Mar. 23, 2020); *see also id.* ("[A] reasonable consumer would not interpret the label 'natural' as a warranty that the Products do not contain any [of the pesticide] glyphosate, even a negligible amount.") (citing *Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*, 2019 WL 2515919, at *3 (N.D. Cal. Jun. 18, 2019) (Freeman, J.)).

**Third**, a closer examination of the surveys reveal that they frequently highlight the underlying implausibility of Plaintiff's claims.

For example, the 2015 CR Survey indicates 77% of consumers surveyed believe that the "organic" label on foods currently mean that pesticides are not used. Sipos Decl. Ex. B, at 6. However, USDA regulations expressly permit the use of pesticides on organic crops and has established tolerance levels for such usage. 7 C.F.R. § 205.671. Thus, on its own terms the 2015 CR Survey posits understandings of terms that diverge from real world pesticide usage.

Similarly, the 2019 CRA Survey repeatedly affirms even if a consumer classifies a specific food manufacturing process as not "natural," the consumer may still consider the resulting food made with those processes "natural." Sipos Decl. Ex. C, at 2, 27, 29, 60 ("it is possible for a final product to be considered natural" by consumers "even if a process used to make the product is not"). So, the 2019 CRA Survey affirmatively undermines Plaintiff's theory that use of pesticides during the agricultural process—resulting in trace residual amounts of that pesticide at exceedingly

low levels in the finished food—means that the food can no longer be deemed "natural." Moreover, the 2019 CRA Survey's authors characterized the survey's overall findings as establishing principally "nuanced, and sometimes logically inconsistent, views about the meaning of natural." *Id*. at 60. This Court need not, and should not, credit survey work that describes its resulting findings as "logically inconsistent" to be used as a baseline for what a "reasonable consumer" considers plausible. *Becerra*, 945 F.3d at 1231 (survey does not displace "what reasonable consumers understand" or "make plausible the allegation that reasonable consumers are misled").

Neither the 2015 CR Survey nor the 2019 CRA Survey render Plaintiff's theory of deception plausible under the "reasonable consumer" standard. Plaintiff's allegations based on these surveys are the only substantive difference between the Amended Complaint and the previously dismissed Complaint. The Amended Complaint should therefore be dismissed with prejudice.

**B.    The Amended Complaint Fails to State a Claim for Breach of Warranty and Unjust Enrichment Because the Theory of Deception Is Implausible.**

Plaintiff's unjust enrichment and breach of warranty claims rely on the same allegations as his California consumer protection claims, Am. Compl. ¶¶ 123 (breach of express warranty), 127 (unjust enrichment), and fail for the same reason: there was no deception. Thus, this Court previously held that because Plaintiff's consumer protection claims failed to satisfy the "reasonable consumer" standard, his warranty and unjust enrichment claims necessarily failed as well. Dismissal Order at 6.

"To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). Restitution is not ordinarily available to a plaintiff unless "the benefits were conferred by mistake, fraud, coercion or request; otherwise, though there is enrichment, it is not unjust." *Nibbi Bros., Inc. v. Home Fed. Sav. & Loan Ass'n*, 205 Cal. App. 3d 1415, 1422, 253 Cal. Rptr. 289, 293 (1988). Therefore, courts routinely dismiss unjust enrichment claims where, as here, they depend on an implausible theory of deception. *See Sue Shin v. Campbell Soup Co.*, 2017 WL 3534991, at *8 (C.D. Cal. Aug. 9, 2017) (granting motion to dismiss unjust enrichment claim that was based on an implausible allegation of deception);

*Jonathan Chuang v. Dr Pepper Snapple Grp., Inc.*, 2017 WL 4286577, at *8 (C.D. Cal. Sept. 20, 2017) (unjust enrichment claims failed with California statutory claims).

A similar analysis applies to claims for breach of express warranty. *Chuang*, 2017 WL 4286577, at *8 (dismissing breach warranty claims because statements on which those claims were based are true); *see also In re General Mills Glyphosate Litig.*, 2017 WL 2983877, at *7 ("The Court further concludes Plaintiffs failed to plausibly allege a breach of warranty because Defendant did not warrant that [the product] would be free from trace glyphosate.").

