1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

HAWYUAN YU,

               Plaintiff,

     v.

DR PEPPER SNAPPLE GROUP, INC., et al.,

               Defendants.

Case No.  18-cv-06664-BLF

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND**

[Re:  ECF 47]

For the second time, Plaintiff Hawyuan Yu brings a complaint against Defendants Dr Pepper Snapple Group, Inc. ("Dr. Pepper") and Mott's, LLP (collectively, "Defendants") on behalf of a putative class. Defendants have filed another motion to dismiss the complaint, advocating for outright dismissal with prejudice or, alternatively, a stay. *See* Mot., ECF 47.

Plaintiff's main allegation remains the same: Defendants mislead consumers by selling apple juice and applesauce products with the representation "Natural" and/or "All Natural Ingredients" that nonetheless contain trace amounts of a pesticide. The same five causes of action are back again as well. The only thing that has changed is that Plaintiff has added two generic surveys to the allegations the Court already held insufficient once. Since the Ninth Circuit has recently made clear that this addition alone will not do, the Court GRANTS Defendant's motion to dismiss. Because Plaintiff has already received a second chance at stating a claim upon which relief could be granted, the Court finds further amended futile and dismisses the complaint WITHOUT leave to amend.

### I.    BACKGROUND

Plaintiff, an individual consumer, is a citizen of the City and County of San Francisco,

California. Am. Compl. ("FAC") ¶ 27. Defendant Dr. Pepper is incorporated in Delaware with its principal place of business in Plano, Texas. Id. ¶ 31. Defendant Mott's is a subsidiary of Dr. Pepper and is incorporated in Delaware with its principal place of business in Rye Brook, New York. *Id.* ¶ 32. Defendants sell several applesauce and apple juice products ("the Products"), including Mott's Natural Unsweetened Applesauce, Mott's Healthy Harvest Applesauce, Mott's Natural 100% Juice Apple Juice, and other varieties of Mott's brand applesauce and apple juice products that include the representation "Natural" and/or "All Natural Ingredients" on the product package or label. See id. ¶¶ 1, 5, 7. Defendants sell these products nationwide. Id. ¶¶ 10, 33.

Plaintiff purchased Mott's Natural Applesauce and Natural Apple Juice on multiple occasions from a Costco Warehouse in Sunnyvale, California, and a Safeway Store in San Jose, California. FAC ¶ 28. Plaintiff alleges that in deciding to make these purchases, Plaintiff saw, relied upon, and reasonably believed Defendants' representations that the products were "Natural" and made of "All Natural Ingredients." *Id.* ¶ 29. Plaintiff further alleges that he was "willing to pay more for Defendants' Products because he expected the Products to be free of insecticides and other unnatural chemicals." *Id.* ¶ 30.

According to the complaint, though, Defendants' applesauce and apple juice products contain acetamiprid, a "synthetic and unnatural chemical." *See* FAC ¶¶ 10, 11. Acetamiprid is a synthetic insecticide used in treating and harvesting crops, including fruits and vegetables. *Id.* ¶¶ 12, 13. Acetamiprid may be hazardous to human development and to other animals, including the honeybee. *Id.* ¶ 12. Acetamiprid is "legal" in connection with food products, insofar as its use is not precluded and certain amounts of residuals are permitted to remain on fruits and vegetables. *Id.* ¶ 13. Plaintiff's primary theory of liability is not that the acetamiprid present in Defendants' products exceeds the legal limit, but instead that "[r]easonable consumers who see Defendants' representations that the Products contain 'All Natural Ingredients' or are 'natural' expect the Products to meet a higher standard than competing products not advertised as 'natural,' and do not expect the Products to contain traces of a synthetic insecticide." *Id.* ¶¶ 14, 15.