This line of authority disposes of Plaintiff's breach of warranty and unjust enrichment claims. Both these causes of action depend on Plaintiff's unreasonable interpretation of the term "natural." Am. Compl. ¶¶ 120–23 (alleging breach of warranty based on "natural" claim on Products' labeling, which Plaintiff alleges did not conform to his interpretation of that term); *id.* ¶¶ 127–28 (alleging unjust enrichment based on same conduct). Because Plaintiff's construction of the term "natural" as "does not contain any" trace pesticides is implausible, Am. Compl. ¶¶ 34, 54, these claims fail along with this UCL, FAL, and CLRA claims, *Chuang*, 2017 WL 4286577, at *8; *see also Rugg v. Johnson & Johnson*, 2019 WL 119971, at *4–5 (N.D. Cal. Jan. 7, 2019) (treating unjust enrichment, breach of warranty and California statutory claims the same for purposes of a motion to dismiss); *see also* Dismissal Order at 6 (dismissing warranty and unjust enrichment claims along with consumer protection claims).

**C.    Plaintiff Fails to Allege Future Purchase Intent Necessary for Injunctive Relief Standing.**

The three "irreducible constitutional minim[a] of standing" are: "injury-in-fact, causation, and redressability." *Davidson v. Kimberly-Clark, Corp.*, 889 F.3d 956, 967 (9th Cir. 2018), *as amended*. A plaintiff must demonstrate Article III "standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC) Inc.*, 528 U.S. 167, 185 (2000).

As this Court recognized in its Dismissal Order, "standing for injunctive relief requires some plausible allegation of the plaintiff's intent to buy the product at issue in the future." Dismissal Order at 8. That is the law in this circuit, *see Davidson*, 889 F.3d at 970–72 & n.5, as applied by numerous courts in this district, *see, e.g.*, *Joslin v. Clif Bar & Co.*, 2019 WL 5690632, at *2 (N.D.

1   Cal. Aug. 26, 2019) (in both examples provided by *Davidson*, "a plaintiff must allege they would

2   want to or intend to purchase the product in the future"); *Anthony v. Pharmavite*, 2019 WL 109446,

3   at *6 (N.D. Cal. Jan. 4, 2019) (no standing to seek injunctive relief when plaintiffs "do not allege

4   they intend to purchase the . . . Products again in the future"). And, "it is well-established that

5   'named plaintiffs who represent a class must allege and show that they personally have been

6   injured, not that the injury has been suffered by other, unidentified members of the class to which

7   they belong and which they purport to represent.'" *Anthony*, 2019 WL 109446, at *6 (citation

8   omitted).

9          Even with amendment, Plaintiff's Amended Complaint fails to satisfy *Davidson*. Plaintiff

10  does not allege that he would want to or intends to purchase the Products in the future. *Joslin*, 2019

11  WL 5690632, at *2. Rather, he carries over allegations from his original Complaint—allegations

12  this court already found lacking—that Mott's activity is ongoing, Am. Compl. ¶ 56, and

13  "[c]onsumers are at risk of real, immediate, and continuing harm if the Products continue to be sold

14  as is . . . ," *id.* ¶ 67; *compare id.*, *with* Compl., ECF No. 1, ¶¶ 50, 61. But that sort of generalized

15  allegation of ongoing harm, without an allegation of future purchase intent, is insufficient to

16  establish standing to seek injunctive relief. *Joslin*, 2019 WL 5690632, at *2; *see also Davidson*,

17  889 F.3d at 971. And standing is personal, so Plaintiff cannot establish standing by claiming that

18  members of the class (i.e., "consumers") will be harmed. *See In re Apple & AT&TM Antitrust Litig.*,

19  596 F. Supp. 2d 1288, 1309 (N.D. Cal. 2008); *cf.* Am. Compl. ¶ 67. This claim for relief fails.