According to Plaintiff, Defendants' representations that the Products are made of "All Natural Ingredients" and/or are "Natural" are false and misleading because a reasonable consumer

believes that Products that are "natural" do not contain a synthetic and unnatural pesticide, even in residual amounts. FAC ¶ 37. Plaintiff cites a study conducted in January 2019 ("2019 Study") that stated that 68.1 percent of consumers would consider food produced from crops sprayed with synthetic pesticides not natural. FAC ¶ 38; Ex. C, the 2019 Study at 29, ECF 48-3. Plaintiff also cites a 2015 Consumer Reports phone survey ("2015 Consumer Reports Survey") that found that 63 percent of respondents think that the natural label on packaged and processed foods means that "no toxic pesticides were used." FAC ¶ 39; Ex. B, 2015 Consumer Reports Survey at 6, ECF 48-3. The 2015 Consumer Reports Survey also states that "Consumers were asked about their perception of the natural and organic labels. The organic food label is meaningful, is backed by federal regulations, and verified by third-party inspections; the natural label, however, is essentially meaningless (little regulation/verification)." 2015 Consumer Reports Survey at 4.

Plaintiff proposes a nationwide class of consumers who purchased Defendants' Products-in-question, as well as a California subclass. *See* FAC ¶¶ 72–87. Plaintiff asserts five causes of action: (1) Unfair and Deceptive Acts and Practices under the California Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750–1785 (on behalf of the California subclass); (2) Violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.* (on behalf of the California subclass); (3) Violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* (on behalf of the California subclass); (4) Breach of Express Warranty (on behalf of the nationwide class); and (5) Unjust enrichment (on behalf of the nationwide class). See id. ¶¶ 88-128.

The Court previously granted Defendants' motion to dismiss the original complaint on all five claims with leave to amend. *See* Order ("Dismissal Order"), ECF 40. The Court also stayed the case through the end of February 2020 under the primary jurisdiction doctrine because of ongoing FDA regulatory proceedings to define the term 'natural' for food labeling. Dismissal Order 8–10. That process has yet to conclude.

## II.    LEGAL STANDARD

### A.  Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering such a motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### B.  Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As such, a federal court has an independent obligation to ensure that it has subject matter jurisdiction over a matter. *See* Fed. R. Civ. P. 12(h)(3); *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002). On a motion to dismiss pursuant to Rule 12(b)(1), which challenges a court's subject matter jurisdiction over a claim, the burden is on the plaintiff, as the party asserting jurisdiction, to establish that subject matter jurisdiction exists. *Kokkonen*, 511 U.S. at 377. A facial jurisdictional challenge asserts that even if assumed true, "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

### C.  Leave to Amend

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence*

1    *Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries

2    the greatest weight." *Id*. However, a strong showing with respect to one of the other factors may

3    warrant denial of leave to amend. *Id.* Dismissal without leave to amend is proper only if it is clear

4    that "the complaint could not be saved by any amendment." *Intri-Plex Techs., Inc. v. Crest Group,*

5    *Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007) (internal citations and quotations omitted).

6

7    **III.    Request for Judicial Notice**

8            Defendants request that the Court take judicial notice of A) copies of the Applesauce and

9    Apple Juice Product labels as depicted in paragraphs 5 and 7 of the amended complaint; B) the

10   2015 Consumer Reports Survey referenced in the amended complaint; C) the 2019 Study

11   referenced in the amended complaint; D) a copy of public statements made by Center for Food

12   Safety and Applied Nutrition (CFSAN) Director Susan T. Mayne; and E) a letter from Scott

13   Gottlieb, former commissioner of the FDA, to U.S. Representative David Valado. Req. for

14   Judicial Notice 1, ECF 48. The Court is unaware of any opposition to Defendants' request for

15   judicial notice.

16           The Court may take judicial notice of documents referenced in the complaint, as well as

17   matters in the public record. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001),

18   *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th

19   Cir. 2002). In the context of food labels, courts regularly take judicial notice of product labels

20   when those product labels form the basis of the relevant causes of action. *See, e.g., Barnes v.*

21   *Campbell Soup Co.*, 2013 WL 5530017, at *3 (N.D. Cal. July 25, 2013) (taking judicial notice of

22   photocopies of Campbell's "100% Natural" soup labels). In addition, the Court may take judicial

23   notice of matters that are either "generally known within the trial court's territorial jurisdiction" or

24   "can be accurately and readily determined from sources whose accuracy cannot reasonably be

25   questioned." Fed. R. Evid. 201(b). Public records, including judgments and other court documents,

26   are proper subjects of judicial notice. *See, e.g., United States v. Black*, 482 F.3d 1035, 1041 (9th

27   Cir. 2007). However, "[j]ust because the document itself is susceptible to judicial notice does not

28   mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja*

United States District Court
Northern District of California

*v. Orexigen Therapeutics*, Inc., 899 F.3d 988, 999 (9th Cir. 2018).