20  **D.     The Court May Choose to Continue the Primary Jurisdiction Stay.**

21         There are ample reasons to dismiss the Amended Complaint here outright and with

22  prejudice. *See supra* Sections IV.A–C. However, the Court can also choose to extend the primary

23  jurisdiction stay it issued on June 18, 2019, in deference to the FDA's ongoing rulemaking on use

24  of the term "natural" in food labeling. *See* Dismissal Order at 10, ¶ 6 (staying case through end of

25  February 2020 "without prejudice to a request to continue the stay").

26         "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a

27  complaint without prejudice pending the resolution of an issue within the special competence of an

28  administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). "In

-16-

1   evaluating primary jurisdiction [courts] consider, '(1) the need to resolve an issue that (2) has been

2   placed by Congress within the jurisdiction of an administrative body having regulatory authority

3   (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority

4   that (4) requires expertise or uniformity in administration.'" *Astiana v. Hain Celestial Grp. Inc.*,

5   783 F.3d 753, 760 (9th Cir. 2015) (citing *Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*,

6   307 F.3d 775, 781 (9th Cir. 2002)).

7        As this Court previously found, these *Syntek* factors are met here. First, the FDA is currently

8   reviewing whether and how to regulate use of the term "natural" on food labels. *See Use of the*

9   *Term "Natural"*, 80 Fed. Reg. at 69905-01. And although the public comment period closed in

10   May 2016, CFSAN Director Dr. Susan T. Mayne, Ph.D. recently confirmed that regulation of

11   "natural" is forthcoming. As part of a September 27, 2019 speech on the FDA's "Nutrition

12   Innovation Strategy," Director Mayne outlined the FDA's priorities and singled out the issue of

13   "natural" claims as among the topics receiving agency attention. Director Mayne explained: "[W]e

14   are close to proposing a new definition for the "Healthy" claim on food labels and have been

15   working diligently on the claim 'Natural.'" Sipos Decl. Ex. D, at 1. These remarks follow on a 2018

16   letter from Dr. Scott Gottlieb, M.D., former FDA Commissioner, explaining that the "FDA is

17   actively working on this issue." Sipos Decl. Ex. E. The FDA's ultimate guidance on "Natural" will

18   bear on the key issues in this case, including whether the Natural Labels are misleading to a

19   reasonable consumer, *Rosillo v. Annie's Homegrown, Inc.*, 2017 WL 5256345, at *3 (N.D. Cal.

20   Oct. 17, 2017), and whether "the use of pesticides [should] be a factor in defining 'natural,'" *Use*

21   *of the Term "Natural"*, 80 Fed. Reg. at 69908. Deference to this process is appropriate.

22        Since the 2015 notice of rulemaking, many courts have stayed "natural" cases in deference

23   to the FDA's ongoing proceeding. *See, e.g.*, *Kane v. Chobani, LLC*, 645 F. App'x 593, 594 (9th

24   Cir. 2016) ("Given the ongoing FDA proceedings regarding the term[] 'natural' . . . we conclude

25   that resolution of this action will not be needlessly delayed and that judicial resources will be

26   conserved by staying these proceedings.") (reversing district court and remanding for entry of stay);

27   *Rosillo*, 2017 WL 5256345, at *4; *Maxwell v Unilever US Inc.*, 2016 WL 5110498, at *1 (N.D.

28   Cal. Mar. 30, 2016) ("Because several of Plaintiffs' claims challenge Defendant's use of the term

'natural' on its products, the court intends to stay this action consistent with the Ninth Circuit's opinion" in *Kane*.).

More recently, courts have continued primary jurisdiction stays based on the FDA's statement that a decision on natural is forthcoming. *See* Minute Entry, *Stanton v. Sargento Foods, Inc.*, 3:17-cv-02881-AGT (N.D. Cal. Apr. 10, 2020), ECF No. 70 (primary jurisdiction stay remains in effect through June 9, 2020); Order Continuing Stay, *Rosillo v. Annie's Homegrown, Inc.*, No. 4:17-cv-02474-JSW (N.D. Cal. Feb. 5, 2020), ECF No. 59 ("FDA statements issued in late September 2019 demonstrate the FDA is still actively working on the term 'natural.'"); Order Continuing Stay, *Campbell v. Annie's Homegrown, Inc.*, 4:17-cv-07288-JSW (N.D. Cal. Feb. 5, 2020), ECF No. 59; Order Continuing Stay, *In re: General Mills, Inc. Kix Cereal Litig.*, No. 2:12-cv-00249-KM-JBC (D.N.J. Jan. 7, 2020), ECF No. 226.