The Court finds Defendants' requests for judicial notice proper because Plaintiff references Exhibits A-C in the amended complaint, and Exhibits D and E are matters in the public record.

## IV. DISCUSSION

Defendants set forth the following four issues to be decided:

1. Whether the Court should dismiss Plaintiff's consumer protection claims with prejudice because the amended complaint still does not plausibly allege that a "reasonable consumer" interprets the terms "Natural" and "All Natural Ingredients" to mean "the utter absence of residual pesticides."

2. Whether the Court should dismiss Plaintiff's breach of warranty and unjust enrichment claims with prejudice because—as this Court previously held— these claims necessarily fail if Plaintiff's consumer protection claims fail.

3. Whether Plaintiff's request for injunctive relief should be dismissed due to lack of Article III standing, when the Amended Complaint makes no attempt to plead future purchase intent.

4. Whether, if the amended complaint is not dismissed with prejudice, the case should be stayed on primary jurisdiction grounds in deference to continued FDA proceedings regarding use of the term "natural" on food labeling.

Mot. 6-7. The Court addresses each issue in turn.

### A. Reasonable Consumer

Defendants argue that Plaintiff's UCL, FAL, and CLRA claims must be dismissed because he has not alleged that a "reasonable consumer" would be deceived by the Products' labeling. Mot. 8.

"The Ninth Circuit has explained that 'these [three] California statutes are governed by the 'reasonable consumer' test." *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 15 (N.D. Cal. 2020) (quoting *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). "Under the reasonable consumer standard, [plaintiffs] must show that members of the public are likely to be deceived." *Williams*, 552 F.3d at 938. "The reasonable consumer test requires more than a mere

possibility that defendant's product 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.' Rather, the test requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Cheslow*, 445 F. Supp. 3d at 16 (*quoting Lavie v. Procter & Gamble Co.*, 129 Cal.Rptr.2d 486, 495 (Cal. Ct. App. 2003)). Normally the reasonable consumer question is not resolved at the motion to dismiss stage, but in rare circumstances the Court may determine, as a matter of law, that the alleged violations are simply not plausible. *Cheslow*, 445 F. Supp. 3d at 16 (finding on a motion to dismiss that plaintiff's theories and survey evidence regarding a reasonable consumer's understanding were not plausible as a matter of law); *see also Becerra*, 945 F.3d at 1231 (affirming district court's dismissal regarding the reasonable consumer's understanding of the word "diet").

According to Defendants, Plaintiff's theory of deception—reasonable consumers interpret the word natural to mean a food product that is completely free of any trace pesticides—has been rejected by several courts: *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241 (S.D.N.Y. 2019);  *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020) ; and *In re General Mills Glyphosate Litig.*, No. 16-2869, 2017 WL 2983877 (D. Minn. July 12, 2017). Mot. 9. And the Ninth Circuit recently held in *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1231 (9th Cir. 2019) that a plaintiff cannot rely on consumer surveys alone to make plausible the allegation that reasonable consumers are misled when the complaint does not otherwise plead facts establishing deception. Mot. 10. Further, Defendants argue that the *Axon* and *Parks* courts have rejected these exact two surveys and held that they do not render plausible the idea that a reasonable consumer believes the word "natural" on a food label indicates the complete absence of trace pesticides. Mot. 12-13.