As for the remaining factors, "it cannot be denied that Congress has, through the Food, Drug and Cosmetic Act, 21 U.S.C. § 301, *et seq.*, subjected food labeling to a comprehensive regulatory regime administered by the FDA." *Rosillo*, 2017 WL 5256345, at *3. And in the context of food labeling, the Ninth Circuit has held that "[t]he delineation of the scope and permissible usage of the term[] 'natural' . . . in connection with food products 'implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch.'" *Kane*, 645 F. App'x at 594 (ordering district court to stay "natural" case under primary jurisdiction doctrine) (citations omitted). Finally, food labeling is precisely the type of policy that requires "uniformity in administration" to avoid a state-based patchwork of labeling rules. *Reese v. Odwalla, Inc.*, 30 F. Supp. 3d 935, 941 (N.D. Cal. 2014) ("Congress has vested the FDA with regulatory authority over food labeling, charging the agency with creating a uniform national scheme of regulation to ensure that food is labeled in a manner that does not mislead consumers.").

This Court's finding in June 2019 that "the FDA's regulatory process may shape the contours of the word 'natural' as applied to food labeling, an issue that permeates Plaintiff's complaint," remains true today. Dismissal Order at 9–10. A continuation of the primary jurisdiction stay is appropriate.

1

**E.      Dismissal with Prejudice Is Appropriate.**

Dismissal with prejudice is appropriate where amendment would be futile, *Cattaneo v. Am. Airlines, Inc.*, 2015 WL 5610017, at *3 (N.D. Cal. Sept. 24, 2015) (Freeman, J.), or plaintiff "repeated[ly] fail[s] to cure deficiencies by amendments previously allowed," *Brodsky v. Apple, Inc.*, 2020 WL 1694363, at *19 (N.D. Cal. Apr. 7, 2020) (quoting *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010)) (alterations in original).

Both circumstances are present here. First, no reasonable consumer believes that "natural" means "free from trace acetamiprid," and no plausible amendment will alter this conclusion. *See Axon*, 2019 WL 8223527, at *1–2 (denying motion to amend as futile in similar trace pesticides "natural" case). Second, Plaintiff failed to correct deficiencies identified by the Court's order on Mott's first motion to dismiss. Plaintiff's sole substantive addition to the Amended Complaint are two surveys that do not support his claims. Because Plaintiff failed to correct deficiencies this Court previously identified, dismissal with prejudice is appropriate. *Parks*, 2020 WL 832863, at *1–2 (dismissing trace pesticides / "natural" case with prejudice where amended complaint failed to cure implausibility of prior complaint).

## VI.      CONCLUSION

For the foregoing reasons, Mott's respectfully requests that the Court dismiss the Amended Complaint with prejudice. If the matter is not dismissed, then continuation of the stay pursuant to the primary jurisdiction doctrine is appropriate given the FDA's pending rulemaking concerning use of the term "natural" on food labeling.

Case No. 5:18-cv-06664-BLF
MOTION TO DISMISS AM. COMPLAINT

DATED:  April 30, 2020                    **PERKINS COIE LLP**

                                          By: */s/ Charles C. Sipos*
                                          Charles Sipos, *pro hac vice*
                                          CSipos@perkinscoie.com
                                          David T. Biderman, Bar No. 101577
                                          DBiderman@perkinscoie.com
                                          Lauren Watts Staniar, *pro hac vice*
                                          LStaniar@perkinscoie.com

                                          *Attorneys for Defendants*
                                          *Dr Pepper Snapple Group, Inc. and*
                                          *Mott's LLP*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on April 30, 2020, I caused to be filed via the CM/ECF system true and correct copies of the following documents and that the service of these documents was accompanied on all parties in the case by CM/ECF system.

*/s/ Charles C. Sipos*
Charles C. Sipos, *pro hac vice*
CSipos@perkinscoie.com

Case No. 5:18-cv-06664-BLF
MOTION TO DISMISS AM. COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28