Plaintiff responds that the *Axon*, *Parks*, and *General Mills* cases are distinguishable and cites to several Washington, D.C. superior court cases in an attempt to demonstrate that the weight of authority is behind his interpretation of the word "natural," which implies a food product with no trace pesticides. Opp'n 4-8. Plaintiff also argues that this case is analogous to *Tran v. Sioux*

7

1    *Honey Ass'n, Coop.*, No. 8:17-CV-00110-JLS-SS, 2020 WL 905571 (C.D. Cal. Feb. 24, 2020),

2    which concerned the word "pure" as opposed to "natural." Opp'n 4-5. And Plaintiff cabins

3    *Becerra* to the particular surveys at issue in that case and whether they nudged that plaintiff's

4    allegations about the reasonable consumer's understanding of the word "diet" from theoretical to

5    plausible. Opp'n 10.

6          The Court agrees with Defendants, and the weight of authority in the federal courts, that

7    Plaintiff's reasonable consumer theory is not plausible as a matter of law. The Court also bound by

8    *Becerra*'s holding that adding surveys cannot alone salvage implausible claims. 945 F. 3d at 1231.

9    The only material difference between this amended complaint and the original complaint that the

10   Court dismissed on June 18, 2019, is the addition of the two surveys. Under *Becerra*, this is

11   insufficient to survive a motion to dismiss.

12                          **1.  Existing Precedent**

13         In *Parks*, the plaintiff challenged the defendants' labeling of premium dog food as

14   "natural" when it contained trace amounts of an herbicide. 377 F. Supp. 3d at 244. The products

15   did not disclose the presence of glyphosate, the herbicide. *Id.* The plaintiff (who was represented

16   by the same law firm representing Plaintiff here) made similar claims: he relied on the

17   representation that the products were "natural" when he purchased them, and he was willing to pay

18   more for the products because he expected them to be free of pesticides and other unnatural

19   chemicals. *Id.* Plaintiff argued that if glyphosate is in the products at any level, then the products

20   cannot be called "natural." *Id.* at 247. The court found this implausible, stating, "a reasonable

21   consumer would not be so absolutist as to require that "natural" means there is no glyphosate,

22   even an accidental and innocuous amount, in the Products." *Id.*

23         *Axon* concerned the brand Florida's Natural orange juice. 354 F.Supp.3d at 174. The

24   plaintiff (also represented by the same law firm representing Plaintiff here) alleged that the use of

25   the term "natural" in the company's brand name is deceptive because glyphosate is not a natural

26   ingredient. *Id.* In ruling on the motion to dismiss, the court disagreed, stating, "Given the

27   widespread use of herbicides, the court finds it implausible that a reasonable consumer would

28   believe that a product labeled Florida's Natural could not contain a trace amount of glyphosate

United States District Court
Northern District of California

8

that is far below the amount deemed tolerable by the FDA." *Id.* at 183 (internal brackets and quotations omitted). The Second Circuit affirmed the district court's application of the reasonable consumer standard and holding that the plaintiff failed to state a claim as a matter of law. *Axon v. Florida's Natural Growers, Inc.*, 813 F. App'x 701, 703 (2d Cir. 2020).

In *General Mills*, the plaintiff challenged the labeling of Nature Valley products as "Made with 100% Natural Whole Grain Oats" when they contained trace amounts of the chemical glyphosate. 2017 WL 2983877, at *1. The plaintiff here (again represented by the same law firm) hit the same dead-end. That court concluded, "[i]t is implausible that a reasonable consumer would believe that a product labelled as having one ingredient—oats—that is "100% Natural" could not contain a trace amount of glyphosate that is far below the amount permitted for organic products." Id. at *5.

The FDA regulates acetamiprid like it does glyphosate: as pesticides, neither is required to be disclosed on food labels, and the pesticides are allowed to be present in foods in specified trace amounts, known as tolerances, without the food being deemed unsafe or adulterated. 21 U.S.C. §§ 346a(a)(1)(A), 346a(a)(4). Plaintiff does not allege that acetamiprid is present in an unsafe amount, and the amount Plaintiff claims is in the Products is well below the FDA established tolerance. 40 C.F.R. § 180.578. As such, the Court finds the reasoning in the *Axon*, *Parks*, and *General Mills* cases analogous here.

At the same time, the Court finds *Tran v. Sioux Honey Ass'n, Coop.*, No. 8:17-CV-00110-JLS-SS, 2020 WL 905571 (C.D. Cal. Feb. 24, 2020) distinguishable. Plaintiff cites to the order granting class certification, which did not evaluate the reasonable consumer standard. This occurred in an earlier order, *see Tran v. Sioux Honey Ass'n, Coop.*, No. 8:17-CV-110-JLS-JCGX, 2018 WL 10612686, at *5 (C.D. Cal. Aug. 20, 2018), and the court focused on the dictionary definition of the word "pure" in declining to decide the reasonable consumer test as a matter of law. 2018 WL 10612686, at *5. "Pure" and "natural" are obviously different terms, and the Court will interpret the word "natural" in the same way as the other federal courts.[1]

---

[1] The Defendants in *Tran* were recently granted summary judgment as the Court found there was no evidence that reasonable consumers would be misled by manufacturer's labeling of its products

### 2.   Plaintiff's Surveys

As Defendants indicate, the surveys Plaintiff relies on to push the complaint from mere conjecture to plausible have been rejected by other courts in the same context. In the *Axon* case, the plaintiff amended the dismissed complaint with the 2015 Consumer Reports Survey and cited the same finding that "63 percent of respondents think that the natural label on packaged and processed foods means that 'no toxic pesticides were used.'" FAC ¶ 39; *Axon v. Citrus World, Inc.*, No. 18-CV-4162, 2019 WL 8223527, at *1 (E.D.N.Y. Jan. 14, 2019), *aff'd sub nom. Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020). The court dismissed the complaint with prejudice and detailed the weaknesses of the survey:

> The 2015 Survey simply states that a majority of consumers believe that the "natural" label on packaged/processed foods means that no toxic pesticides or artificial materials/chemicals were used. It does not include details on how it defined "toxic pesticides," "artificial materials/chemicals," the "use" of such products, or a "'natural' label."

2019 WL 8223527, at *2. Both the 2015 Consumer Reports Survey and the 2019 Study were added to the amended complaint in *Parks*, but it was dismissed with prejudice, too. Mot. 13; *Parks v. Ainsworth Pet Nutrition, LLC*, No. 18 CIV 6936 (LLS), 2020 WL 832863, at *1 (S.D.N.Y. Feb. 20, 2020).

Plaintiffs argue that Defendants are seeking to impose too exacting of an evidentiary burden at the motion to dismiss stage. Opp'n 12–15. The Court agrees that it must take all facts properly pled by the Plaintiff as true. However, Plaintiff doesn't have carte blanche to take illogical leaps and bounds and leave the Court to connect the dots. Regarding the 2015 Consumer Reports Survey's claim that "63 percent of respondents think that the natural label on packaged and processed foods means that "no toxic pesticides were used," Plaintiff argues in its opposition brief that there is no indication that "toxic" is limited specifically to toxicity in humans. Opp'n 12. The theory of the case, Plaintiff argues, goes beyond just caring about the amount of pesticides present in the final Products and instead encompasses consumers wanting to support natural

---

as "Pure" or "100% Pure," in spite of a survey commissioned by the plaintiffs. *Tran v. Sioux Honey Ass'n, Coop.*, No. 8:17-CV-00110-JLS-SS, 2020 WL 3989444 (C.D. Cal. July 13, 2020).

products because they care about protecting the environment in general. Opp'n 12–13. This, however, is not pled in Plaintiff's complaint. Plaintiff states that neonicotinoids like acetamiprid are believed to pose a risk to honeybees by playing a role in colony collapse disorder. FAC ¶ 45. Plaintiff then states that reasonable consumers don't expect acetamiprid to be present in "natural" applesauce or applesauce made with "all natural ingredients." *Id.* ¶ 46. Plaintiff then jumps to a different section of the 2015 Consumer Reports Survey that states that protecting the environment from chemicals was either very important or important to almost 90 percent of U.S. consumers when shopping for food. *Id.* ¶ 47. This, though, doesn't distinguish at all between people who select natural products versus those who purchase products that make no representations at all. The Court cannot read into the pleadings allegations that simply are not there.

The 2015 Consumer Reports Survey arguably undermines, rather than supports, Plaintiff's argument about the reasonable consumer's interpretation of the word "natural." It states, "Consumers were asked about their perception of the natural and organic labels. The organic food label is meaningful, is backed by federal regulations, and verified by third-party inspections; the natural label, however, is essentially meaningless (little regulation/verification)." 2015 Consumer Reports Survey at 4. Assuming all fact assertions are true, as the Court must, the Court finds this survey does not help plaintiff allege a plausible claim.

Finally, the 2019 Study is tangentially related to Plaintiff's claims, at best. The 2019 Study, conducted for the Corn Refiners Association, concerns crop production, not food labeling. The Court does not find it helpful in Plaintiff's quest to plead a plausible claim. Other courts in this district have held surveys specifically commissioned for the case insufficient as a matter of law when the pleadings had previously been dismissed for failing to state a claim. *See Cheslow*, 2020 WL 4039365, at *5–*7 (unreasonable for plaintiffs to think that the term "white" in "white chips" meant white chocolate chips). If the survey in *Cheslow* and the survey in *Becerra*—which was created specifically for the product in question, diet soda—wasn't enough to bolster a plaintiff's claim into the realm of plausibility, these two generic surveys aren't enough for Plaintiff here.

### 3. Conclusion

11

The Court finds that Plaintiff has failed to plausibly allege that a reasonable consumer would believe that the Products labeled natural are free of any trace pesticides whatsoever. Since the pleadings remain deficient, the Court finds further amendment futile under *Becerra* and GRANTS Defendants' motion to dismiss as to the UCL, FAL, and CLRA WITH PREJUDICE.

### B.  Breach of Warranty and Unjust Enrichment Claims

Previously, the Court dismissed the breach of warranty and unjust enrichment claims for the same reason it dismissed with UCL, FAL, and CLRA claims. Dismissal Order 6. Defendants argue the same thing should happen again, as Plaintiff's breach of warranty and unjust enrichment claims rely on deception that, as a matter of law, does not exist. Mot. 14. Plaintiff simply states that Defendants have not offered further arguments as to why Plaintiff's allegations of reasonable consumer conduct are implausible. Opp'n 18–19. The Court agrees with Defendants and, for the reasons articulated above, GRANTS the motion to dismiss on these two claims WITH PREJUDICE.

### C.  Injunctive Relief

As to the final claim, Defendants argue that Plaintiff lacks standing to pursue injunctive relief because Plaintiff has not pled that he plans to purchase the product at issue in the future. Indeed, the Court explicitly stated in its previous dismissal order that "standing for injunctive relief requires some plausible allegation of the plaintiff's intent to buy the product at issue in the future." Dismissal Order 8. Despite this rather clear instruction, Plaintiff did not plead a future intent to purchase. Instead, Plaintiff argues that 1) Defendants only bring this motion under Rule 12(b)(6), not 12(b)(1), and 2) under *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018), he doesn't need to plead plans of future purchase because threat of encountering the misleading product label in the future is sufficient future harm. Opp'n 19–20. However, after Defendants challenged Plaintiff's lack of future injury, Plaintiff submitted a declaration with his opposition brief addressing his future purchasing plans. Opp'n 21. Plaintiff writes that he plans to continue purchasing applesauce and apple juice in the future and will consider the Mott's brand when making his purchases but that he lacks "the knowledge and means necessary to determine whether the Mott's Products are in fact "Natural," whether the Mott's Natural Applesauce truly

1    contains "All Natural Ingredients," or to know the true contents and quality of the products." Decl.

2    of Hawyuan Yu ¶¶ 4–5, ECF 51-1. Defendants reply that they do challenge Plaintiff's standing

3    under Rule 12(b)(1) and updated the caption on the reply brief to reflect that, and even if the Court

4    accepts Plaintiff's declaration, he still does not have standing. Reply 10–11, ECF 54.

5         "A plaintiff must demonstrate constitutional standing separately for each form of relief

6    requested." *Davidson*, 889 F.3d at 967. "To establish standing to seek injunctive relief or

7    declaratory relief, a plaintiff must show he is under threat of suffering 'injury in fact that is

8    concrete and particularized and that the threat must be actual and imminent, not conjectural or

9    hypothetical.'" *N.Y. v. San Ramon Valley Unified Sch. Dist.*, No. 17-CV-03906-MMC, 2018 WL

10   2463243, at *2 (N.D. Cal. June 1, 2018). *Davidson* held that under certain circumstances, a

11   previously deceived consumer who brings a false advertising claim can allege that his inability to

12   rely on the defendant's future advertising constitutes an injury sufficient to grant Article III

13   standing to seek prospective relief. *Davidson*, 889 F.3d at 967.

14        The Court finds this case similar to *Prescott v. Nestle USA, Inc.*, No. 19-CV-07471-BLF,

15   2020 WL 3035798, at *6 (N.D. Cal. June 4, 2020). In *Prescott*, the plaintiffs made it clear that did

16   not wish to purchase "fake" white chocolate offered by defendants. *Id.* The plaintiffs did not allege

17   that they would purchase the defendants' white chips product absent the alleged misleading

18   labeling, and, since they knew that the defendants' product did not contain white chocolate, it was

19   difficult to see how they could be misled into purchasing it in the future. *Id.* The *Prescott* plaintiffs

20   alleged that they would purchase the product again in the future if they could be sure that the

21   product was white chocolate, but the Court found they lacked standing because the Court lacks

22   authority to compel Nestle to make any particular product by way of an injunction. *Id.*

23        Here, accepting Plaintiff's pleadings as true, it is clear he knows that the applesauce and

24   apple juice products contain acetamiprid, which is not natural, and therefore the Products are not

25   natural. FAC ¶¶ 10-11, 15, 21. He also is willing to pay more for products that do not contain

26   pesticides and other "unnatural chemicals." *Id.* ¶ 30. Given what Plaintiff knows about

27   Defendants' products and his preference for applesauce and apple juice free of trace amounts of

28   pesticides, the Court does not find it plausible that he would be misled into purchasing these

United States District Court
Northern District of California

13

1  Products in the future. Accordingly, the Court finds that there are deficiencies in the pleading of

2  standing for injunctive relief. Although the declaration does not clearly establish that Plaintiff

3  could meet the pleading requirement set out in *Davidson*, the Court would have allowed further

4  leave to amend had any substantive claim survived. Since none have survived, the amendment

5  would be futile. The Court GRANTS Defendants' motion to dismiss WITHOUT leave to amend

6  since amendment would be futile.

7     **D.   The Primary Jurisdiction Stay**

8        Neither party advocates for the Court to stay the case while the FDA continues its

9  regulatory proceedings to define the term 'natural' for food labeling, albeit for different reasons.

10  Plaintiff argues that the resolution of the case does not require the expertise of the FDA and that

11  the FDA is unlikely to issue guidance soon. Opp'n 22. Defendants argue that a stay is unnecessary

12  since there are ample grounds to dismiss the complaint in full, with prejudice. Reply 11. The Court

13  agrees with Defendants on the merits of the complaint and also agrees with Plaintiff that it is

14  unnecessary to continue an indefinite wait on the FDA. Regulations from the USDA expressly

15  permit the use of pesticides on organic crops and have established tolerance levels for such usage.

16  7 C.F.R. § 205.671. The Court finds it exceedingly unlikely that the word "natural" will be defined

17  more stringently than "organic" when it comes to tolerance levels for pesticides.

18        The Court recognizes that the Ninth Circuit could make a different decision and stay this

19  case on appeal. That, though, is for the parties and the Ninth Circuit to decide.

20

21   **IV.   ORDER**

22        For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' motion to dismiss

23  is GRANTED in full, and Plaintiff's claims are DISMISSED WITH PREJUDICE. Judgment shall

24  be entered in favor of Defendants, and the clerk shall close the case.

25

26  Dated: October 6, 2020

27  _____
    BETH LABSON FREEMAN

28  United States District Judge

United States District Court
Northern District of California